E-FILED
Friday, 31 July, 2020 02:47:01 PM
Clerk, U.S. District Court, ILCD

FILED

JUL 3 1 2020

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL GIBSON MUIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-1280 |
| ) | Judge McDade a Hawley |
| UNITED STATES TRANSPORTATION ) | |
| SECURITY ADMINISTRATION; DAVID P. ) | |
| PEKOSKE, Administrator, United States ) | |
| Transportation Security Administration, in his ) | |
| individual capacity; L3HARRIS ) | |
| TECHNOLOGIES INCORPORATED, a ) | |
| Delaware for-profit corporation, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Muir demands a trial by jury on all issues so triable and complains of

Defendants as follows:

## I: INTRODUCTION

1.     This is a civil rights, negligence and *Bivens* action lawsuit. Plaintiff Muir charges

a violation of his rights under the Fourth and Fifth Amendments to the United States Constitution

and Article I Sections 2 and 6 of the Constitution of the State of Illinois and brings his action

pursuant to the Federal Tort Claims Act (28 U.S.C. Chapter 171), the United States Constitution,

federal common law and Illinois state law. Plaintiff Muir seeks declaratory and injunctive relief

and monetary damages.

2.      Plaintiff Muir ("Muir"), a natural married man and United States citizen with a chronic health condition due to a congenital physical disorder at his right groin, was a ticketed passenger attempting to travel through General Wayne A. Downing Peoria International Airport ("PIA") in Peoria County, Illinois on August 12, 2018.

3.      While at PIA on August 12, 2018, Muir experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his physical disorder and his private marital healthcare choices regarding that disorder.

4.      In order to access PIA sterile areas, Muir was required to submit to security screening in accordance with 49 C.F.R. § 1540.107.

5.      During security screening at PIA on August 12, 2018, Defendants: (1) breached their "Special Relationship" duty to Muir, (2) violated Muir's right to privacy, (3) violated Muir's right to marital privacy, (4) impermissibly singled-out Muir as compared to other similarly-situated travelers, and (5) violated Muir's well-established right to due legal process by coercing him to act against his will in order to secure his lawful release from TSA control.

6.      Defendants' conduct: (1) exceeded the authority granted by 28 U.S.C. § 2680(a) "discretionary function exception" because matters of safety with regards to state created dangers that cannot be unilaterally avoided are not subject to public policy analysis, (2) directly caused Muir irreparable psychological harm beyond the bounds of human decency, and (3) "shocks the conscience" and therefore cannot be tolerated in a civilized society.

7.      Defendants TSA and Pekoske continue to impermissibly single-out and discriminate against Muir because of his chronic health condition and his private marital healthcare decisions regarding that condition, which unlawfully prevents Muir from exercising

his statutory right to travel between the several states by air as granted in 49 U.S.C. § 40103(a)(2) because Muir cannot know if he will be singled-out and discriminated against due to his hidden physical disorder until after his passenger screening data image has been searched.

## II: JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a), 1346(b)(1) and 2674.

9.    Venue is proper under 28 U.S.C. § 1391(b)(2), (e)(1)(B).

## III: PARTIES

10.    Plaintiff Muir is thirty-nine years old. He is a natural married man and United States citizen residing in Bloomington, Illinois.

11.    Defendant United States Transportation Security Administration ("TSA") is a sub-agency of United States Department of Homeland Security.

12.    Defendant David P. Pekoske ("Pekoske") is TSA Administrator and a United States officer sworn to defend the United States Constitution. He is sued in his individual capacity.

13.    Defendant L3Harris Technologies, Inc. ("L3") is a Delaware for-profit corporation, a United States government contractor and manufacturer of the proprietary Automatic Target Recognition ("ATR") software used in passenger screening at PIA on August 12, 2018.

## IV: FACTS

14.     Muir was lawfully present at PIA on August 12, 2018 around two hours before his scheduled flight time of 7:15 p.m.

15.     Prior to his flight, Muir experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his hidden physical disorder and his private marital healthcare choices regarding that disorder.

16.     Muir was within his statutory right to travel by air because his serious health emergency was a danger only to him.

17.     Muir presented himself for mandatory passenger screening.

18.     TSA failed to warn Muir: (1) that his reasonable expectation of privacy could be violated during the security screening process, (2) that his hidden physical disorder and his private marital healthcare choices regarding that disorder, which he rightfully intended to keep private, could be revealed by advanced checkpoint screening technology, (3) that he could be singled-out as compared to other similarly–situated travelers because of his private marital choices regarding his healthcare, or (4) that he would be forced to submit to a physical "pat-down" in order to resolve an ATR threat alarm, regardless of the reason for the alarm, and that there were no exceptions to the "pat-down" requirement, even for serious medical emergencies.

19.     TSA scanned Muir's valid Allegiant Air flight #105 boarding pass and verified his identity using his "REAL ID" state-issued identification.

20.     TSA scanned Muir's personal property using x-ray machine.

21.     TSA had, at this point, established physical control of Muir, which automatically triggered constitutional "due process" protections, as Muir was prevented by federal law from

4

disobeying TSA personnel or leaving the checkpoint without TSA permission and he could not unilaterally end the screening process without facing punishment, which included civil fines up to $10,000, criminal fines up to $250,000, criminal prosecution and up to ten years imprisonment (18 U.S.C. § 3571, 49 U.S.C. §§ 46301, 46503).

22.    TSA scanned Muir's full body in required "hands-up" position.

23.    L3's proprietary ATR software processed Muir's passenger screening data image in order to search Muir for anomalies and threats on his body in accordance with 49 U.S.C. § 44901(l)(A)(i) and 49 C.F.R. § 1540.107(d)(1)(i).

24.    L3's proprietary ATR software returned a false threat alarm at Muir's right groin that misidentified the uncontrollable symptom manifestation of Muir's beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin.

25.    L3's proprietary ATR software singled-out Muir as compared to other similarly-situated travelers and returned a false threat alarm at Muir's right groin because of his private marital healthcare decisions regarding his physical disorder at his right groin.

26.    Muir's disorder at his right groin is entirely human tissue, entirely underneath his skin and entirely consistent with his expected reproductive anatomy.

27.    Based solely on the false right groin threat alarm generated by L3's proprietary ATR software, TSA moved Muir for mandatory additional interrogation and separated him from his personal property, which was cleared to enter the sterile area.

28.    TSA informed Muir that a physical screening of his right groin was required.

5

29.     Muir was not aware at the time that: (1) his physical disorder at his right groin and his private marital healthcare choices regarding that disorder were the reasons that a false ATR software threat alarm was triggered, (2) he was required to undergo a physical pat-down to resolve the false ATR software threat alarm at his right groin, and (3) that no other options were available to clear ATR software threat alarms, even for serious medical emergencies.

30.     Muir informed TSA that, due to his physical disorder and current medical condition, being touched at the right groin could potentially endanger his life and he ordered TSA not to touch his right groin and he informed TSA that physical contact at his right groin would result in immediate and extreme physical pain for him.

31.     TSA moved Muir to a private area under TSA control for additional interrogation.

32.     TSA informed Muir that a physical screening of his right groin was required.

33.     Muir refused TSA a physical screening of his right groin due to the extreme physical pain that would result from being physically touched at his right groin and offered to lower his pants and underwear to show TSA the completely beneath the skin hernia at his right groin.

34.     Muir believed this was a reasonable alternative to being physically touched at his right groin because it would have accomplished the goal of completely screening for weapons, explosives, incendiary items and other contraband or security threats.

35.     TSA, as a matter of strict policy, consciously and deliberately disregarded Muir's serious medical needs and refused what Muir believed was a reasonable alternative to secure his lawful release from TSA control.

36.    Muir was desperate to end the interrogation due to the severe pain and altered mental state he was experiencing due to the symptom manifestations of his physical disorder.

37.    TSA was deliberately indifferent to Muir's compromised condition and refused all of Muir's pleas for an alternative to a physical pat-down to resolve the false threat alarm at his right groin.

38.    TSA coerced Muir to act against his will in order to secure his lawful release from TSA control.

39.    Muir was permanently damaged and suffers severe ongoing psychological distress and disturbing physical manifestations as a direct result of being impermissibly singled-out and coerced to act against his will in order to secure his lawful release from TSA control so that he could regain the freedom to properly attend to his serious medical needs.

40.    Muir made claims regarding the August, 12, 2018 incident with TSA Passenger Support, Department of Homeland Security Office for Civil Rights and Civil Liberties, DHS TRIP Program and Congressman Greg Stanton's office and was unable to achieve redress through any of those avenues.

41.    Muir filed TSA Claim No. 2019091962941 on September 5, 2019 based on the negligent and wrongful acts of TSA that occurred at PIA on August 12, 2018.

42.    TSA denied Claim No. 2019091962941 on May 28, 2020 via certified mail No. 7016 1970 0000 5247 7376.

43.    Muir has satisfied the prerequisites of Federal Tort Claims Act 28 U.S.C § 2675 and therefore has the ability to institute his claim.

## V: <u>CLAIMS FOR RELIEF</u>

### <u>COUNT ONE:</u>

44.    The allegations of paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

45.    The actions of TSA described herein violate Muir's right to privacy as set forth in *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute negligence through TSA's failure to warn Muir of a known danger TSA created and Muir could not unilaterally avoid.

### <u>COUNT TWO:</u>

46.    The allegations of paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

47.    The actions of TSA described herein violate Muir's right to privacy as set forth in *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the negligent infliction of emotional distress.

## COUNT THREE:

48.     The allegations of paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

49.     The actions of Pekoske described herein violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), because, like Bivens, Muir is a private citizen with a liberty interest who was damaged by administrative branch overreach, and Pekoske, like FBN officers, is a domestic federal officer enforcing federal law.

## COUNT FOUR:

50.     The allegations of paragraphs 1 through 43 are re-alleged and incorporated by reference as if fully set forth herein.

51.     The actions of Pekoske described herein violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Davis v. Passman,* 442 U.S. 228 (1979), because, like Davis, Muir was protected by the Fifth Amendment to the United States Constitution and the discrimination against him because of his private marital healthcare choices regarding his congenital physical disorder, like the discrimination against Davis because of her gender, furthers no legitimate government interest, and like Davis, Muir is a private citizen damaged by an abuse of power and Pekoske is a powerful United States policymaker, similar in rank to a member of Congress as in *Davis.*

9

## COUNT FIVE:

52.     The allegations of paragraphs 23 through 27 are re-alleged and incorporated by reference as if fully set forth herein.

53.     The actions of L3 described herein violate Muir's right to privacy as set forth in *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute negligence through L3's failure to reasonably address known problems with its proprietary ATR software that L3 knew or should have known could violate Muir's reasonable expectation of privacy.

## COUNT SIX:

54.     The allegations of paragraphs 23 through 27 are re-alleged and incorporated by reference as if fully set forth herein.

55.     The actions of L3 described herein violate Muir's right to privacy as set forth in *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the negligent infliction of emotional distress through L3's failure to reasonably address known problems with its

10

proprietary ATR software that L3 knew or should have known could violate Muir's reasonable expectation of privacy.

## VI: **PRAYER FOR RELIEF**

WHEREFORE, Muir respectfully requests the following relief:

A.      A declaratory judgment that Defendants violated Muir's Fourth and Fifth Amendment rights and Muir's right to marital privacy.

B.      Permanent injunctive relief prohibiting TSA and TSA Administrator from impermissibly singling out and discriminating against Muir because of his physical disorder and his private marital healthcare choices regarding that disorder.

C.      Permanent injunctive relief prohibiting TSA and TSA Administrator from wrongfully denying Muir his statutory right to travel between the several states by air.

D.      Injunctive relief requiring TSA, Pekoske and L3 to satisfy the Court that Muir's passenger screening data image taken at PIA on August 12, 2018 has been properly destroyed and not unlawfully and or redundantly and or inadvertently retained or sold or transferred to any party at any time before or after May 4, 2020.

E.      Injunctive relief requiring, in the case the Court has not been satisfied that Muir's August 12, 2018 passenger screening data image has been properly destroyed, the return of all of Muir's data, in unencrypted form, taken at PIA on August 12, 2018.

F.      $100,000,000.00 in damages for COUNTS ONE and TWO, as originally claimed in TSA Claim No. 2019091962941.

G.      $250,000,000.00 in damages for COUNTS THREE and FOUR.

H.      $250,000,000.00 in damages for COUNTS FIVE and SIX.

I.      Punitive damages against L3, in an amount to be determined by a jury, as damages in this case do not interfere with sensitive functions of the executive branch because L3 no longer controls the ATR software source code used by TSA during passenger screening.

J.      Punitive damages against Pekoske, in an amount to be determined by a jury.

K.      Cost of the action.

L.      Any other such relief as the Court deems appropriate.

DATED: this 31st day of July, 2020

Respectfully submitted,

MICHAEL GIBSON MUIR

MICHAEL GIBSON MUIR
19 Inglewood Lane
Bloomington, IL 61704
(712) 309-6121