E-FILED
Tuesday, 08 September, 2020 04:13:58 PM
Clerk, U.S. District Court, ILCD

FILED

SEP 0 8 2020

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL GIBSON MUIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:20-cv-01280** |
| | ) | |
| UNITED STATES TRANSPORTATION | ) | |
| SECURITY ADMINISTRATION; DAVID P. | ) | |
| PEKOSKE, Administrator, United States | ) | |
| Transportation Security Administration, in his | ) | |
| individual capacity; L3HARRIS | ) | |
| TECHNOLOGIES, INC., a Delaware for-profit | ) | |
| corporation; ALLEGIANT AIR, LLC, a Nevada | ) | |
| company; CHAD F. WOLF, Secretary, United | ) | |
| States Department of Homeland Security, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michael Gibson Muir demands a trial by jury on all issues so triable and complains of Defendants as follows:

## I: INTRODUCTION

1.      This is a civil rights, negligence and *Bivens* action lawsuit. Plaintiff Michael Gibson Muir charges a violation of his rights under the Fourth and Fifth Amendments to the United States Constitution, Article II Sections 4 and 8 of the Arizona Constitution and Article I

Sections 2 and 6 of the Constitution of the State of Illinois and brings his action pursuant to the Federal Tort Claims Act (28 U.S.C. Chapter 171), the United States Constitution, United States law, Arizona state law and Illinois state law. Plaintiff Michael Gibson Muir seeks declaratory and injunctive relief and monetary damages.

2.      Plaintiff Michael Gibson Muir ("Muir"), a natural married man and United States citizen with a chronic health condition due to a congenital physical disorder at his right groin, was a ticketed passenger attempting to travel through Phoenix-Mesa Gateway Airport ("IWA") in Maricopa County, Arizona on August 9, 2018 and General Wayne A. Downing Peoria International Airport ("PIA") in Peoria County, Illinois on August 12, 2018.

3.      While at IWA on August 9, 2018 and at PIA on August 12, 2018, Muir experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his physical disorder and his private marital healthcare choices regarding that disorder.

4.      In order to access IWA and PIA sterile areas, Muir was required to submit to security screening in accordance with 49 C.F.R. § 1540.107.

5.      During security screening at IWA on August 9, 2018 and at PIA on August 12, 2018, Defendants: (1) breached their legal duties to Muir, (2) violated Muir's right to privacy, (3) violated Muir's right to marital privacy, (4) impermissibly singled-out Muir as compared to other similarly-situated travelers, and (5) violated Muir's well-established right to due legal process by failing to give him fair notice of the screening process, failing to warn him of a known danger he could not unilaterally avoid and coercing him to act against his will in order to secure his lawful release from TSA control.

2

6.      Defendants' conduct: (1) exceeded the authority granted by 28 U.S.C. § 2680(a) "discretionary function exception" because matters of safety with regards to state created dangers that cannot be unilaterally avoided are not subject to public policy analysis, (2) directly caused Muir irreparable psychological harm beyond the bounds of human decency, and (3) "shocks the conscience" and therefore cannot be tolerated in a civilized society.

7.      Defendants United States Transportation Security Administration, David P. Pekoske and Chad F. Wolf continue the conduct which impermissibly singled-out and discriminated against Muir solely because of the unpredictable and uncontrollable symptom manifestations of his hidden physical disorder and his private marital healthcare decisions regarding that disorder, which unlawfully prevents Muir from exercising his statutory right to travel between the several states by air as granted in 49 U.S.C. § 40103(a)(2) because Muir cannot know if he will be singled-out and discriminated against due to his hidden physical disorder until after his freedom of movement has been restricted and his passenger screening data image has been searched, and if a false threat alarm is produced at his right groin due to the manifestations of his physical disorder, it is impossible for him to avoid either acting against his own will or subjecting himself to unwarranted civil and criminal penalties.

## II: JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a), 1346(b)(1) and 2674 and United States Constitution Article 1, Section 8, Clause 3 (the "commerce clause").

9.      Venue is proper under 28 U.S.C. § 1391(b)(2), (e)(1)(B) and United States Constitution Article 1, Section 8, Clause 3 (the "commerce clause").

3

## III: PARTIES

10.     Plaintiff Muir is thirty-nine years old. He is a natural married man and United States citizen residing in Bloomington, Illinois.

11.     Defendant United States Transportation Security Administration ("TSA") is a sub-agency of United States Department of Homeland Security.

12.     Defendant David P. Pekoske ("Pekoske") is TSA Administrator and a United States officer sworn to defend the United States Constitution. He is sued in his individual capacity.

13.     Defendant L3Harris Technologies, Inc. ("L3") is a Delaware for-profit corporation, a United States government contractor and manufacturer of the proprietary Automatic Target Recognition ("ATR") software used in passenger screening at IWA on August 9, 2018 and at PIA on August 12, 2018. As of May 4, 2020, L3 no longer controls the ATR software source code, having sold it to Leidos, Inc. as part of a one billion dollar cash sale of its Security Detection and Automation businesses.

14.     Defendant Allegiant Air, LLC ("Allegiant") is a commercial airline and major air carrier headquartered in Nevada. Allegiant accepted payment of $416.00 on June 13, 2018 (Confirmation number 7LNM69) for Muir's round trip ticket for interstate airline travel between IWA (August 9, 2018) and PIA (August 12, 2018).

15.     Defendant Chad F. Wolf ("Wolf") is acting Secretary, United States Department of Homeland Security ("DHS") currently awaiting confirmation of his nomination. He is sued in his official capacity.

4

## IV: FACTS

16.     Muir was lawfully present at IWA in Maricopa County, Arizona on August 9, 2018 around two hours before his scheduled flight time of 1:31 p.m.

17.     Prior to his flight, Muir experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his hidden physical disorder and his private marital healthcare choices regarding that disorder.

18.     Muir was within his statutory right to travel by air because his serious health emergency was a danger only to him.

19.     Muir presented himself for mandatory passenger screening.

20.     TSA scanned Muir's valid Allegiant Air flight #104 boarding pass and verified his identity using his "REAL ID" state-issued identification, which automatically triggered Allegiant's common carrier duty of reasonable care towards Muir.

21.     TSA and Allegiant failed to give Muir fair notice of the security screening process and failed to warn Muir: (1) that his reasonable expectation of privacy could be violated during the security screening process, (2) that his hidden physical disorder and his private marital healthcare choices regarding that disorder, which he rightfully intended to keep private, could, through no fault of his own, be revealed by advanced checkpoint screening technology, (3) that he could be singled-out as compared to other similarly–situated travelers because of his private choices regarding his healthcare, or (4) that he would be forced to submit to a physical "pat-down" in order to resolve an ATR threat alarm, regardless of the reason for the alarm, and that there were no exceptions to the "pat-down" requirement, even for serious medical emergencies.

22.    TSA scanned Muir's personal property using x-ray machine.

23.    TSA had, at this point, established physical control of Muir, which automatically triggered constitutional "due process" protections, as Muir was prevented by federal law from disobeying TSA personnel or leaving the checkpoint without TSA permission and he could not unilaterally end the screening process without facing punishment, which included civil fines up to $10,000, criminal fines up to $250,000, criminal prosecution and up to ten years imprisonment (18 U.S.C. § 3571, 49 U.S.C. §§ 46301, 46503).

24.    TSA scanned Muir's full body in required "hands-up" position.

25.    L3's proprietary ATR software processed Muir's passenger screening data image in order to search Muir for anomalies and threats on his body in accordance with 49 U.S.C. § 44901(l)(A)(i) and 49 C.F.R. § 1540.107(d)(1)(i).

26.    L3's proprietary ATR software returned a false threat alarm at Muir's right groin that misidentified the uncontrollable symptom manifestation of Muir's hidden, beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin.

27.    L3's proprietary ATR software singled-out Muir as compared to other similarly-situated travelers and returned a false threat alarm at Muir's right groin solely because of his congenital physical disorder at his right groin and his private marital healthcare decisions regarding that disorder.

28.    Muir's hidden physical disorder at his right groin is entirely human tissue, entirely underneath his skin and entirely consistent with his expected reproductive anatomy.

6

29.     Based solely on the false right groin threat alarm generated by L3's proprietary ATR software, TSA moved Muir for mandatory additional interrogation and separated him from his personal property, which was cleared to enter the sterile area.

30.     TSA informed Muir that a physical screening of his right groin was required.

31.     Muir was not aware at the time that: (1) his hidden physical disorder at his right groin and his private marital healthcare choices regarding that disorder were the reasons that a false ATR software threat alarm was triggered, (2) he was required to undergo a physical "pat-down" to resolve the false ATR software threat alarm at his right groin, and (3) that no other options were available to clear ATR software threat alarms, even for serious medical emergencies.

32.     Muir informed TSA that he was experiencing a serious medical emergency and that nobody, including his doctor, had ever touched him at his right groin during a disorder-related medical emergency and that being touched at his right groin would result in extreme physical pain and could endanger his life and he ordered TSA not to touch him at his right groin.

33.     TSA, as a matter of strict policy, consciously and deliberately disregarded Muir's serious medical needs, informed Muir that a physical screening of his right groin was mandatory and coerced Muir to act against his will in order to secure his lawful release from TSA.

34.     Muir had no criminal record and had never been arrested or charged with any crime or offense and strongly desired to keep his reputation intact and to not be arrested and sent to jail, especially considering he had followed all laws, rules, procedures and TSA personnel instructions and was desperate to reunite with his wife in the sterile area so that she could help him with the symptoms of his medical emergency, as she had done for years.

35.     Muir was permanently damaged and suffers severe ongoing psychological distress and disturbing physical manifestations as a direct result of: (1) being impermissibly singled-out as compared to other similarly-situated travelers, (2) being publicly humiliated in front of many people at the TSA security checkpoint, and (3) being coerced to act against his will in order to secure his lawful release from TSA control solely because of his private marital choices regarding his hidden congenital physical disorder, which was his most private of ailments that he had rightfully expected to keep private.

36.     Muir was lawfully present at PIA in Peoria County, Illinois on August 12, 2018 around two hours before his scheduled flight time of 7:15 p.m.

37.     Prior to his flight, Muir experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his hidden physical disorder and his private marital healthcare choices regarding that disorder.

38.     Muir was within his statutory right to travel by air because his serious health emergency was a danger only to him.

39.     Muir presented himself for mandatory passenger screening.

40.     TSA scanned Muir's valid Allegiant Air flight #105 boarding pass and verified his identity using his "REAL ID" state-issued identification, which automatically triggered Allegiant's common carrier "highest degree of care" duty towards Muir.

41.     TSA and Allegiant failed to give Muir fair notice of the security screening process and failed to warn Muir: (1) that his reasonable expectation of privacy could be violated during the security screening process, (2) that his hidden physical disorder and his private marital

healthcare choices regarding that disorder, which he rightfully intended to keep private, could, through no fault of his own, be revealed by advanced checkpoint screening technology, (3) that he could be singled-out as compared to other similarly–situated travelers because of his private choices regarding his healthcare, or (4) that he would be forced to submit to a physical "pat-down" in order to resolve an ATR threat alarm, regardless of the reason for the alarm, and that there were no exceptions to the "pat-down" requirement, even for serious medical emergencies.

42.     TSA scanned Muir's personal property using x-ray machine.

43.     TSA had, at this point, established physical control of Muir, which automatically triggered constitutional "due process" protections, as Muir was prevented by federal law from disobeying TSA personnel or leaving the checkpoint without TSA permission and he could not unilaterally end the screening process without facing punishment, which included civil fines up to $10,000, criminal fines up to $250,000, criminal prosecution and up to ten years imprisonment (18 U.S.C. § 3571, 49 U.S.C. §§ 46301, 46503).

44.     TSA scanned Muir's full body in required "hands-up" position.

45.     L3's proprietary ATR software processed Muir's passenger screening data image in order to search Muir for anomalies and threats on his body in accordance with 49 U.S.C. § 44901(l)(A)(i) and 49 C.F.R. § 1540.107(d)(1)(i).

46.     L3's proprietary ATR software returned a false threat alarm at Muir's right groin that misidentified the uncontrollable symptom manifestation of Muir's beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin.

47.    L3's proprietary ATR software singled-out Muir as compared to other similarly-situated travelers and returned a false threat alarm at Muir's right groin solely because of his congenital physical disorder at his right groin and his private marital healthcare decisions regarding that disorder.

48.    Muir's hidden physical disorder at his right groin is entirely human tissue, entirely underneath his skin and entirely consistent with his expected reproductive anatomy.

49.    Based solely on the false right groin threat alarm generated by L3's proprietary ATR software, TSA moved Muir for mandatory additional interrogation and separated him from his personal property, which was cleared to enter the sterile area.

50.    TSA informed Muir that a physical screening of his right groin was required.

51.    Muir was not aware at the time that: (1) his physical disorder at his right groin and his private marital healthcare choices regarding that disorder were the reasons that a false ATR software threat alarm was triggered, (2) he was required to undergo a physical pat-down to resolve the false ATR software threat alarm at his right groin, and (3) that no other options were available to clear ATR software threat alarms, even for serious medical emergencies.

52.    Muir informed TSA that, due to his physical disorder and current medical condition, being touched at the right groin could potentially endanger his life and he ordered TSA not to touch his right groin and he informed TSA that physical contact at his right groin would result in immediate and extreme physical pain for him.

53.    TSA moved Muir to a private area under TSA control for additional interrogation.

54.    TSA informed Muir that a physical screening of his right groin was required.

55.     Muir refused TSA a physical screening of his right groin due to the extreme physical pain that would result from being physically touched at his right groin and offered to lower his pants and underwear to show TSA the completely beneath the skin hernia at his right groin.

56.     Muir believed this was a reasonable alternative to being physically touched at his right groin because it would have accomplished the goal of completely screening for weapons, explosives, incendiary items and other contraband or security threats.

57.     TSA, as a matter of strict policy, consciously and deliberately disregarded Muir's serious medical needs and refused what Muir believed was a reasonable alternative to secure his lawful release from TSA control.

58.     Muir was desperate to end the interrogation due to the severe pain and altered mental state he was experiencing due to the symptom manifestations of his physical disorder.

59.     TSA was deliberately indifferent to Muir's compromised condition and refused all of Muir's pleas for an alternative to a physical pat-down to resolve the false threat alarm at his right groin.

60.     TSA coerced Muir to act against his will in order to secure his lawful release from TSA control.

61.     Muir was permanently damaged and suffers severe ongoing psychological distress and disturbing physical manifestations as a direct result of being impermissibly singled-out and coerced to act against his will in order to secure his lawful release from TSA control so that he could regain the freedom to properly attend to his serious medical needs.

62.     Muir made claims regarding the August 9, 2018 and August 12, 2018 incidents with: (1) TSA Passenger Support (no action taken), (2) Department of Homeland Security Office for Civil Rights and Civil Liberties (no action taken, complaint closed January 7, 2020), (3) Department of Homeland Security TRIP Program (Redress Control Number: 2311611, no action taken, complaint closed March 4, 2020), (4) Department of Health and Human Services Office for Civil Rights (no action taken, complaint closed January 8, 2020), and (5) United States Congressman Greg Stanton's office (no action taken, complaint closed March 5, 2020) and was unable to achieve redress through any of those avenues.

63.     Muir filed TSA Claim No. 2019101363533 on September 16, 2019 based on the negligent and wrongful acts of TSA that occurred at IWA on August 9, 2018.

64.     TSA denied Claim No. 2019101363533 on May 28, 2020 via certified mail No. 7016 1970 0000 5247 7406.

65.     Muir filed TSA Claim No. 2019091962941 on September 5, 2019 based on the negligent and wrongful acts of TSA that occurred at PIA on August 12, 2018.

66.     TSA denied Claim No. 2019091962941 on May 28, 2020 via certified mail No. 7016 1970 0000 5247 7376.

67.     Muir proposed an informal discussion pursuant to 28 C.F.R. § 14.6 regarding the August 9, 2018 and August 12, 2018 incidents to TSA on November 1, 2019.

68.     TSA declined Muir's November 1, 2019 proposal for an informal discussion pursuant to 28 C.F.R. § 14.6 regarding the August 9, 2018 and August 12, 2018 incidents on November 19, 2019.

69.    Muir has attempted to resolve his claims through every possible avenue of which a reasonable person would be aware (except challenging TSA policy by petitioning the United States Court of Appeals, as Muir's petition would be significantly past the 60 day filing rule for challenging an agency decision), has satisfied the prerequisites of Federal Tort Claims Act 28 U.S.C § 2675 and therefore has the ability to institute his claims.

## V: CLAIMS FOR RELIEF

### DEFENDANT TSA

### COUNT ONE:

70.    The allegations of paragraphs 1 through 35 and 63 through 64 are re-alleged and incorporated by reference as if fully set forth herein.

71.    The actions of TSA described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute negligence through TSA's failure to give Muir fair notice of the security screening process and TSA's failure to warn Muir of a known danger TSA created and Muir could not unilaterally avoid.

### COUNT TWO:

72.    The allegations of paragraphs 1 through 35 and 63 through 64 are re-alleged and incorporated by reference as if fully set forth herein.

73.     The actions of TSA described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute the negligent infliction of emotional distress.

### COUNT THREE:

74.     The allegations of paragraphs 1 through 15, 36 through 61 and 65 through 66 are re-alleged and incorporated by reference as if fully set forth herein.

75.     The actions of TSA described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute negligence through TSA's failure to give Muir fair notice of the security screening process and TSA's failure to warn Muir of a known danger TSA created and Muir could not unilaterally avoid.

### COUNT FOUR:

76.     The allegations of paragraphs 1 through 15, 36 through 61 and 65 through 66 are re-alleged and incorporated by reference as if fully set forth herein.

77.     The actions of TSA described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the negligent infliction of emotional distress.

## DEFENDANT PEKOSKE

## COUNT FIVE:

78.     The allegations of paragraphs 1 through 35 and 62 through 69 are re-alleged and incorporated by reference as if fully set forth herein.

79.     The actions of Pekoske described herein violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), because, like Bivens, Muir is a private citizen with a liberty interest who was damaged by administrative branch overreach, and Pekoske, like FBN officers, is a domestic federal officer enforcing federal law.

## COUNT SIX:

80.     The allegations of paragraphs 1 through 35 and 62 through 69 are re-alleged and incorporated by reference as if fully set forth herein.

15

81. The actions of Pekoske described herein violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Davis v. Passman,* 442 U.S. 228 (1979), because, like Davis, Muir was protected by the Fifth Amendment to the United States Constitution and the discrimination against him because of his private marital healthcare choices regarding his hidden congenital physical disorder, like the discrimination against Davis because of her gender, furthers no legitimate government interest, and like Davis*,* Muir is a private citizen damaged by an abuse of power and Pekoske is a powerful United States policymaker sworn to defend the United States Constitution, similar in rank to a member of Congress as in *Davis.*

## COUNT SEVEN:

82. The allegations of paragraphs 1 through 15 and 36 through 69 are re-alleged and incorporated by reference as if fully set forth herein.

83. The actions of Pekoske described herein violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), because, like Bivens, Muir is a private citizen with a liberty interest who was damaged by administrative branch overreach, and Pekoske, like FBN officers, is a domestic federal officer enforcing federal law.

## COUNT EIGHT:

84. The allegations of paragraphs 1 through 15 and 36 through 69 are re-alleged and incorporated by reference as if fully set forth herein.

85.    The actions of Pekoske described herein violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Muir charges a Constitutional tort under the *Ziglar v. Abbasi* standard based on *Davis v. Passman,* 442 U.S. 228 (1979), because, like Davis, Muir was protected by the Fifth Amendment to the United States Constitution and the discrimination against him because of his private marital healthcare choices regarding his hidden congenital physical disorder, like the discrimination against Davis because of her gender, furthers no legitimate government interest, and like Davis, Muir is a private citizen damaged by an abuse of power and Pekoske is a powerful United States policymaker sworn to defend the United States Constitution, similar in rank to a member of Congress as in *Davis.*

## DEFENDANT L3

## COUNT NINE:

86.    The allegations of paragraphs 1 through 15 and 25 through 29 are re-alleged and incorporated by reference as if fully set forth herein.

87.    The actions of L3 described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute negligence through L3's failure to reasonably address known problems with its proprietary ATR software that L3 knew or should have known could violate Muir's reasonable expectation of privacy and Muir's due process rights while his freedom of movement was restricted.

17

## COUNT TEN:

88.     The allegations of paragraphs 1 through 15 and 25 through 29 are re-alleged and incorporated by reference as if fully set forth herein.

89.     The actions of L3 described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute the negligent infliction of emotional distress through L3's violation of Muir's well-established rights while his freedom of movement was restricted.

## COUNT ELEVEN:

90.     The allegations of paragraphs 1 through 15 and 25 through 29 are re-alleged and incorporated by reference as if fully set forth herein.

91.     The actions of L3 described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute the intentional infliction of emotional distress as L3's reckless conduct in violating Muir's well-established rights while his freedom of movement was restricted was foreseeable and would be considered highly offensive to a reasonable person.

## COUNT TWELVE:

92.     The allegations of paragraphs 1 through 15 and 45 through 49 are re-alleged and incorporated by reference as if fully set forth herein.

93.     The actions of L3 described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute negligence through L3's failure to reasonably address known problems with its proprietary ATR software that L3 knew or should have known could violate Muir's reasonable expectation of privacy and Muir's due process rights while his freedom of movement was restricted.

## COUNT THIRTEEN:

94.     The allegations of paragraphs 1 through 15 and 45 through 49 are re-alleged and incorporated by reference as if fully set forth herein.

95.     The actions of L3 described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the

19

State of Illinois and constitute the negligent infliction of emotional distress through L3's violation of Muir's well-established rights while his freedom of movement was restricted.

## COUNT FOURTEEN:

96.     The allegations of paragraphs 1 through 15 and 45 through 49 are re-alleged and incorporated by reference as if fully set forth herein.

97.     The actions of L3 described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the intentional infliction of emotional distress as L3's reckless conduct in violating Muir's well-established rights while his freedom of movement was restricted was foreseeable and would be considered highly offensive to a reasonable person.

## DEFENDANT ALLEGIANT

## COUNT FIFTEEN:

98.     The allegations of paragraphs 1 through 35 are re-alleged and incorporated by reference as if fully set forth herein.

99.     The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the

Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute negligence through Allegiant's breach of its common carrier duty of reasonable care to Muir through its failure to give Muir fair notice of the security screening process and Allegiant's failure to warn Muir that his reasonable expectation of privacy could be violated, through no fault of his own, by advanced security screening technology while his freedom of movement was restricted.

## COUNT SIXTEEN:

100.    The allegations of paragraphs 1 through 35 are re-alleged and incorporated by reference as if fully set forth herein.

101.    The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute the negligent infliction of emotional distress through Allegiant's breach of its common carrier duty of reasonable care to Muir in failing to give Muir fair notice of the screening process and failing to warn Muir that his reasonable expectation of privacy could be violated through no fault of his own during the security screening process.

## COUNT SEVENTEEN:

102.    The allegations of paragraphs 1 through 35 are re-alleged and incorporated by reference as if fully set forth herein.

103.    The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution and constitute the intentional infliction of emotional distress through Allegiant's breach of its common carrier duty of reasonable care to Muir as Allegiant's reckless conduct in failing to give Muir fair notice of the screening process and failing to warn Muir that his reasonable expectation of privacy could be violated through no fault of his own during the security screening process was foreseeable and would be considered highly offensive to a reasonable person.

## COUNT EIGHTEEN:

104.    The allegations of paragraphs 1 through 15 and 36 through 61 are re-alleged and incorporated by reference as if fully set forth herein.

105.    The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute negligence through Allegiant's breach of its common carrier duty of the highest degree of care to Muir through its failure to give Muir fair

22

notice of the security screening process and Allegiant's failure to warn Muir that his reasonable expectation of privacy could be violated, through no fault of his own, by advanced security screening technology while his freedom of movement was restricted.

## COUNT NINETEEN:

106.    The allegations of paragraphs 1 through 15 and 36 through 61 are re-alleged and incorporated by reference as if fully set forth herein.

107.    The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the negligent infliction of emotional distress through Allegiant's breach of its common carrier duty of the highest degree of care to Muir through its failure to give Muir fair notice of the security screening process and Allegiant's failure to warn Muir of the foreseeable circumstances that his reasonable expectation of privacy could be violated, through no fault of his own, by advanced security screening technology while his freedom of movement was restricted.

## COUNT TWENTY:

108.    The allegations of paragraphs 1 through 15 and 36 through 61 are re-alleged and incorporated by reference as if fully set forth herein.

109.    The actions of Allegiant described herein violate Muir's right to privacy as set forth in Article I Section 6 of the Constitution of the State of Illinois and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of Muir to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution and Article I Section 6 of the Constitution of the State of Illinois, violate Muir's right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article I Section 2 of the Constitution of the State of Illinois and constitute the intentional infliction of emotional distress through Allegiant's breach of its common carrier duty of the highest degree of care to Muir as Allegiant's reckless conduct in failing to give Muir fair notice of the screening process and failing to warn Muir that his reasonable expectation of privacy could be violated through no fault of his own during the security screening process was foreseeable and would be considered highly offensive to a reasonable person.

## DEFENDANTS TSA, PEKOSKE & WOLF

## COUNT TWENTY-ONE:

110.    The allegations of paragraphs 1 through 61 are re-alleged and incorporated by reference as if fully set forth herein.

111.    Rehabilitation Act of 1973 Section 504, codified as 29 U.S.C. § 794 states: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."

112.     Muir is a qualified individual with a disability because he has a congenital birth defect (Muir's intestine moves through his inguinal canal and into his right scrotum) that has caused him serious problems since at least the age of five and unpredictably presents as a physical impairment that substantially limits his ability to; (1) care for himself, (2) perform manual tasks, (3) eat, (4) stand, (5) learn, (6) concentrate, or (7) work, as well as (8) digest food, (9) expel intestinal gas, (10), move his bowels, and (11) urinate.

113.     Muir's latest onset of severe symptoms due to his disability began suddenly and unexpectedly in November 2016 (his first intestinal incarceration in thirteen years) and continues to the present day.

114.     In retrospect, over the longer timeframe of 2014 thru present day, Muir's disability-related symptoms were in many ways the most severe from November 2016 to December 2018, during which time he suffered no fewer than five potentially life-threatening incidents due to incarceration or partial strangulation of his intestine, one of which (November 8, 2018) culminated in a police-documented first-responder incident at Chandler Gilbert Community College and Muir's withdrawal from his Calculus I class due to his inability to concentrate or work.

115.     Muir's debilitating disability-related symptom manifestations limit his major life activities for at least six months at a time, with the longest having lasted approximately two years.

116.     Muir's private marital healthcare choice regarding his physical disability is a protected factor impermissible to discrimination and the sole reason Muir was singled out and discriminated against.

25

117.    TSA checkpoint security screening is a federal program or activity.

118.    TSA, Pekoske and Wolf are therefore bound by 29 U.S.C. § 794.

119.    TSA must therefore immediately stop; (1) impermissibly singling-out Muir as compared to other similarly-situated travelers, and (2) unlawfully discriminating against Muir during checkpoint security screening because of his private marital choice regarding his physical disability at his right groin.

## VI: <u>PRAYER FOR RELIEF</u>

WHEREFORE, Muir respectfully requests the following relief:

A.    A declaratory judgment that Defendants violated Muir's Fourth and Fifth Amendment rights, Muir's reasonable expectation of privacy and Muir's right to marital privacy.

B.    Permanent injunctive relief prohibiting TSA, TSA Administrator and DHS Secretary from impermissibly singling-out and discriminating against Muir because of his congenital physical disorder and his private marital healthcare choices regarding that disorder.

C.    Permanent injunctive relief prohibiting TSA, TSA Administrator and DHS Secretary from wrongfully denying Muir his statutory right to travel between the several states by air.

D.    Injunctive relief requiring TSA, Pekoske, Wolf and L3 to satisfy the Court that Muir's passenger screening data images taken at IWA on August 9, 2018 and at PIA on August 12, 2018 have been properly destroyed and not unlawfully and or redundantly and or inadvertently retained or sold or transferred to any party at any time before or after May 4, 2020.

E.       Injunctive relief requiring, in the case the Court has not been satisfied that Muir's August 9, 2018 and August 12, 2018 passenger screening data images have been properly destroyed, the return of all of Muir's data, in unencrypted form, taken at IWA on August 9, 2018 and at PIA on August 12, 2018, as they contain very valuable private health information Muir cannot possibly obtain through conventional medical imaging and a reasonable person would find it highly offensive that the information could be used to impermissibly single out and discriminate against Muir, but Muir could not access it to help with his healthcare decisions.

F.       $100,000,000.00 in damages for COUNTS ONE and TWO, as originally claimed in TSA Claim No. 2019101363533.

G.       $100,000,000.00 in damages for COUNTS THREE and FOUR, as originally claimed in TSA Claim No. 2019091962941.

H.       $250,000,000.00 in damages for COUNTS FIVE and SIX.

I.       $250,000,000.00 in damages for COUNTS SEVEN and EIGHT.

J.       Punitive damages against Pekoske, in an amount to be determined by a jury.

K.       $250,000,000.00 in damages for COUNTS NINE, TEN and ELEVEN.

L.       $250,000,000.00 in damages for COUNTS TWELVE, THIRTEEN and FOURTEEN.

M.       Punitive damages against L3, in an amount to be determined by a jury, as damages in this case do not interfere with sensitive functions of the executive branch because L3 no longer controls the ATR software source code used by TSA during passenger screening.

N.   $100,000,000.00 in damages for COUNTS FIFTEEN, SIXTEEN and SEVENTEEN.

O.   $100,000,000.00 in damages for COUNTS EIGHTEEN, NINETEEN and TWENTY.

P.   Punitive damages against Allegiant, in an amount to be determined by a jury.

Q.   Injunctive relief requiring Wolf to direct DHS to revoke L3's Safety Act Certification and Designation for its ATR software.

R.   Cost of the action.

S.   Any other such relief as the Court deems appropriate.

DATED: this 4th day of September, 2020

Respectfully submitted,

MICHAEL GIBSON MUIR

MICHAEL GIBSON MUIR
19 Inglewood Lane
Bloomington, IL 61704
(712) 309-6121

FFICIAL BUSINESS

**US DISTRICT COURT**

Name: Michael Gibson Muir

Address: 19 Inglewood Lane

Bloomington, IL 61704

Case No.: 1:20-cv-01280

Telephone No.: 712-309-6121

First Amended Complaint - 28 pages
Summons - Allegiant Air - 1 Page
Summons - Chad F. Wolf - 1 Page