E-FILED
Wednesday, 04 November, 2020  02:32:14 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

MICHAEL GIBSON MUIR,

               Plaintiff,

v.

UNITED STATES TRANSPORTATION
SECURITY ADMINISTRATION; DAVID P.
PEKOSKE, Administrator, United States
Transportation Security Administration, in his
individual capacity; L3HARRIS
TECHNOLOGIES, INC., a Delaware for-profit
corporation; ALLEGIANT AIR, LLC, a
Nevada company; CHAD F. WOLF, Secretary,
United States Department of Homeland
Security, in his official capacity,

               Defendants.

Case No. 1:20-cv-01280

District Judge: Hon. Joe Billy McDade

## DEFENDANT ALLEGIANT AIR, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS AND RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This lawsuit arises from alleged inappropriate searches by the Transportation Security Administration ("TSA") of Plaintiff's body during the customary airport screening process on the outbound and return portions of a roundtrip Plaintiff flew on Allegiant Air, LLC ("Allegiant"). On both occasions, Plaintiff allegedly informed the TSA agents that he was "experiencing a serious medical emergency . . . and that being touched at his right groin would result in extreme physical pain and could endanger his life and he ordered TSA not to touch him at his right groin." Plaintiff's First Amended Complaint [ECF 12] ("FAC"), at ¶¶ 32, 52.

Plaintiff's FAC against Allegiant must be dismissed for several reasons. *First*, Plaintiff's claims against Allegiant are time-barred by the applicable statute of limitations and do not relate back to the filing of the original Complaint. *Second*, Plaintiff's causes of action against Allegiant based on Allegiant's alleged negligence fail as a matter of law because Allegiant had no duty to warn Plaintiff of the TSA pre-flight screening process which is required by law, commonly known to air travelers and therefore open and obvious. Nor did Allegiant owe Plaintiff a duty to protect him from any TSA screening that he found offensive while he was under the TSA's exclusive control. *Third*, and finally, despite Plaintiff's allegations to the contrary, there is no private right of action against Allegiant for the TSA's alleged violations of Plaintiff's constitutional rights.

## FACTUAL BACKGROUND

Plaintiff's FAC asserts causes of action arising out of injuries he allegedly sustained during two separate TSA screenings: the first on August 9, 2018 at Phoenix-Mesa Gateway Airport ("IWA") in Maricopa County, Arizona; and the second on August 12, 2018 at the General Wayne A. Downing Peoria International Airport ("PIA") in Peoria County, Illinois. *See* FAC at ¶ 2. Allegiant is a commercial air carrier, and on both dates, Plaintiff was present at the airport as a ticketed passenger on Allegiant Flights 104 and 105 operated by Allegiant on August 9 and 12,

1

2018, respectively – roundtrip ticket purchased June 13, 2018. *Id.* at ¶¶ 14, 20, 40. According to the FAC, prior to each flight, Plaintiff "experienced an unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his hidden physical disorder and his private marital healthcare choices regarding that disorder." *Id.* at ¶¶ 17, 37. When he attempted to pass through the TSA body scanner, the Automatic Target Recognition ("ATR") software, "returned a false threat alarm at [Plaintiff's] right groin that misidentified the uncontrollable symptom manifestation of [Plaintiff's] hidden, beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin." *Id.* at ¶¶ 26, 46. Based on that threat alarm, the TSA required Plaintiff to be moved for mandatory additional interrogation, physical screening and "pat down." *Id.* at ¶¶ 29-31, 49-51. Plaintiff claims he was permanently damaged and suffers severe ongoing psychological distress and disturbing physical manifestations as a result of the two screening incidents. *Id.* at ¶¶ 35, 61.

With respect to Allegiant, Plaintiff alleges that its common carrier duty to Plaintiff was triggered when the TSA scanned his Allegiant boarding pass and verified his identification. *Id.* at ¶¶ 20, 40. He claims that Allegiant and the TSA failed to give him fair notice of the security screening process and failed to warn him that: (1) his reasonable expectation of privacy could be violated during the screening process; (2) his hidden physical disorder and his private marital healthcare choices regarding that disorder could be revealed by advanced checkpoint screening technology; (3) he could be singled-out as compared to other similarly-situated travelers because of his hidden physical disorder; or (4) that he would be forced to submit to a physical "pat-down" to resolve the ATR threat alarm, and that there were no exceptions to the "pat-down" requirement, even for medical emergencies. *Id.* at ¶¶ 21, 41.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, previously brought suit for damages arising out of the August 9, 2018 screening incident at IWA in the Superior Court of the State of Arizona, Maricopa County. Plaintiff originally filed suit against only L3Harris Technologies, Inc. ("L3"), the manufacturer of the ATR software. L3 removed the case to the United States District Court for the District of Arizona[1] and filed a Motion to Dismiss for Failure to State a Claim. Plaintiff then filed a First Amended Complaint (the "AZ-FAC"). L3 responded to the AZ-FAC with a new motion and Plaintiff filed, without leave, a Second Amended Complaint (the "AZ-SAC") in which he named the TSA and David P. Pekoske, Administrator of the TSA, as additional defendants, and alleged additional claims arising from the August 12, 2018 security screening at PIA. In the AZ-SAC, Plaintiff did not name Allegiant as an additional defendant.

The District Court Judge struck Plaintiff's AZ-SAC and ordered Plaintiff to respond to L3's motion. Instead, Plaintiff filed a new Complaint in the Central District of Illinois on July 31, 2020 against the same defendants he named in the AZ-SAC, alleging claims based on only the August 12, 2018 screening at PIA.[2] Importantly, Allegiant was not named in Plaintiff's Central District original Complaint.

On September 4, 2020, more than two years after the security screenings in question, Plaintiff filed his FAC. In the FAC, Plaintiff added, for the first time, Allegiant and Chad F. Wolf, Secretary, U.S. Department of Homeland Security, in his official capacity, as defendants. He also added claims based on the screening incident that occurred on August 9, 2018 at IWA.

---

[1]     *See* Electronic Docket for Case No. 2:19-cv-05887, available at https://ecf.azd.uscourts.gov/cgi-bin/DktRpt.pl?379119754622894-L_1_0-1 (*last visited October 9, 2020*).

[2]     Plaintiff voluntarily dismissed his Arizona action on August 4, 2020.

Plaintiff's FAC contains six (6) separate counts against Allegiant. In Counts Fifteen, Sixteen and Seventeen, Plaintiff asserts claims based on theories of (1) negligence; (2) negligent infliction of emotional distress ("NIED"); and (3) intentional infliction of emotional distress ("IIED") based on Allegiant's alleged failure to notify or warn Plaintiff of the security screening process or that his reasonable expectation of privacy could be violated. In those counts, Plaintiff alleges that "[t]he actions of Allegiant described herein [with respect to the August 9, 2018 incident at IWA] violate [Plaintiff's] right to privacy as set forth in Article II Section 8 of the Arizona Constitution and *Griswold v. Connecticut*, 381 U.S. 479 (1965), violate the rights of [Plaintiff] to be free from unreasonable search as guaranteed by the Fourth Amendment of the United States Constitution, [and] violate [Plaintiff's] right to due process as guaranteed by the Fifth Amendment of the United States Constitution and Article II Section 4 of the Arizona Constitution . . ." *Id.* at ¶¶ 99, 101, 103. It is evident from the facts alleged in the FAC that any claim Plaintiff has regarding infliction of emotional distress is based on the physical "pat down" that Plaintiff endured at the hands of the TSA. *Id.* ¶¶ 35, 61.

Counts Eighteen, Nineteen and Twenty mirror Plaintiff's causes of action and allegations pled in counts Fifteen through Seventeen of the FAC, except they assert Allegiant's violation of Plaintiff's constitutional rights under the U.S. and Illinois State Constitutions arising from the screening incident that occurred on August 12, 2018 at PIA.

## LEGAL STANDARD

When a complaint shows that the time for litigation has passed, judgment on the pleadings may be entered under Federal Rule of Civil Procedure 12(c). *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999) (Easterbrook, J.). Additionally, a court must dismiss a complaint that fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss under

Rule 12(b)(6) tests the legal sufficiency of a claim. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (citations omitted). Dismissal may be based on the lack of a cognizable legal theory or on a plaintiff's failure to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007) ("*Twombly*"). When assessing a Rule 12(b)(6) motion, a court must take as true allegations of material fact and must construe them in the light most favorable to the non-moving party. *Stachowski*, 425 F.3d at 1078. However, a court need not accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). While a court will construe a *pro se* plaintiff's complaint liberally, a *pro se* plaintiff may plead himself out of court by pleading facts that undermine his case or show he has no legal claim. *Cabrera v. World's Finest Chocolate, Inc*., No. 04 C 0413, 2004 WL 1535850, *3 (N.D. Ill. July 7, 2004) (citations omitted).

## ARGUMENT

Allegiant is entitled to judgment on the pleadings pursuant to Rule 12(c) and/or dismissal pursuant to Rule 12(b)(6) because the FAC is untimely and does not relate back to the date of the original Complaint. Further, even if the Court finds that the FAC was timely – which Allegiant denies – Allegiant is still entitled to dismissal for Plaintiff's failure to state a claim pursuant to Rule 12(b)(6) because there was no duty for Allegiant to warn Plaintiff of the TSA Screening process prior to his travel and Allegiant owed no duty to Plaintiff while he was under the exclusive control of the TSA. Finally, Plaintiff's claims that Allegiant can be held liable for violating his constitutional rights fail as a matter of law because the U.S., Illinois and Arizona Constitutions protect citizens only from conduct by the government, and do not create a private cause of action.

I.    **Plaintiff's Claims Against Allegiant in the FAC are Time-Barred and Do Not Relate Back to the Original Complaint**

Plaintiff's claims in the FAC against Allegiant were not asserted before the expiration of the applicable statute of limitations and are time-barred. Moreover, Plaintiff's claims against Allegiant do not relate back to the date of his original Complaint because Allegiant did not know or have reason to know that the claims would be brought against it and Plaintiff did not make a mistake regarding the proper party.

A.    **Plaintiff's Claims Against Allegiant in the FAC are Time-Barred**

Plaintiff's FAC, naming and asserting claims against Allegiant for the first time, was filed on September 4, 2020. His six causes of action against Allegiant are grounded in tort and arise from the alleged personal injuries Plaintiff sustained on August 9 and 12, 2018. Under Illinois law, the statute of limitations for claims based on personal injury is two (2) years from the date of injury. *See* 735 ILCS 5/13-202. The same is true under Arizona law. *See* A.R.S. § 12-542.  The statute of limitations applicable to Plaintiff's claims against Allegiant thus ran, at the latest, on August 12, 2020. As Plaintiff did not bring his claims against Allegiant until after that date, his claims are time-barred. Accordingly, Allegiant is entitled to judgment on the pleadings pursuant to Rule 12(c) and/or dismissal pursuant to Rule 12(b)(6). *See Brooks*, 578 F.3d at 579 (noting affirmative defense of statute of limitations should technically be brought as a Rule 12(c) motion but finding it appropriate to consider the statute of limitations on a motion pursuant to Rule 12(b)(6) where the relevant dates were set forth unambiguously in the complaint); *see also Gunn v. Continental Casualty Company*, 968 F.3d 802, 806 (7th Cir. 2020).

**B.      Plaintiff's Claims Against Allegiant in the FAC Do Not Relate Back to Plaintiff's Original Complaint**

Although Plaintiff's claims against Allegiant are untimely, Allegiant recognizes that untimely claims can be saved if they relate back to the original timely filed Complaint. However, here, none of Plaintiff's claims against Allegiant in the FAC relate back to the date of Plaintiff's original Complaint. Rule 15(c) provides, in relevant part, that:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
>
>    * * *
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if . . . the party to be brought in by amendment:
>
>       * * *
>
>       (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

The question under Rule 15(c)(1)(C)(ii) is whether the newly named defendant knew or should have known that it would have been named as a defendant but for an error. *Krupski v. Costa Corciere S. p. A.*, 560 U.S. 538, 548 (2010). Here, the answer is no.

In *Krupski*, the Supreme Court explained that:

> [A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.* at 549. The Supreme Court also recognized, however, that "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the *antithesis* of making a mistake concerning the proper party's identity." *Id.*

7

(emphasis added). And, as the Seventh Circuit has long held, "[i]t is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires. A Plaintiff's ignorance or misunderstanding about who is liable for his injury is not a 'mistake' as to the defendant's 'identity.'" *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006); *see also Dandridge v. Cook County*, No. 12-cv-5458, 2013 WL 3421834, *4-5 (N.D. Ill. July 8, 2013) (finding that Seventh Circuit jurisprudence concerning Rule 15(c)(1) is consistent with *Krupski*).

In the present case, Plaintiff's own filings demonstrate that Plaintiff was aware of and fully understood Allegiant's status and purported role in the screening incidents on August 9 and August 12. *See* [ECF 9] (seeking Judicial Notice of the Allegiant receipt for Plaintiff's ticket). He even referenced his Allegiant ticket in his procedurally defective, but otherwise timely, AZ-SAC, *see* Case No. 2:19-cv-05887, [ECF 23], ¶¶ 20, 39,[3] but did not add Allegiant as a defendant in that action or otherwise notify Allegiant of any claim he planned to assert against it. Indeed, this is the *fifth* complaint Plaintiff has filed arising out of the alleged TSA screenings but it is only the *first* time he has asserted any claims against Allegiant. Plaintiff's failure to name Allegiant as a defendant before the expiration of the statute of limitations thus was either the result of his deliberate choice or his ignorance or misunderstanding about who is liable for his injury.[4] Either way, relation back does not save his untimely FAC. Accordingly, Allegiant's motion should be

---

[3]      This Court may take judicial notice of court filings. *Mir v. State Farm Mutual Automobile Insurance Company*, No. 1:19-cv-1225, 2020 WL 1265417, *2 (C.D. Ill. Mar. 16, 2020) (McDade, J.) (citing *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016)).

[4]      Or it may be that he failed to name Allegiant in the original Complaint because he did correctly understand who could be liable for his injuries and correctly understood that Allegiant could not.

granted.[5]

## II.    Plaintiff's FAC Fails to State a Claim Against Allegiant as a Matter of Law

Even if not time-barred, the claims against Allegiant in Plaintiff's FAC should be dismissed because they fail to state a claim against Allegiant for which relief can be granted. Allegiant had no duty to warn or give Plaintiff notice of the open and obvious TSA screening process, owed Plaintiff no duty while he was in the custody of the TSA, and did not engage in any of the conduct which allegedly caused Plaintiff's injuries and inflicted emotional distress.

### A.    Plaintiff's Claims Against Allegiant in the FAC Set Forth Only Formulaic Recitations of the Elements of the Causes of Action and Do Not Set Forth Any Cognizable Legal Theory

Plaintiff fails to state a claim in Counts Fifteen through Twenty of his FAC because these counts contain no more than formulaic recitations of the elements of his alleged causes of action: (1) negligence; (2) NIED; and (3) IIED. As the Supreme Court explained in *Twombly*, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[5]    Even if this Court finds that claims against Allegiant in Plaintiff's FAC do relate back under Rule 15(c)(1)(C)(ii) – which Allegiant denies – at the very least, his claims arising out of the August 9, 2018 screening at IWA are time-barred and cannot relate back to the original Complaint under Rule 15(c)(1)(B), which requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" Whether an amended complaint "[arises] out of the conduct, transaction or occurrence set out . . . in the original pleading[,]" depends on the existence of a common "core of operative facts" uniting the original and newly asserted claims. *Mayle v. Felix*, 545 U.S. 644, 659 (2005). While an amendment to a pleading based on a single episode-in-suit may be permitted to relate back where it asserts a new cause of action arising out that single episode, where, as here, an amended complaint sets forth a separate occurrence which took place at a different time and place, relation back is not permitted. *Id.*; *see also Grove v. Manchester Tank & Equip. Co.*, Nos. 07-1263, 07-1268, 07-1280, 2010 WL 3724801, *6 (C.D. Ill. Sept. 15, 2010) (recognizing that *Mayle*'s interpretation of the phrase "conduct, transaction, or occurrence" applies in a general Civil Case). In the case at bar, Plaintiff's FAC not only names additional defendants but also sets forth a new injury based on a different episode-in-suit – namely, a separate TSA screening, which occurred on a different date, in a different State, and presumably at the hands of different TSA agents. Accordingly, the claims arising out of the August 9, 2018 TSA screening fail to satisfy the requirement of Rule 15(c)(1)(B) and do not relate back.

conclusions, and a formulaic recitation of elements of a cause of action will not do." 550 U.S. at 555. "This did not 'supplant the basic notice-pleading standard' located in Rule 8(a); however, there must be enough in the Complaint to show that relief is 'plausible.'" *Johnson v. Sec. Mut. Life Ins. Co. of New York*, No. 08-CV-1267, 2009 WL 10710798, at *3 (C.D. Ill. Sept. 28, 2009) (McDade, J. J.B.) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008)).

For example, in *Johnson*, this Honorable Court found that a plaintiffs' complaint made formulaic recitations of the elements of a cause of action when the plaintiffs merely claimed that the defendant breached a fiduciary duty. *Id.* This Court explained that the complaint did not allege sufficient facts to determine that the defendants were fiduciaries or that the plaintiffs suffered a loss that entitled them to relief. *Id.* Without these facts, this Court concluded that the plaintiffs' complaint did not pass the threshold showing of "plausibility" under *Twombly*. *Id.*

Here, like in *Johnson*, Plaintiff does not show that his claims are at the very least plausible because he merely recites elements of his alleged causes of actions. Plaintiff's six counts against Allegiant are nearly identical: Allegiant was negligent, caused NIED, or caused IIED because it failed to warn Plaintiff that the TSA might violate his rights under the Constitution of the United States or the applicable State constitution. None of the general factual allegations incorporated by Plaintiff in these counts, which refer to Allegiant by name only five times, support the elements of his alleged causes of action against Allegiant. Although Plaintiff states that Allegiant should have warned him that the TSA would violate his rights, he does not allege that Allegiant knew or could have known that the TSA would violate his rights. Without alleging these key facts, Plaintiff's FAC is nothing more than a formulaic recitation of elements that does not establish a "plausible" claim for relief under *Twombly*. And, because Plaintiff's FAC does not even set forth a cognizable legal theory, as discussed below, any attempt to amend the FAC would be futile.

**B.** **Plaintiff's Negligence Claim Fails Because Allegiant Had No Duty to Warn Plaintiff of the TSA Screening Process Prior to his Travel**

Even if Plaintiff's FAC satisfies the pleading standard under Rule 8, it must be dismissed for failure to state a claim under Rule 12(b)(6) because Plaintiff's legal theories fail as a matter of law. In counts Fifteen and Eighteen, Plaintiff claims that Allegiant's breach of its duty of care[6] to Plaintiff "through its failure to give [Plaintiff] fair notice of the security screening process and Allegiant's failure to warn [Plaintiff] that his reasonable expectation of privacy could be violated," constitute negligence resulting from the August 9 IWA and August 12 PIA screenings respectively. To state a cause of action for negligence in Illinois, the complaint must allege facts sufficient to establish three elements: (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach. *Guvenoz v. Target Corp.,* 2015 IL App (1st) 133940, ¶ 89, 30 N.E.3d 404, 422 (citations omitted). In Arizona, the elements are the same. *See Wertheim v. Pima Cty.*, 122 P.3d 1, 3 (Ariz. Ct. App. 2005). Whether a duty exists is a question of law to be resolved by the Court in both Illinois, *see Grove*, 2010 WL 3724801, at *7 (citing *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 766 (7th Cir. 2009)), and Arizona, *see Wertheim v. Pima Cty.*, 122 P.3d at 3. Here, Plaintiff's negligence claims fail for two reasons: (1) Allegiant had no duty to notify and warn Plaintiff of the TSA screening process which is legally required and commonly known to air travelers; and (2) even assuming, *arguendo*, Allegiant had a duty to notify and warn Plaintiff of the TSA screening process, it did so through its Conditions and Contract of Carriage ("COC").

---

[6]      In count Fifteen, Plaintiff alleges Allegiant breached "its common carrier duty of reasonable care" and in count Eighteen, Plaintiff alleges Allegiant breached "its common carrier duty of the highest degree of care."

**1.      There is no Duty to Warn of Open and Obvious Conditions**

Allegiant had no duty to warn Plaintiff of the TSA screening process as a matter of law because the TSA screening process is required by federal law, has been commonly known and expected by air travelers for almost 20 years, and is open and obvious. *See Ruskai v. Pistole*, 775 F.3d 61, 69 (1st Cir. 2014) (noting that members of the traveling public have become inured to precautionary searches); *United States v. Hartwell*, 436 F.3d 174, 180–81 (3d Cir. 2006) (recognizing that "screening procedures of this kind have existed in every airport in the country since at least 1974 [and] [t]he events of September 11, 2001, have only increased their prominence in the public's consciousness.").

Allegiant had no duty to warn Plaintiff of a condition or federal requirement that is equally obvious to Plaintiff and every other member of the general flying public. *See Ruiz v. People Exp. Airlines, Inc.*, 802 F.2d 1508, 1510-11 (4th Cir. 1986) (affirming district court's finding that airline had no duty to warn passengers of firearm policies and noting that "[r]equiring an airline passenger to know the law is not different than that same requirement expected in any other walk of life."); *see also Grove*, 2010 WL 3724801, at *7 (finding that "duty to warn only arises where there is *unequal knowledge*, for the purpose of a warning is to apprise a person of a danger of which he is not already aware, so that protective measures may be taken.") (emphasis added). Here, TSA screenings are the law and there is no unequal knowledge between passengers and airlines regarding the procedures. And, it has been held that airport screenings involving technology like that at issue here do not violate passengers' right to privacy under the Fourth Amendment. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 10-11 (D.C. Cir. 2011). Moreover, as in *Hartwell*, it is inconceivable that Plaintiff was unaware that he had to be searched before he could board a plane based on the allegations in the FAC. As such, Allegiant had no duty

to warn Plaintiff that he might find a particular screening encounter to be unreasonable or offensive as a matter of law.

The facts of this case illustrate why the imposition of a duty to warn passengers of TSA security screening would be unsound. In this case, Allegiant had no way to know that the ordinary screening procedures could pose any particular risk to Plaintiff. As Plaintiff himself acknowledges, the TSA threat alarm was triggered by Plaintiff's "*hidden* physical disorder and his *private marital healthcare choices* regarding that disorder." *See* FAC, [ECF 12], at ¶ 17 (emphasis added). As the Second Circuit has recognized, "carriers cannot be responsible for the individual characteristics of each passenger. To hold otherwise would be to impose a duty of a complete medical and psychiatric examination of all passengers and then to adopt a rule of absolute liability in the event that any undiscovered condition was aggravated by some incident of the flight." *D'Aleman v. Pan Am World Airways, Inc.*, 259 F.2d 493, 494 (2d. Cir. 1958). The same must be true when some undiscovered or unknown condition of a passenger is aggravated by some incident of the federally mandated security screenings passengers have been required to undergo ever since the terrorist attacks of September 11, 2001.

Imposing a duty on Allegiant to warn passengers that their hidden and unknown physical conditions could trigger a security threat alarm requiring further interrogation that they may deem to be offensive would be to adopt a rule of absolute liability. Allegiant had no duty to warn Plaintiff of the law or the open and obvious TSA screening process and Allegiant's motion should be granted.

**2.    Despite Having No Duty, Allegiant Gave Plaintiff Notice of the Passenger Screening Requirements in Any Event**

Even assuming, *arguendo*, that Allegiant had a duty to notify and warn Plaintiff of TSA screening procedures – which Allegiant denies – Allegiant so notified and warned Plaintiff of

passenger security screenings when Plaintiff purchased his roundtrip ticket. Plaintiff's Request for Judicial Notice states that Allegiant accepted payment on June 13, 2018 for his roundtrip ticket between IWA (August 9, 2018) and PIA (August 12, 2018) which was confirmed by reservation number 7LNM69. FAC, [ECF 9], at ¶ 2. Plaintiff's roundtrip ticket together with Allegiant's publicized Terms and COC governing Plaintiff's ticket forms the basis of the relationship on which Plaintiff relies in order to attempt to impose liability.

Plaintiff's reference to his Allegiant ticket in the FAC, *see* [ECF 12], ¶¶ 20, 40, necessarily incorporates the COC and Plaintiff should not be permitted to evade dismissal under Rule 12(b)(6) simply because he failed to attach the COC to his FAC which proves his claim has no merit. *See, e.g.*, *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (Posner, J.) (noting that "[t]he exception to Rule 12(b) that these cases carve (whatever its precise breadth) has been thought to follow from Rule 10(c); the concern is that, were it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit."). Here, the applicable COC informed Plaintiff, in relevant part, of the following: § 5 ("[p]assengers and their baggage are subject to inspection with an electronic detector with or without the passenger's consent or knowledge[]"); § 10.2 (Allegiant will refuse to transport "[a]ny passenger who refuses to permit the search of his or her person or property for explosives or a concealed, deadly or dangerous weapon or article[]"); and, § 125 (notice that "[a]ll transportation sold and carriage is performed subject to compliance with all applicable laws and governmental regulations, including those of the U.S. Department of Transportation and the Federal Aviation Administration, many of which are not specified herein but are nonetheless binding on Carrier and all passengers."). *See* **Exhibit A**. Plaintiff was therefore on notice that his

person would be searched, and Allegiant respectfully requests the Court to consider the attached COC without converting its Motion to Dismiss into a Motion for Summary Judgment.[7]

Thus, whether Plaintiff reviewed the applicable COC or not, Allegiant did in fact provide notification and warning to Plaintiff of TSA screening through its COC, and for this reason, Plaintiff cannot prevail on a theory of negligence based on a failure to warn as a matter of law and fact.

### C.     Plaintiff's NIED Claim Fails because Allegiant Owed No Duty to Protect Plaintiff While he was under Exclusive Federal Control of the TSA

Plaintiff's claims against Allegiant in counts Sixteen and Nineteen of the FAC fail to state a claim for NIED under either Illinois or Arizona law. Based on the FAC, Allegiant presumes Plaintiff's claims against Allegiant regarding the infliction of emotional distress relate to what he experienced while in TSA custody, because Allegiant has found no authority supporting the idea that an airline could be found liable for infliction of emotional distress based on its failure to give notice or warn a ticketed passenger of TSA screening.

### 1.     Plaintiff's NIED Claim in the FAC Fails under Illinois Law

Plaintiff's NIED claim fails under Illinois law because Allegiant owed Plaintiff no duty once he was under the exclusive custody and control of the TSA. To establish NIED under Illinois law, a direct victim must allege: (1) that defendant owed plaintiff a duty; (2) that defendant

---

[7]     Documents attached to a motion to dismiss are considered part of the pleadings when they are referred to in the plaintiff's complaint and are central to his claim. *McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006) (citations omitted). Where the heart of the plaintiff's claim is based on a written instrument which is referenced in the complaint, a court may consider the instrument when it is attached to a motion to dismiss without converting the motion into a motion for summary judgment. *Id.*; *see also Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005) (citing *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)) (noting the limited exception to the bar on considering matters outside the pleadings for attachments that are central to plaintiff's claim applies especially when the court must interpret a contract to determine whether the plaintiff stated a claim).

breached that duty; and (3) that plaintiff's injury was proximately caused by that breach. *Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000) (citation omitted). If plaintiff has not alleged facts sufficient to impose a duty on defendant, plaintiff has failed to state a claim, and the action should be dismissed. *Id.* (citation omitted). Here, Plaintiff claims he suffered emotional distress as a result of the security screening and physical "pat down" he endured at the hands of the TSA. *See* FAC, ¶¶ 35,61. Because Allegiant was under no duty to protect Plaintiff from TSA screening, his claim against Allegiant for NIED fails under Illinois law.

Courts have recognized that, "[g]iven the regulatory structure of the TSA, [a carrier's] duty to aid a passenger in danger does not extend to preventing injuries that occur at the hand of TSA agents." *Hogan v. Northwest Airlines, Inc.*, No. 11-cv-14888, 2013 WL 607852, *5 (E.D. Mich. Feb. 19, 2013); *see also Narvaez v. American Airlines, Inc.*, No. 09 Civ. 6397(DLC), 2010 WL 5072114, *2 (S.D.N.Y. Dec. 13, 2010) (granting summary judgment in favor of airline where plaintiff was injured while going through TSA security screening and noting that the security checkpoint area is an exclusively "federal facility"). In *Hogan*, the District Court granted the airline's Rule 12(b)(6) Motion in a suit arising out of injuries a passenger sustained while going through TSA screening. 2013 WL 607852, at *4-5. The district court explained that "[t]he federal regulations that govern the operation of TSA security areas emphasize the exclusive control that the TSA exercises over those areas." *Id.* Importantly, those regulations preclude any person, even airline attendants, from interfering with TSA screening personnel (49 C.F.R. § 1540.109)). *Id.* at *5, n.7. Accordingly, "[plaintiff's] allegations do not support any reasonable inference that [the airline] owed a duty to [plaintiff] while she was within the bounds of the TSA security area." *Id.*

The district court further rejected plaintiff's argument that the airline owed plaintiff a duty to aid the plaintiff due to the "special relationship" that exists between a passenger and a common

carrier. *Id.* at *4. "Congress' decision to create the TSA, overrides any duty of an airline to assist passengers when those passengers are under the TSA's control." *Id.* at *5. Specifically:

> [The airline] cites the federal regulations that give the TSA ultimate authority over all other persons within the security checkpoint. Title 49 mandates that the TSA operate security checkpoints in airport terminals to the exclusion of all other personnel. This is a fitting instance of an overriding, legislatively declared public policy which limits the scope of a private entity's duty. Given the regulatory structure of the TSA, [the airline's] duty to aid a passenger in danger does not extend to preventing injuries that occur at the hand of TSA agents while the passenger is within the TSA's security area.

*Id.* (internal citation omitted).

Thus, contrary to the allegations in the FAC, Allegiant owed Plaintiff no duty of care while he was under the TSA's control. As a matter of law, "the [airline's] control over [plaintiff] dissolved at the checkpoint entrance[.]" *Hogan*, 2013 WL 607852, at *4. The moment the TSA scanned Plaintiff's ID and boarding pass, he was under the TSA's – not Allegiant's – exclusive control. Even if Allegiant knew of Plaintiff's physical condition – which it did not – Allegiant had no ability to prevent or protect Plaintiff from what he perceived to be an unreasonable search of his person. Accordingly, Allegiant's Motion to Dismiss should be granted as to Plaintiff's NIED claim under Illinois law.

### 2.    Plaintiff's NIED Claim in the FAC Fails under Arizona Law

Plaintiff also cannot establish his claim for NIED under Arizona law. Arizona law only recognizes the tort of NIED if the plaintiff witnesses an injury to a closely related person, suffers mental anguish that manifests itself as a physical injury, and was within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant. *Guerra v. State*, 348 P.3d 423, 426 (Ariz. 2015). Here, Plaintiff only alleges injury to himself. Therefore, he fails to state a claim for NIED under Arizona law.

**D.      Plaintiff's Claim for IIED Fails Because Allegiant Did Not Engage in the Conduct Alleged**

Plaintiff's claims for IIED against Allegiant in counts Seventeen and Twenty of the FAC likewise must be dismissed for failure to state a claim pursuant to Rule 12(b)(6). "To prevail on a claim of [IIED], under Illinois law, the plaintiff must prove: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress." *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 26, 115 N.E.3d 1245, 1254, *appeal denied*, 124 N.E.3d 500 (Ill. 2019). A plaintiff alleging IIED under Arizona law must show the defendant caused severe emotional distress by committing extreme and outrageous conduct with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result. *Shepherd v. Costco Wholesale Corp.*, 441 P.3d 989, 994 (Ariz. Ct. App. 2019), *review granted on other grounds* (Jan. 7, 2020) (citation omitted).

Under Illinois law, whether conduct is extreme and outrageous is determined using an objective standard based upon all of the facts and circumstances present in a particular case – mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not constitute extreme and outrageous conduct for the purposes of an IIED claim. *See Taliani*, 2018 IL App (3d) at ¶ 26 (citation omitted). Rather, for extreme and outrageous conduct, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community. *Id.* (citation omitted). The same is true under Arizona law. *See Shepherd*, 441 P.3d at 994 ("The conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.") (citation and internal quotations omitted).

18

Here, even taking Plaintiff's allegations in the FAC as true, the conduct alleged by the TSA in performing the security screenings or its requiring Plaintiff to undergo a physical "pat down" on August 9 and August 12, or the TSA's refusal to engage in the alternative screening proposed by Plaintiff on August 12, could not be "so extreme" or "intolerable in a civilized community" so as to satisfy the requirements of an IIED claim. And, in any event, none of this is of any moment with regard to Plaintiff's IIED claims against Allegiant. Nowhere in the FAC does Plaintiff allege that Allegiant engaged in any of the conduct which allegedly caused him extreme emotional distress. Nor is Allegiant aware of any authority whereby a defendant can be held liable for IIED based on the failure to give notice or warn of an open and obvious legal requirement of federal law such as TSA screening of ticketed passengers.  Accordingly, Allegiant's Motion to Dismiss should be granted as to Plaintiff's IIED claim under Illinois and Arizona law.

III.     **Allegiant Cannot Be Liable for Violations of Plaintiff's Constitutional Rights**

Finally, to the extent that the FAC could be construed to allege claims based on Allegiant's violation of Plaintiff's constitutional rights, those claims fail as well. It is undisputed that Allegiant is a private entity. The Fourth and Fifth Amendments to the U.S. Constitution protect citizens from conduct by the government, not from conduct by private actors. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (citations omitted); *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009). Similarly, claims brought under the Illinois and Arizona State Constitutions also fail because Plaintiff has not alleged any State action undertaken by Allegiant. *See Cabrera*, 2004 WL 1535850, at *5 n.11 (citing *Kelly v. Mercoid Corp.*, 776 F. Supp. 1246, 1256 (N.D. Ill. 1991) and *Chicago Commons Ass'n v. Hancock*, 804 N.E.2d 703, 707 (Ill. App. Ct. 2004)); *see also Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 669

(Ariz. App. Div. 1 1969) (citations omitted). Accordingly, Plaintiff's claims against Allegiant for Constitutional violations should be dismissed.

**CONCLUSION**

For all the reasons discussed herein, Allegiant is entitled to judgment on the pleadings pursuant to Rule 12(c) and/or Plaintiff's claims against Allegiant should be dismissed pursuant to Rule 12(b)(6). Because Plaintiff's claims against Allegiant asserted in the FAC are untimely and there is no legal basis on which to impose liability, the claims against Allegiant should be dismissed with prejudice.

Dated: November 4, 2020

Respectfully Submitted,

KMA ZUCKERT LLC

*s/ Marnie A. Holz*
Keith S. Yamaguchi, Bar No. 6227242
Marnie A. Holz, Bar No. 6309264
KMA ZUCKERT LLC
200 West Madison Street, 16th Floor
Chicago, Illinois 60606
Tel: (312) 345-3000
Fax: (312) 345-3119
mholz@kmazuckert.com

*Attorneys for Defendant,*
*ALLEGIANT AIR, LLC*