E-FILED
Wednesday, 04 November, 2020  02:32:14 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

# Allegiant Contract of Carriage

Effective on and after May 9, 2017

Passenger transportation by Allegiant Air, LLC. (hereafter "Carrier") is subject to the following terms and conditions, in addition to any terms and conditions printed on or in any Ticketless Travel Confirmation, specified on Carrier's Internet site with respect to electronic ticketing, or published in Carrier's schedules. By purchasing or accepting transportation, the passenger agrees to be bound thereby.

Review Allegiant's Terms and Conditions on ticketing, non-refundability, baggage and check-in.
Review Allegiant's Luggage Limitations of Liability
Review Allegiant's Notice - Overbooking of Flights

## 1. Definitions

**Baggage** means all luggage, including suitcases, garment bags, tote bags, packages, camera and electronics bags, computer and equipment cases, briefcases, typewriters, and similar articles, whether carried by the passenger in the cabin or carried in the aircraft cargo compartments. Coats and wraps, when carried by the passenger in the passenger cabin, will not be considered as baggage.

**Baggage tag/Baggage Check** means a document issued by Carrier solely for identification of checked baggage, a portion of which (Tag) is affixed by Carrier to a particular article of checked baggage for routing purposes and a portion of which (Check) is given to the passenger for the purpose of claiming the baggage.

**Carriage** means the transportation of passengers and/or baggage by air, gratuitously or for hire, and all services of Carrier incidental thereto.

**Carrier** means Allegiant Air, LLC.

**Checked baggage** means baggage of which Carrier takes sole custody and for which Carrier has attached a baggage tag(s) and/or issued a baggage check(s).

**Individual with a disability** means a person who:
1. has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities;
2. has a record of such an impairment; or
3. is regarded as having such impairment, as further defined in U.S. Department of Transportation regulations at 14 C.F.R. § 382.3.

**Nonstop flight** means a flight scheduled to operate between the origin and destination points without intermediate stops.

**One—way** means travel from one point to another on Carrier's scheduled air service assigned for travel between the two points.

**Passenger** means any person, except members of the crew, carried or to be carried in an aircraft with the consent of Carrier.

**Qualified individual with a disability** means an individual with a disability who:
1. with respect to accompanying or meeting a traveler, use of ground transportation, using terminal facilities, or obtaining information about schedules, fares, or policies, takes those actions necessary to avail himself or herself of facilities or services offered by Carrier to the general public, with reasonable accommodations, as needed, provided by Carrier;
2. with respect to obtaining air transportation on Carrier, offers, or makes a good faith attempt to offer, to purchase or otherwise to validly obtain air transportation; or
3. with respect to obtaining air transportation or other services or accommodations, as provided by U.S. Department of Transportation regulations on Nondiscrimination on the Basis of Disability in Air Travel, 14 C.F.R. Part 382:
   a. purchases or possesses a valid Ticketless Travel Confirmation for air transportation on Carrier and presents himself or herself at the airport for the purpose of traveling on the flight for which the Confirmation has been purchased or obtained;
   b. meets reasonable, nondiscriminatory requirements of this Contract of Carriage applicable to all passengers; and

   c.   whose carriage will not violate the requirements of the Federal Aviation Regulations or jeopardize the safe completion of the flight or the health or safety of other persons.

**Roundtrip** means travel from one point to another and return to the first point.

**Scheduled air service** means any flight scheduled in the current edition of the Official Airline Guide (OAG), Carrier's published schedule, Carrier's Internet site, or the computer reservation system used by Carrier.

**Ticketless Travel Confirmation** means the electronically—recorded information in Carrier's computer reservation system that provides for the carriage of the passenger occupying a single seat and his or her baggage.

**Unchecked baggage** is baggage other than checked baggage.

## 2. Not Used

## 3. Application of Conditions

The terms and conditions contained in this Contract of Carriage shall govern the application of all fares, rates, and charges published by Carrier and will apply only to Carrier's routes and services. No agent, servant, or representative of Carrier has authority to change or waive any provision of this Contract of Carriage unless authorized by a corporate officer of Carrier.

## 4. International Travel

In the event that any passenger purchasing transportation on Carrier may be determined to be in international transportation under the Montreal Convention, Carrier's liability in the event of a passenger's death or bodily injury is limited, in most cases, to proven damages not to exceed 113,100 Special Drawing Rights per passenger, with liability up to this limit not dependent upon negligence on the part of Allegiant.

## 5. Electronic Surveillance of Passengers and Baggage

Passengers and their baggage are subject to inspection with an electronic detector with or without the passenger's consent or knowledge.

## 6. – 9. Not Used

## 10. Refusal to Transport

Carrier will refuse to transport, or will remove from an aircraft at any point, any passenger in the following circumstances:

1. Safety and Government Request or Regulation – Whenever such action is necessary for reasons of aviation safety or to comply with any Federal Aviation Regulation or other applicable U.S. or foreign government regulation, or to comply with any governmental request for emergency transportation in connection with the national defense, or whenever such action is necessary or advisable by reason of weather or other conditions beyond Carrier's control (including, without limitation, acts of God, force majeure, strikes, civil commotions, embargoes, wars, hostilities, or disturbances, whether actual, threatened, or reported).

2. Search of Passenger or Property – Any passenger who refuses to permit the search of his or her person or property for explosives or a concealed, deadly, or dangerous weapon or article.

3. Proof of Identity – Any passenger who refuses on request to produce positive identification. NOTE: Carrier shall have the right to require, but shall not be obligated to require, positive identification of persons purchasing ticketless travel and/or presenting a Ticketless Travel Confirmation for the purpose of boarding aircraft.

4. Special Medical Requirements – Carrier will refuse to transport persons requiring the following medical equipment or services, which either are not authorized or cannot be accommodated on Carrier's aircraft: medical oxygen for use onboard the aircraft, incubators, respiratory assistance devices that must receive power from the aircraft's electrical power supply, or persons who must travel on a stretcher.

5. Qualified Individuals with a Disability – Carrier will transport qualified individuals with a disability in accordance with the conditions and requirements of U.S. Department of Transportation regulations, 14 C.F.R. Part 382, unless the carriage of such individuals may impair the safety of the flight or violate Federal Aviation Regulations. Pursuant to 14 CFR § 382.27, Carrier requires 48 hour minimum advance notice and 1 hour advance check–in for a qualified individual with a disability who wishes to receive the following services available on the carrier's flights: (1) Provision by the carrier of hazardous material packaging for a battery for a wheelchair or other assistive device, (2) Accommodations for a group of ten or more qualified individuals with a disability, who make reservations and travel as a group, (3) Provision of an on–board wheelchair on aircraft that does not have an accessible lavatory. However, pursuant to 14 C.F.R. § 382.113, Carrier will not provide certain extensive in–flight special services such as assistance in actual eating, assistance within the lavatory or at the individual's seat with elimination functions, or provision of medical services. Moreover, pursuant to 14 C.F.R. § 382.29, Carrier may require that a qualified individual with a disability be accompanied by an attendant as a condition of being provided air transportation in the following circumstances:
    1. When the individual, because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from Carrier's Employees, including the safety briefing required by 14 C.F.R. §§ 121.571(a)(3) & (a)(4);
    2. When the individual has a mobility impairment so severe that the individual is unable to assist in his or her own evacuation of the aircraft; or
    3. When the individual has both severe hearing and severe vision impairments, if the individual cannot establish some means of communication with Carrier's Employees adequate to permit transmission of the safety briefing required by 14 C.F.R. §§ 121.571(a)(3) & (a)(4)—and to enable the individual to assist in his or her own evacuation of the aircraft in the event of an emergency.
    If Carrier determines that an individual meeting the criteria of Article 10.E. (1), (2), or (3) above must travel with an attendant, contrary to the individual's self–assessment that he or she is capable of traveling independently, Carrier will not charge the individual with the disability for the transportation of the attendant while accompanying such individual. Furthermore, if, because there is not a seat available on a flight for an attendant whom Carrier has determined to be necessary, an individual with a disability having a confirmed reservation is unable to travel on the flight, such individual will be eligible for denied boarding compensation under Article 105 below. For purposes of determining whether a seat is available for an attendant, the attendant shall be deemed to have checked in at the same time as the individual with the disability.
6. Comfort and Safety – Carrier may refuse to transport or remove from the aircraft at any point any passenger in the following categories as may be necessary for the comfort or safety of such passenger or other passengers:
    1. Persons whose conduct are or have been known to be disorderly, abusive, offensive, threatening, intimidating, or violent;
    NOTE: Carrier will not refuse to provide transportation to a qualified individual with a disability solely because the individual's disability results in appearance or involuntary behavior that may offend, annoy, or inconvenience crewmembers or other passengers.
    2. Persons who are barefoot (other than infants);
    3. Persons who are unable to occupy a seat with the seat belt fastened;
    4. Persons who appear to be intoxicated or under the influence of drugs;
    5. Persons who are known to have a contagious disease, if the Carrier determines the person's condition poses a direct threat as defined in 14 CFR § 382.3;
    6. Persons who have an offensive odor, except where such condition is the result of a qualified disability;
    7. Persons who wear or have on or about their persons concealed or unconcealed deadly or dangerous weapons; provided, however, that Carrier will carry passengers who meet the qualifications and conditions established in Federal Aviation Regulation, 14 C.F.R. § 108.11;
    8. Manacled persons in the custody of law enforcement personnel; persons brought into the airport in manacles; persons who have resisted escorts; or escorted persons who express to Carrier's Employees an objection to being transported on the flight;
    9. Persons who have misrepresented a condition which becomes evident upon arrival at the airport, and the condition renders the passenger unacceptable for carriage;
    10. Infants fourteen (14) days of age or younger, unless approved for carriage in writing by an attending physician; or

11. Persons who are unwilling or unable to abide with Carrier's non–smoking rules.

Disposition of the fare of any passenger denied transportation or removed from Carrier's aircraft enroute under the provisions of Article 10 is governed by Article 90 of this Contract of Carriage.

## 11. – 14. Not Used

## 15. Ticketless Travel Confirmation – General

1. No person shall be entitled to transportation except upon presentation of a valid Ticketless Travel Confirmation or proof of identification acceptable to Carrier that transportation has been purchased through Carrier's electronic ticketing or Ticketless travel systems. Such electronic ticketing documentation shall entitle the person to transportation only between the points of origin and destination.
2. A Ticketless Travel Confirmation is valid for 365 calendar days from the date of issue, except as noted below:
   1. Ticketless Travel Confirmations issued with fare restrictions, i.e., nonrefundable fares, are valid only on the flight and date shown on the Ticketless Travel Confirmation. If a Customer purchases transportation with fare restrictions but chooses not to travel on the flight and date for which the Ticketless Travel Confirmation is issued, the fare paid may, within 365 calendar days from the date of purchase, be applied toward the purchase of another Ticketless Travel Confirmation; however, the new Confirmation may be subject to a change fee and be more expensive or subject to different terms, conditions, or restrictions. No cash refund or credit card adjustments will be made for Ticketless Travel Confirmations with fare restrictions.
3. Ticketless Travel Confirmations are not transferable unless specified thereon, but Carrier is not liable to the owner of a Confirmation for honoring or refunding such Confirmation when presented by another person.

## 16. – 19. Not Used

## 20. Reservations

1. A reservation on a given flight is valid when the availability and allocation of space is confirmed by a Reservations Sales Agent of Carrier or upon issuance of a Ticketless Travel Confirmation number, and the passenger's name is entered into Carrier's reservations system.
2. Airport check–in time limits: Carrier may cancel the reservation of any passenger who fails to check–in at least 45 minutes and arrive at the boarding gate at least 30 minutes before the scheduled departure time of the flight for which the reservation was made.
3. Carrier will refuse to carry any person when such refusal is necessary to comply with an applicable governmental regulation.
4. When a roundtrip or multi–segment reservation has been made and the passenger fails to claim his or her reservation for the first portion of the trip, Carrier reserves the right to cancel the return or continuing portions of the passenger's reservation for purposes of reservation inventory management.  Carrier does not prohibit or penalize what is commonly known as "back–to–back" or "hidden–city" ticketing.

## 21. Groups Policies

1. Groups of ten (10) or more will need to be booked on multiple reservations.

## 22. – 24. Not Used

## 25. Ground Transportation

Carrier does not assume responsibility for the ground transportation of any passenger or his or her baggage between any airport used by Carrier and any other location. Ground transportation is at the passenger's risk and expense.

## 26. – 29. Not Used

## 30. Application of Fares – General

1.  Transportation is subject to the fares and charges in effect on the date on which such Ticketless Travel Confirmation was issued. If a Ticketless Travel Confirmation has been issued before an increase in the fare becomes effective, it shall be honored for transportation between the points, and at the class of service, for which it was purchased. The only exception for a post-purchase price increase would apply if the full amount of the itinerary has not yet been paid. This includes, but is not limited to, an increase in the price of seats, an increase in the price for the carriage of passenger baggage, an increase in an applicable fuel surcharge, or an increase in a government-imposed tax or fee. Fares may fluctuate and are subject to change without notice. No refunds or airline system credits will be provided after a reservation has been made through Customer Care. However, customer can make changes to reservations online at www.allegiantair.com.
2.  Fares are published in Carrier's reservations system and may be obtained from an Allegiant Air Reservations Sales Agent by telephone at  702.505.8888 on Carrier's Internet site at www.allegiantair.com, or through an authorized travel agent. Some travel agencies, however, may impose an additional charge for this service.
3.  All published fares and charges are stated in U.S. currency.
4.  No stopovers are permitted on published fares, except upon combination of local fares.

## 31. – 34. Not Used

## 35. Carriage of Children

1.  Infants Fourteen (14) Days of Age or Younger – Carrier will not provide transportation services to any infant fourteen (14) days of age or younger, unless an attending physician approves such infant for air travel in writing. Infants must be accompanied by a passenger fifteen (15) years of age or older.
2.  Children between Fifteen (15) Days and Under Two (2) Years of Age – One child over fifteen (15) days and under two (2) years of age, not occupying a seat, will be carried without charge when accompanied by a fare–paying passenger fifteen (15) years of age or older. Carrier cannot guarantee that an unoccupied seat will be available for any child traveling without charge and without a confirmed reservation. Proof of age, such as a birth certificate, is required. Safety seats for children without a confirmed reservation may have to be transported as checked baggage if unoccupied seats are not available.
3.  Children fifteen (15) days and under two (2) years of age traveling on a confirmed reservation, with or without the use of a safety seat, will be charged the applicable fare.
4.  Unaccompanied Minor Children
    1.  Carrier does not accept reservations for carriage of fare-paying Unaccompanied Minors or unescorted children under the age of fifteen (15) years.
    2.  Children fourteen (14) years and younger must be accompanied by an adult fifteen (15) years or older.
    3.  Special supervision for any travelers is not offered.
5.  Responsibilities of Carrier – Carrier assumes no responsibilities for travelers fifteen (15) to seventeen (17) years old beyond those applicable to adult passengers.
6.  In the case of a flight for which Carrier has issued a weather advisory, Carrier will refuse carriage to any passenger under the age of 18 if not travelling with a passenger age 18 or older.  Carrier will provide passengers refused carriage under this provision transportation on Carrier's next flight to passenger's destination that is not subject to a weather advisory and on which space is available, or a refund of the unused portion of passenger's fare in accordance with Article 90 below.  A "weather advisory" is issued by Carrier and notified to passengers when weather conditions may prevent the flight from landing at the planned destination because airport conditions or visibility fall below FAA or Carrier safety requirements, meaning Carrier may be unable to operate the flight or may have to land at an alternate airport.

## 36. Not Used

## 37. – 41. Not Used

## 42. Internet Fares

Special promotional fares may be available via the Internet on Carrier's website (Internet address: www.allegiantair.com). Seat availability, fares, and fare restrictions are published in the website presentation.

## 43. Stopovers

1. Carrier's local fares for a flight or flights between a passenger's point of origin and destination shall apply only to published nonstop flights, except as provided in Article 85.A. below.
2. A stopover shall occur when a passenger arriving at an intermediate or connection point on his or her itinerary fails to depart from such intermediate point on the published connecting flight to the passenger's next intermediate or destination. In the event of a single stopover, the passenger's fare shall be the sum of the appropriate local fares between the point of origin and stopover and the appropriate local fare between the point of stopover and destination. In the event of multiple stopovers, the passenger's fare shall be the sum of:
   1. the appropriate local fare between the point of origin and first stopover; plus
   2. the appropriate local fare(s) between each stopover point and the next subsequent stopover point, if any; plus
   3. the appropriate local fare(s) between the point of last stopover and destination.

## 44. Not Used

## 45. Acceptance of Baggage – General

1. Inspection – All baggage tendered to Carrier for transportation is subject to inspection by Carrier.
2. Acceptance – Carrier will accept as baggage such personal property as is necessary or appropriate for the wear, use, comfort, or convenience of the passenger, as the personal property of the fare–paying passenger and not intended for sale to other persons, subject to the following conditions:
   1. Carrier will refuse to accept baggage for transportation on any flight other than the flight on which the passenger is transported;
   2. Carrier will refuse to accept any baggage for transportation if it or its contents cannot withstand ordinary handling, or if its weight, size, or character renders it unsuitable for transportation on the particular aircraft on which it is to be carried, unless the passenger releases Carrier from liability;
   3. Each piece of baggage tendered to Carrier for carriage must have affixed thereto a current identification tag or label with the passenger' s name, address, and telephone number (if available);
   4. With the exception of wheelchairs, other mobility aids, and assistive devices used by an individual with a disability, Carrier will not accept as baggage any item having outside measurements (i.e., the sum of the greatest outside length plus the greatest outside height plus the greatest outside width) that exceed eighty (80) inches, or that weigh more than forty (40) pounds, except as provided in Article 65 below;
   5. Carrier will refuse to accept baggage that, because of its nature, contents, or characteristics (such as sharp objects, paint, corrosives, or other prohibited hazardous materials), might cause injury to passengers or Carrier's Employees, damage to aircraft or other equipment, or damage to other baggage; and
   6. Carrier will not accept baggage that cannot safely be carried in the baggage compartment of the aircraft.

## 46. Carry–on Baggage

1. Carrier will determine whether or not any baggage of a passenger, because of its weight, size, contents, or character, may be carried in the passenger cabin of the aircraft. Each item of carry–on baggage may have external dimensions no larger than nine inches by fourteen inches by twenty-two inches (9 in. x 14 in. x 22 in.). All carry–on baggage must be stowed underneath a seat or in an overhead compartment. Hard–sided items (i.e., those with inflexible surfaces) may be placed only on the floor of the overhead compartment (i.e., not on top of other items in the compartment) or underneath a seat. Carry–on baggage is the sole responsibility of the passenger. Claims for damaged,

lost, forgotten, or stolen carry–on baggage will not be accepted by Carrier. Allegiant Air will charge a fee for a carry-on bag as well as for items intended to carry–on board the aircraft, but which exceed the specified dimensions, and/or require the services of gate checking at the aircraft door.

2. In accordance with FAA/TSA Security Directives, passengers are restricted to one (1) item of carry–on baggage that does not exceed external dimensions of nine inches by fourteen inches by twenty-two inches (9 in. x 14 in. x 22 in.) (e.g., roll–aboard bag, garment bag, tote bag) plus one smaller personal–type item (e.g., purse, briefcase, laptop computer, small backpack), not to exceed external dimensions of seven inches by fifteen inches by sixteen inches (7 in. x15 in. x16 in.), provided that such items are capable of being carried onboard the aircraft by one person without assistance and are capable of being stowed in an overhead compartment or completely underneath a seat. If requested, qualified individuals with a disability will be provided assistance by Carrier's Representatives in loading, stowing, and retrieving carry–on items, including authorized assistive devices. Carrier reserves the right to further restrict the size and number of carry–on items.

3. In addition to the carry-on baggage allowance provided herein, items such as reading material, food for en route consumption, a diaper bag, a small camera, and a coat, jacket, wrap, or similar outer garment, may be carried onboard the aircraft.

4. Mobility and other assistive devices authorized for carriage in the aircraft cabin upon which a qualified individual with a disability is dependent may be carried in addition to the two (2) item cabin baggage allowance.

5. Unless unoccupied seats are available on a flight, Carrier requires a reservation and purchase of transportation at the appropriate fare to ensure that a safety seat or infant seat may be used during flight. Only federally–approved and labeled safety seats or infant seats are permitted for use aboard Carrier's aircraft. Federal regulations prohibit the use of child booster seats and harness–type or vest–type restraining devices, except for the AmSafe Aviation CARES.

6. The following conditions apply to acceptance for carriage in the aircraft passenger cabin of bass violas, cellos, guitars, and other musical instruments, and electronic, computer, and audio/video equipment and parts thereof, whose size prevents such instruments or equipment from being handled as normal carry–on baggage:
    1. the instrument or equipment must be contained in a case;
    2. a reservation must be made for the instrument or equipment at the applicable fare;
    3. the instrument or equipment must be secured in the first window seat aft of a floor–to–ceiling bulkhead. Such seats are limited in availability.

7. Carrier will refuse to transport items of carry–on baggage that may be harmful or dangerous to a passenger, the flight crew, or the aircraft.

# 47. Animals

The Carrier will transport live animals only in the passenger cabin on flights within the contiguous 48 United States and will not transport animals as checked baggage. Live animals that can be carried on board include domestic dogs and cats only, and must be transported in a hard-sided or soft-sided, leak-proof carrier that can fit under a seat. All pet carriers may not exceed external dimensions of nine inches by sixteen inches by nineteen inches (9 in. X 16 in. x 19 in.). The CSA/GOA will determine if there is adequate room in the carrier for any pet(s). There is a one–hundred dollar ($100.00) fee for each one–way flight for a kennel or carrier treated as carry-on baggage as described above. Customers with pets may not occupy an exit row or one row forward or aft of an exit row, or in the bulkhead rows. There may be 2 pet carriers per row (1 on each side) maximum. Carriers may NOT be strapped into the customer seat. Pets must remain in carrier at all times. Passengers with a pet carrier may bring one personal item, not exceed exterior dimensions of 7 in. x 15 in. x 16 in. (17.8 cm x 38.1 cm x 40.6 cm), which may be stored in the overhead bin space free of charge. Passengers with a pet carrier who also bring a carry-on bag, not to exceed exterior dimensions of 9 in. x 14 in. x 22 in. (22.9 cm x 35.6 cm x 55.9 cm) will be charged accordingly for a carry-on bag.

# 48. Service Animals

1. Carrier permits dogs and other service animals used by an individual with a disability to accompany such individual in the passenger cabin at no charge.
2. Carrier will accept as evidence that an animal is a service animal the presentation of identification cards, tags, or other written documentation; the presence of harnesses or markings on harnesses; or the credible verbal assurances of the individual with a disability using the animal.

3. Carrier will permit a service animal to accompany a qualified individual with a disability at either a bulkhead seat or a seat other than a bulkhead seat, as the individual prefers, unless the animal obstructs an aisle or other area that must remain unobstructed in order to facilitate an emergency evacuation. Service animals may not occupy a seat.
4. A trained service animal accompanied by a trainer will be permitted to travel aboard Carrier' s aircraft only if the animal is being delivered to the domicile of an individual with a disability who either owns or, upon delivery, will take immediate ownership of the animal for that individual's personal use. No additional charge will be assessed for carriage of a trained service animal being delivered to the domicile of the animal's owner under such circumstances.
5. Service animals in training will be accepted by Carrier for transport.
6. Emotional Support or Comfort Animals do not need to have specific training for that function. Proper documentation (no older than one year from the date of the passenger's scheduled initial flight) is required on letterhead from a mental health professional (e.g., a psychiatrist, psychologist, licensed clinical social worker, or other medical doctor specifically treating the passenger's mental or emotional disability) stating:
    1. That the passenger has a mental or emotional health-related disability recognized in the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition (DSM IV).
    2. That having the animal accompany the passenger is necessary to the passenger's mental health or treatment or to assist the passenger with his or her disability during the flight or at the passenger's destination.
    3. That the individual providing the assessment of the passenger is a licensed mental health professional and the passenger is under his or her professional care.
    4. The date and type of the mental health professional's license and the state or other jurisdiction in which it was issued.

Airline personnel will require this documentation as a condition of permitting the animal to accompany the passenger in the cabin. The purpose of this provision is to prevent abuse by passengers that do not have a medical need for an emotional support or comfort animal and to ensure that passengers who have a legitimate need for emotional support or comfort animals are permitted to travel with their service animals on the aircraft. Carrier does not require the documentation to specify the type of mental health disability, e.g., panic attacks.

## 49. – 54. Not Used

## 55. Checking of Baggage

1. Carrier will accept baggage for checking from a fare–paying passenger when tendered to Carrier no earlier than four (4) hours in advance of flight departure time at Carrier' s airport ticket counter or curb–side check–in station, or at an earlier time on the day of commencement of travel as may be authorized by Carrier's Employees at the departure airport. Carrier will not check baggage tendered:
    1. to a point beyond the destination indicated on the passenger's Ticketless Travel Confirmation;
    2. to an intermediate stop or connection point;
    3. for a flight to be operated on a later date.

## 56. – 59. Not Used

## 60. Checked Baggage Allowance

Upon presentation of a bag to be checked by a fare–paying passenger of a valid Ticketless Travel Confirmation, a checked baggage fee will apply.

Each piece of sporting equipment will be considered a checked bag with all applicable fees applied per person, per bag, per segment. All Baggage Fees are non-refundable except as provided in Article 65 below. Each bag must weigh 40 lbs or less and the outside measurements of each bag must not exceed eighty (80) inches. Applicable fees will be applied for those bags exceeding the weight and size limits. The total number of bags allowed may not exceed 5 per passenger.

1. Sporting Equipment – The following sporting equipment will be considered as an additional checked bag when in a container acceptable to Carrier:
   1. Bowling bag, including ball and shoes;
   2. Golf bag (in a hard–sided golf bag carrying case provided by the passenger), including clubs, balls, and shoes;
   3. Hockey stick;
   4. Hockey equipment;
   5. Rifle (maximum two (2) unloaded and encased in a locked, hard-sided container acceptable to carrier for withstanding normal checked baggage handling without sustaining damage to firearm);
   6. Shotgun (maximum two (2) unloaded and encased in a locked, hard-sided container acceptable to carrier for withstanding normal checked baggage handling without sustaining damage to firearm);
   7. Handgun (maximum one (1) unloaded and encased in a locked, hard-sided container acceptable to carrier for withstanding normal checked baggage handling without sustaining damage to firearm);
   8. Fishing tackle box and fishing rod, so long as the rod is encased in a cylindrical fishing rod container suitable to Carrier for withstanding normal checked baggage handling without sustaining damage to the rod;
   9. Snow ski equipment encased in a container or containers acceptable to Carrier and including no more than one (1) pair of skis or one (1) snow board, one (1) pair of ski boots, and one (1) pair of ski poles;
   10. Water ski equipment encased in a container or containers acceptable to Carrier and including no more than one (1) pair of water skis and one (1) life preserver;
   11. Skateboard in a container or case acceptable to Carrier;
   12. Archery equipment, including a bow, arrows, and an average size target (large target stands cannot be accepted), so long as the bow and arrows are encased in a container acceptable to Carrier for withstanding normal baggage handling without sustaining damage to the equipment.
   13. Scuba equipment, provided air tanks are empty and all accompanying equipment (BCD, mask, flippers, weight belt, etc.) are encased together in a container acceptable to Carrier.
2. One (1) infant stroller and one (1) infant or child safety seat will be checked for each fare–paying passenger at no charge.

3. Firearms – Carrier will not accept assembled firearms and ammunition for transportation except as follows:
   1. Unloaded sporting firearms will be accepted, when encased in a locked, hard-sided container acceptable to carrier for withstanding normal checked baggage handling without sustaining damage to firearm.
   2. Small–arms ammunition intended for sport or hunting will be accepted only if carried within sturdy checked baggage in the manufacturer' s original container or an equivalent fiber, wood, or metal container specifically designed to carry ammunition and providing for sufficient cartridge separation. Carrier will accept no more than a total gross weight of eleven (11) pounds of ammunition per passenger.
4. If a mobility aid or assistive device, upon which a passenger who is a qualified individual with a disability is dependent, cannot be carried in the passenger cabin due to space limitations, such aid or device will be checked and carried in addition to the 2 piece maximum without charge.

## 61. – 64. Not Used

## 65. Excess Baggage Charges

1. Application – Excess baggage charges specified in this Article will be applicable from the point at which the baggage is accepted to the point to which the baggage is checked.
2. Charges:
   1. Baggage in excess of the five (5) bag maximum specified in Article 60 above will incur a charge of fifty dollars ($50.00) per piece per segment.
   2. Baggage in excess of eighty (80) inches but not more than one hundred fifteen (115) inches (sum of outside length plus outside height plus outside width) will incur an oversize charge of seventy–five dollars ($75.00) per item in addition to the assessed Baggage Fee.

   3. Baggage weighing between forty–one (41) and seventy (70) pounds will be accepted as checked baggage for an excess weight charge of fifty dollars ($50.00) per item in addition to the assessed Baggage Fee. Baggage weighing between seventy–one (71) and ninety-nine (99) pounds will be accepted as checked baggage for an excess weight charge of seventy–five dollars ($75.00) per item in addition to the assessed Baggage Fee.

3. No baggage more than 99 lbs. will be accepted.

## 66. – 74. Not Used

## 75. Baggage – Limitation of Liability

1. The liability, if any, of Carrier for loss of, damage to, or delay in the delivery of checked or unchecked baggage and/or its contents, with the exception of wheelchairs, mobility aids, and assistive devices used by an individual with a disability, is limited to the proven amount of damage or loss, but in no event shall be greater than three-thousand, five-hundred dollars ($3,500) Domestic or 1,131 Special Drawing Rights International per fare-paying passenger. Carrier will compensate the passenger for reasonable, actual and documented damages incurred as a result of the loss of, damage to, or delayed delivery of such baggage up to the limit of liability or declared valuation, whichever is higher, provided the passenger has exercised reasonable effort to minimize the amount of damage. Actual value for reimbursement of lost or damaged property shall be determined by the documented original purchase price less depreciation for prior usage.

2. Carrier will be liable for such personal property only for the period in which it is in the custody of Carrier. While every reasonable effort will be made to return items inadvertently left behind by passengers onboard an aircraft, Carrier assumes no custody or responsibility for property carried onboard an aircraft by a passenger.

3. Carrier's liability with respect to damage to wheelchairs, other mobility aids, and assistive devices upon which an individual with a disability is dependent shall be the documented cost of repair. If a wheelchair, mobility aid, or assistive device is lost or irreparably damaged, the criteria for calculating the compensation for a lost, damaged, or destroyed wheelchair or other assistive device shall be the original purchase price of the device without depreciation. Carrier will also compensate the passenger for other reasonable expenses incurred as a result of the loss of, damage to, or delayed delivery of the wheelchair, mobility aid, or assistive device.

4. Carrier assumes no responsibility and will not be liable for money, jewelry, cameras, photographic, video and electronic equipment (including computers), silverware, natural fur products, precious gems and metals, medication, negotiable papers, securities, business documents, samples, items intended for sale, paintings and other works of art, antiques, collectors' items, photographs, artifacts, antiques, heirlooms, manuscripts, furs, keys, spirits, irreplaceable books or publications, and similar valuables, except for claims arising from international flights covered by the Montreal Convention. Carrier discourages the foregoing items being placed in checked baggage.

## 76. Fragile and Perishable Items as Baggage

Carrier may, but is not obligated to, conditionally accept previously damaged, improperly packed, fragile, or perishable items for carriage as checked baggage subject to the passenger's assumption of risk for damage to or destruction of such items. Fragile or perishable items will not be accepted as checked baggage unless they are properly packed in an original factory–sealed carton or case designed for shipping such items and if the item does not pose a risk of damage to other checked baggage.

## 77. – 79. Not Used

## 80. Claims

1. In the case of loss of, damage to, or delay in delivery of baggage, no claim will be entertained by Carrier unless preliminary written notice of such claim is presented to Carrier at the airport, within four (4) hours after arrival of the flight on which the loss, damage, or delay is alleged to have occurred or within twenty-four (24) hours for missing contents. The preliminary notice may thereafter be amended in writing; however, such amended claim must be presented to Carrier no later than twenty–one (21) days after the occurrence of the event giving rise to the claim.

2. Failure to provide notice within the foregoing time limits will not bar a claim if the claimant establishes to the satisfaction of Carrier that he or she was unable, through no fault or omission of the claimant, to provide notice within the specified time limits.

3. To the maximum extent permitted by law, no legal action on any claim described above may be maintained against Carrier unless commenced within one (1) year of Carrier's written denial of a claim, in whole or in part.

## 81. Smoking

Smoking aboard Carrier's aircraft is prohibited by federal law.

## 82. – 84. Not Used

## 85. Failure to Operate as Scheduled

1. Cancelled Flights or Late or Irregular Operations and Schedule Changes – If Carrier delays, cancels, or fails to operate any flight according to Carrier's published schedule due to a cause beyond Carrier's control as identified in Article 85.B below, or if Carrier voluntarily changes the schedule of any flight, Carrier will, at the request of a passenger confirmed on an affected flight:
   1. transport the passenger on another of Carrier's flights on which space is available at no additional charge; or
   2. in the case of a delay, cancellation, or failure to operate any flight due to a cause beyond Carrier's control as identified in Article 85.B below, and provided in the case of delay that the delay is significant, refund the unused portion of the passenger's fare in accordance with Article 90 below; or
   3. in the case of a schedule change made voluntarily by Carrier, and provided the schedule change is significant, refund the unused portion of the passenger's fare in accordance with Article 90 below.

2. Except to the extent provided in Article 85.A. above, Carrier shall not be liable for any failure or delay in operating any flight due to causes beyond Carrier's control, including but not limited to, acts of God, governmental actions, fire, weather, mechanical difficulties, Air Traffic Control, strikes or labor disputes, or inability to obtain fuel for the flight in question. Carrier shall use its best efforts to notify all affected passengers promptly of planned schedule changes and service withdrawals.

3. Carrier will attempt to transport passengers and their baggage promptly and as scheduled. Flight schedules, however, are subject to change without notice, and the times shown in or on Carrier's published schedules and advertising are not guaranteed. At times, without prior notice to passengers, Carrier may need to substitute other aircraft or airlines and may change, add, or omit intermediate or connecting stops. Carrier cannot guarantee that passengers will make connections to other flights of its own or those of other airlines. In the event of flight schedule changes, Carrier will attempt to so notify affected passengers as soon as possible at the airport or enroute.

## 86. – 89. Not Used

## 90. Refunds

1. Nonrefundable fares – Nonrefundable fares are not eligible for refunds, except as provided in Articles 85.A above and 90.B.through 90.D. below.

2. Flight terminations or involuntary cancellations – If a passenger's scheduled transportation is cancelled, or terminated before the passenger has reached his or her final destination as a result of a flight cancellation or omission of a scheduled stop, Carrier will, at the passenger's option, transport the passenger on another of Carrier's flights on which space is available at no additional charge, or refund the fare for the unused transportation, or provide a credit voucher for such amount toward the purchase of future travel.

3. Denied boarding – If Carrier denies boarding or removes a passenger from an aircraft under conditions described in Article 10 (except Articles 10.B, 10.C, and 10.F) or Article 35.F above, Carrier will refund the fare paid for the unused portion thereof. If Carrier denies boarding or removes a passenger under any of the circumstances enumerated in Article 10.B, 10.C or 10.F, fares paid for any unused travel segment shall be forfeited and non-refundable.

4. Eligible fare refunds and credits will be made by Carrier as follows:

1. when no portion of the transportation has been provided, the refund or credit will be issued in an amount equal to the fare paid (subject to Article 90.C above) less applicable change fees;
2. when a portion of the transportation has been provided, the refund or credit will be made in an amount equal to the difference, if any, between the total fare paid and the fare applicable to the transportation provided, (subject to Article 90.C above) less applicable change fees; or
3. if a customer cancels an entire itinerary within 24 hours after booking the itinerary, provided the scheduled time of departure of the initial flight in the itinerary was at least one week (168 hours) away at the time of booking, a full refund will be issued. Such cancellation may be accomplished online via the customer's "My Allegiant" account or by contacting the Allegiant Reservation Center by telephone.

5. Carrier shall make eligible refunds according to the original form of payment. Refunds for fares purchased with a debit or credit card shall be processed for crediting back to the same card account no later than seven (7) days from the date the refund request is received by Carrier. Refunds for fares purchased with cash or by check will be issued by check no later than twenty (20) days after the refund request is received by Carrier; provided that, with regard to fares purchased by check, in cases where Carrier has reasonable cause to suspect fraud, Carrier may delay making an otherwise eligible refund until such time as the check by which the fare was purchased has cleared the financial institution on which it was drawn and Carrier has received payment from such institution.

# 91. – 104. Not Used

# 105. Denied Boarding Compensation

Carrier does not intentionally overbook flights.

1. The following definitions, as prescribed in 14 C.F.R. § 250.1, pertain solely to the denied boarding compensation provisions of this Article:
   o **Airport** means the airport at which the direct or connecting flight, on which the passenger holds confirmed reserved space, is planned to arrive or some other airport serving the same metropolitan area, provided that the transportation to the other airport is accepted (i.e., used) by the passenger.
   o **Comparable air transportation** means transportation provided to passengers at no extra cost by a direct air carrier holding a certificate of public convenience and necessity or commuter authority issued by the U.S. Department of Transportation, or by a foreign air carrier holding a foreign air carrier permit issued by the U.S. Department of Transportation authorizing the scheduled air transportation of persons.
   o **Confirmed reserved space** means space on a specific date and on a specific flight of Carrier which has been requested by a passenger and which Carrier or its authorized agent has verified, by appropriate notation on the ticket or Ticketless Travel Confirmation, or in any other manner provided by this Contract of Carriage, as being reserved for the accommodation of the passenger.
   o **Stopover** means a deliberate interruption of a journey by the passenger, scheduled to exceed four (4) hours, at a point between the place of departure and the place of final destination.
   o **The sum of the values of the passenger's remaining flight coupons** means the sum of the applicable one–way fares, including any surcharges, airport or passenger facility charges, and air transportation taxes, less any applicable discounts.
2. Request for Volunteers – In the event of an unintentional overbooked flight, Carrier shall request volunteers for denied boarding. A volunteer is a person who responds to Carrier's request for volunteers and who willingly accepts Carrier's offer of compensation, in any amount, in exchange for relinquishing his or her confirmed reserved space. Any other passenger denied boarding is considered to have been denied boarding involuntarily, even if that passenger accepts denied boarding compensation. If an insufficient number of volunteers come forward, Carrier may deny boarding to other passengers. However, Carrier will not deny boarding to any passenger involuntarily who was earlier asked to volunteer without having been informed about the possibility of being denied boarding involuntarily and the amount of compensation specified in Article 105.E. below.
3. Conditions for Payment of Compensation to Passengers Involuntarily Denied Boarding due to an Oversell – Subject to the exception in Article 105.D. below, Carrier will tender to a passenger the amount of compensation specified in Article 105.E. below, when:
   1. the passenger holds a ticket for confirmed reserved space and presents himself or herself for carriage at the appropriate time and place, having complied fully with Carrier's

requirements as to ticketing, reconfirmation, check-in, and acceptability for transportation in accordance with this Contract of Carriage; and

2. other than for reasons set forth in Article 10 above, or when resulting from substitution for operational or safety reasons of an aircraft having a lesser seating capacity than the aircraft originally scheduled, Carrier is unable to accommodate the passenger on the flight for which the passenger holds confirmed reserved space, and such flight departs without the passenger.

4. Exception – The passenger will not be eligible for compensation if Carrier offers comparable air transportation, or other transportation used by the passenger at no extra cost, that, at the time such arrangements are made, is planned to arrive at the airport of the passenger's next stopover or, if none, at the airport of the passenger's final destination not later than one (1) hour after the planned arrival time of the passenger's original flight or flights.

5. Amount of Compensation Payable to Passengers Involuntarily Denied Boarding Due to an Oversell:

0. Domestic Transportation Passengers traveling between points within the United States (including the territories and possessions) who are denied boarding involuntarily from an oversold flight are entitled to: (1) No compensation if the carrier offers alternate transportation that is planned to arrive at the passenger's destination or first stopover not later than one hour after the planned arrival time of the passenger's original flight; (2) 200% of the fare to the passenger's destination or first stopover, with a maximum of $675, if the carrier offers alternate transportation that is planned to arrive at the passenger's destination or first stopover more than one hour but less than two hours after the planned arrival time of the passenger's original flight; and (3) 400% of the fare to the passenger's destination or first stopover, with a maximum of $1,350, if the carrier does not offer alternate transportation that is planned to arrive at the airport of the passenger's destination or first stopover less than two hours after the planned arrival time of the passenger's original flight.

| 0 to 1 hour arrival delay. | No compensation. |
|---|---|
| 1 to 2 hour arrival delay. | 200% of one-way fare (but no more than $675). |
| Over 2 hours arrival delay. | 400% of one-way fare (but no more than $1,350). |

1.     Except as provided below, the airline must give each passenger who qualifies for involuntary denied boarding compensation a payment by cash or check for the amount specified above, on the day and at the place the involuntary denied boarding occurs. If the airline arranges alternate transportation for the passenger's convenience that departs before the payment can be made, the payment shall be sent to the passenger within 24 hours. The air carrier may offer free or discounted transportation in place of the cash payment. In that event, the carrier must disclose all material restrictions on the use of the free or discounted transportation before the passenger decides whether to accept the transportation in lieu of a cash or check payment. The passenger may insist on the cash/check payment or refuse all compensation and bring private legal action.

2. Acceptance of the compensation may relieve Allegiant Air from any further liability to the passenger caused by its failure to honor the confirmed reservation. However, the passenger may decline the payment and seek to recover damages in a court of law or in some other manner.

# 106. – 115. Not Used

# 116. Ticketless Travel Acceptability

Carrier will accept only its own electronic Ticketless Travel Confirmation, and then only if all transportation written thereon uses the services of Carrier. Any tickets issued in conjunction with travel on another carrier will not be accepted.

# 117. – 123. Not Used

# 124. Check Acceptance

Allegiant accepts most major credit and debit cards. Allegiant does not accept cash, check, or money orders in-flight or at any airport location.

## 125. Compliance with Law and Governmental Regulations

All transportation is sold and all carriage is performed subject to compliance with all applicable laws and governmental regulations, including those of the U.S. Department of Transportation and the Federal Aviation Administration, many of which are not specified herein but are nonetheless binding on Carrier and all passengers.

## 126. Not Used

## 127. Right to Change Contract

Carrier reserves the right, to the extent not prohibited by federal law, to change, delete, or add to any of the terms of this Contract of Carriage without prior notice. All changes must be in writing and approved by a corporate officer of Carrier.