## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

MICHAEL GIBSON MUIR,

    Plaintiff,

    v.

UNITED STATES TRANSPORTATION
SECURITY ADMINISTRATION; DAVID
P. PEKOSKE, Administrator, United States
Transportation Security Administration, in his
individual capacity; L3HARRIS
TECHNOLOGIES, INC., a Delaware for-
profit corporation; ALLEGIANT AIR, LLC, a
Nevada company; CHAD F. WOLF,
Secretary, United States Department of
Homeland Security, in his official capacity,

    Defendants.

Case No. 1:20-cv-01280-JBM-JEH

## FEDERAL DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Michael Muir has sued the United States, the Transportation Security

Administration ("TSA"), the Administrator of the TSA, David P. Pekoske, in his individual and

official capacities,[1] and the Secretary for the Department of Homeland Security for monetary and

injunctive relief. Muir asserts violations of the Illinois Constitution, Arizona Constitution, and

---

[1] This motion is brought on behalf of TSA, Administrator Pekoske, and Secretary Wolf in their official capacities (collectively, the "Federal Defendants").  Administrator Pekoske also was sued in his individual capacity, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). He will submit a separate motion to dismiss the claims brought against him.  Plaintiff also names L3Harris Technologies and Allegiant Air, each of which are separately represented parties.

United States Constitution, as well as claims pursuant to the Federal Tort Claims Act ("FTCA") and the Rehabilitation Act. Plaintiff's claims stem from two separate screening incidents he experienced when traveling through the Phoenix Mesa Airport in Phoenix, Arizona, and the Peoria International Airport in Peoria, Illinois, on August 9, 2018 and August 12, 2019, respectively. The Federal Defendants respectfully submit this motion to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as well as for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Although *pro se* complaints must be liberally construed, Plaintiff Michael Gibson Muir's ("Plaintiff's) First Amended Complaint should be dismissed in its entirety. First, in accordance with the doctrine of sovereign immunity, Plaintiff cannot maintain state constitutional claims against the federal government. Second, Plaintiff cannot recover monetary damages from the Federal Defendants for his purported constitutional violations. Third, insofar as Plaintiff's claims against the Federal Defendants challenge TSA's Standard Operating Procedures for the security screening of airline passengers, such claims must be brought in the United States Courts of Appeals pursuant to 49 U.S.C. § 46110. Fourth, Plaintiff has named the wrong defendant for the tort claims he asserts and, thus, those claims should be dismissed. Finally, he lacks standing for the declaratory and injunctive relief he demands. As set forth fully below, the claims that Plaintiff asserts against the Federal Defendants should be dismissed.

## PLAINTIFF'S ALLEGATIONS[2]

Plaintiff alleges that he is a thirty-nine year-old married United States citizen residing in Bloomington, Illinois. Am. Cmplt. ¶ 10. Plaintiff avers that on August 9, 2018, he was present at Phoenix-Mesa Gateway Airport in Mesa, Arizona (airport code IWA) about two hours before his scheduled 1:31 p.m. Allegiant Air flight. Am. Cmplt. ¶¶ 16, 20. Prior to his flight, Plaintiff experienced an "unpredictable, uncontrollable and potentially life-threatening health emergency at his right groin due to his hidden disorder" and to his "private marital healthcare choices" regarding that disorder. Am. Cmplt. ¶ 17. Plaintiff states that he presented himself for mandatory passenger screening. Am. Cmplt. ¶ 19. Plaintiff asserts that TSA failed to give him fair notice of the security screening process and failed to sufficiently warn him about that process. Am. Cmplt. ¶ 21. Plaintiff states that his body was scanned in the required "hands-up" position, by L3 ATR software,[3] and that the scan revealed his "hidden, beneath the skin physical disorder at his right groin as a foreign material object on the surface of his skin at his right groin." Am. Cmplt. ¶¶ 24-26.

After the scan revealed this anomaly at his right groin, unidentified TSA personnel informed Plaintiff that additional screening was required, and that he would need a pat-down to resolve the alarm. Am. Cmplt. ¶ 31. Plaintiff believes that he was singled out for a pat-down

---

[2] This brief assumes Plaintiff's alleged facts are true for the purposes of this motion only.  The Federal Defendants reserve any and all rights to challenge the alleged facts should Plaintiff's First Amended Complaint withstand this motion.

[3] Presumably, Plaintiff's use of "ATR" refers to TSA's Advanced Imaging Technology ("AIT") machines which have installed automated target recognition ("ATR") software to enhance passenger privacy by eliminating passenger-specific images.  *See*, *e.g.*, www.tsa.gov/news/press/testimony/2012/11/15/testimony-advanced-imaging-technology. Colloquially, passengers often refer to the AIT machine as a "scanner" or "body scanner." Plaintiff references a "scan" at ¶ 24.  For clarity, the Federal Defendants will use the term AIT.

because of his congenital physical disorder. Am. Cmplt. ¶ 27. Plaintiff states that he informed

TSA that he was experiencing a serious medical emergency and he ordered TSA not to touch

him at his right groin. Am. Cmplt. ¶ 32. Plaintiff claims that he was desperate to reunite with his

wife in the sterile area,[4] so that she could help him with the symptoms of his medical emergency,

as she had done for years. Am. Cmplt. ¶ 34. Plaintiff avers that TSA disregarded his serious

medical needs, and, as a result, he was permanently damaged and suffers severe ongoing

psychological distress and disturbing physical manifestations. Am. Cmplt. ¶ 35.

　　　In a nearly identical presentation of facts, Plaintiff alleges that three days after the

incident at IWA, on August 12, 2018, he arrived at the Peoria International Airport in Peoria,

Illinois (airport code PIA). Am. Cmplt. ¶ 36. Plaintiff alleges that, again, prior to this flight, he

experienced an "unpredictable, uncontrollable and potentially life-threatening health emergency

at his right groin due to his hidden physical disorder and his private marital healthcare choices."

Am. Cmplt. ¶ 37. Despite having just been through TSA security screening at IWA three days

prior, Plaintiff asserts that TSA failed to give him fair notice of the security screening process

and failed to sufficiently warn him about that process. Am Cmplt. ¶ 41. Plaintiff states that his

body was scanned in the required "hands-up" position, by L3 ATR software, and that the scan

revealed his "physical disorder at his right groin as a foreign material object on the surface of his

skin at his right groin." Am. Cmplt. ¶¶ 44, 46.

　　　After the scan revealed the anomaly at his right groin, TSA informed Plaintiff that he

would need to undergo a pat-down to resolve the alarm. Am. Cmplt. ¶ 50. Plaintiff responded by

ordering TSA not to touch his right groin, and informed TSA that physical contact at that

---

[4] "Sterile area" refers to portions of an airport defined in the airport security program that
provides passengers access to boarding aircraft and to which the access generally is controlled by
TSA, an aircraft operator, or a foreign air carrier.  49 C.F.R. § 1540.5.

location would result in immediate and extreme physical pain for him. Am. Cmplt. ¶ 51. Once Plaintiff was escorted to a private area for screening, Plaintiff "offered to lower his pants and underwear to show TSA the completely beneath the skin hernia at his right groin." Am. Cmplt. ¶ 55. Plaintiff asserts that TSA refused this offer, and, "as a matter of strict policy, consciously and deliberately disregarded [Plaintiff's] serious medical needs and refused what [he] believed was a reasonable alternative" to the screening process. Am. Cmplt. ¶ 57. Plaintiff believes that TSA coerced him to act against his will in order to "secure his release from TSA control." Am. Cmplt. ¶ 60.

Plaintiff claims that the incident at PIA caused permanent damage and severe ongoing psychological distress and disturbing physical manifestations, which resulted from being impermissibly singled out and coerced to act against his will. Am. Cmplt. ¶ 61.

Plaintiff submitted claims to TSA regarding the August 9, 2018, and August 12, 2018 incidents at IWA and PIA. Am. Cmplt. ¶ 62. Plaintiff's claims to TSA were assigned Nos. 2019101363533 (IWA incident on August 9, 2018), and 2019091962941 (PIA incident on August 12, 2018). TSA declined Plaintiff's offer to hold an informal discussion about his claims, and denied both claims in writing on May 28, 2020. Am. Cmplt. ¶¶ 63-68. He also filed complaints with the DHS Office for Civil Rights and Civil Liberties, the DHS TRIP Program, the Department of Health and Human Services Office for Civil Rights, and U.S. Congressman Greg Stanton's Office. Am. Cmplt. ¶ 62.

Plaintiff asserts a myriad of claims against the Federal Defendants. More specifically, he presents claims under the Constitution (as well as the Arizona and Illinois constitutions), invoking purported violations of his right to privacy, right to be free from unlawful search under the Fourth Amendment and apparently substantive Due Process violations under the Fifth

Amendments. *See*, Am. Cmplt. Counts 1-8. Pursuant to the Federal Tort Claims Act, he presses

tort claims for negligence and negligent infliction of emotional distress. *Id*. Finally, he presents a

Rehabilitation Act claim. Am. Cmplt. Count 21. For these alleged injuries, Plaintiff seeks

declaratory and injunctive relief to prevent the Federal Defendants from denying him his

statutory right to travel by air, to ensure that any passenger screening data or images of him have

been destroyed, and to ensure the return of all of his valuable private healthcare information;

$200 million in damages; and costs of the action and any other such relief as the Court deems

appropriate. *See*, Am. Cmplt. Prayer for Relief.

## STANDARD OF REVIEW

### I.      Standard under Rule 12(b)(1)

Dismissal under Rule 12(b)(1) is proper if a court lacks subject matter jurisdiction. Fed. R.

Civ. P. 12(b)(1). When ruling on a motion to dismiss for lack of subject matter jurisdiction under

12(b)(1), the court must accept as true all well-pleaded factual allegations and draw reasonable

inferences in favor of the plaintiff. *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993). Additionally,

the court "may properly look beyond the jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether in fact subject matter

jurisdiction exists." *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir.

1993) (internal quotations and citation omitted). When the court concludes that it lacks subject

matter jurisdiction, the court must dismiss the complaint in its entirety. *Arbaugh v. Y&H Corp.*,

546 U.S. 500, 514 (2006).

### II.     Standard Under Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

6

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. When deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the 'light most favorable to the' [plaintiff.]" *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). The court also assumes that all of the well-pleaded facts in the complaint are true and draws reasonable inferences in the plaintiff's favor. See *Iqbal*, 556 U.S. at 678; *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 615-16 (7th Cir. 2011)); *Tagami v. City of Chicago*, 875 F.3d 375, 377 (7th Cir. 2017) (citing *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016)).

### III.    Standard Regarding *Pro Se* Complaints

Plaintiff is proceeding pro se; accordingly, his complaint must be construed liberally. *See Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) ("'[a] document filed *pro se* is to be liberally construed ... and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam))). Although pro se litigants are held to less stringent standards, a complaint is factually frivolous if the allegations are clearly baseless, irrational, fanciful, delusional, or wholly incredible. *Weinschenk v. CIA*, 818 F. App'x 557, 559 (7th Cir. 2020) (upholding district court dismissal of *pro se* litigant's complaint as frivolous and for failing to state a claim upon which relief could be granted, despite plaintiff's payment of the filing fee) (internal citations omitted)).

## ARUGMENT

**1. Under the doctrine of sovereign immunity, Plaintiff's Claims Brought Pursuant to the Arizona and Illinois Constitutions must be dismissed.**

As a threshold matter, Plaintiff's claims that his security screenings violated the Arizona and Illinois Constitutions cannot proceed.  In Counts 1 and 2, Plaintiff asserts that TSA violated the Arizona Constitution.  Counts 3 and 4 assert that TSA violated the Illinois Constitution.  Any such counts must be dismissed for lack of jurisdiction.  "Absent a waiver, sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Additionally, "without specific statutory consent, no suit may be brought against the United States." *United States v. Shaw*, 309 U.S. 495, 500-01 (1940).

The plaintiff bears the burden of proving that a particular statute waives sovereign immunity. *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003) ("To maintain an action against the United States in federal court, a plaintiff must identify a statute that confers subject matter jurisdiction on the district court and a federal law that waives the sovereign immunity of the United States to the cause of action."); *Gorka v. Sullivan*, 81 F.3d 772, 775 (7th Cir. 1996) (noting that sovereign immunity barred claims alleging violations of state constitutional law); *Cole v. United States*, 657 F.2d 107, 109 (7th Cir. 1981) ("A party who sues the United States has the burden of pointing to a congressional act that gives consent.").  *See also Chin v. Wilhelm*, 291 F. Supp. 2d 400, 405 (D. Md. 2001) ("Plaintiffs have not shown that the United States has waived its sovereign immunity as to State constitutional claims.  A waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (internal quotations omitted)).

Here, Plaintiff fails to identify any waiver of sovereign immunity that would allow TSA or any of the Federal Defendants to be sued for state constitutional violations.  Accordingly, these counts must be dismissed for lack of jurisdiction.

2. **Plaintiff cannot recover monetary damages for the constitutional claims he asserts.**

Counts 1 through 4 as presented in the Amended Complaint appear to state claims of insufficient notice and negligent infliction of emotional distress with respect to each of Plaintiff's screenings (at IWA and PIA), based variously on the Fourth and Fifth Amendments to the U.S. Constitution, parallel provisions of the Illinois and Arizona state constitutions, and the Federal Tort Claims Act, all against defendant TSA alone.    Plaintiff cannot recover monetary compensation for alleged constitutional violations, however, as it is axiomatic that such claims cannot be brought against the United States, its agencies, or its officials sued in an official capacity.  *See FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994); *Kentucky v. Graham*, 473 U.S. 159, 1265 (1985) ("Official-capacity suits . . .'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, Plaintiff's constitutional claims for damages against the Federal Defendants should be dismissed.

3. **This Court lacks subject matter jurisdiction over Plaintiff's challenge to TSA's Standard Operating Procedures.**

Plaintiff objects to the manner in which he was screened at the TSA checkpoints in IAW and PIA. He believes that the AIT alarm and resulting pat-down to resolve that alarm violated his rights to privacy, be free from unreasonable search and seizure, and right to due process. He asserts both negligence and negligent infliction of emotional distress resulting from the security screening at IAW and PIA. He further believes that the screening to which he was subject violates the Rehabilitation Act because he is a qualified individual with a disability.  In sum, he believes that TSA's checkpoint screening process, which was repeated in an almost identical

manner just days apart at two separate airports, each identifying the same anomaly which resulted in a pat-down, violates his rights.

To grant the Plaintiff the relief he requests, the Court would need to assess the propriety of TSA's checkpoint screening procedures, which are set forth in its Standard Operating Procedures ("SOP"). Yet, pursuant to 49 U.S.C. § 46110, the Courts of Appeals have exclusive jurisdiction over challenges to TSA's SOP.  Specifically, 49 U.S.C. § 46110(a) provides that:

> [A] person disclosing a substantial interest in an order issued by . . . the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration . . . in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of that order by filing a petition for review in the United States Courts of Appeals for the District of Columbia Circuit or in the courts of appeals of the United States for the circuit in which the person resides . . .

49 U.S.C. § 46110(a). The statute confers on the Courts of Appeals "exclusive jurisdiction to affirm, amend, modify or set aside any part of [such an] order." 49 U.S.C. § 46110(c) (emphasis supplied).

Section 46110 is a jurisdiction-channeling provision with a long history confirming that it applies to a wide range of agency action.  Courts interpreting Section 46110 (and its statutory antecedent, 49 U.S.C. § 1486) have emphasized that the term "order" in this provision should be read "expansively."  *See Aviators for Safe & Fairer Regulation v. FAA*, 221 F.3d 222, 225 (1st Cir. 2000).  To be reviewable, the agency action "must possess the quintessential feature of agency decisionmaking" – finality – by virtue of the fact that it reflects the "consummation" of the agency's decisionmaking process, and determines "rights or obligations" or give rise to "legal consequences" for others. *Vill. of Bensenville v. FAA*, 457 F.3d 52, 68 (D.C. Cir. 2006).  Thus, even a letter or regulation qualifies as an "order" reviewable solely under Section 46110.  *City of*

10

*Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007); *Nat'l Fed'n of Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 413 (D.D.C. 2015).

The SOP at issue here falls within the scope of Section 46110.  Section 46110 applies to orders issued in whole or in part under Title 49, Subtitle VII, Part A, regarding "security screening duties and powers designated to be carried out" by the TSA Administrator, including those authorities directing TSA to provide for the screening of all passengers and property prior to boarding an aircraft. *See* 49 U.S.C. §§ 44901-03, 44925. TSA regulations likewise require that passengers comply with screening procedures before entering the "sterile area" of an airport or boarding an aircraft. 49 C.F.R. § 1540.107(a); *see also* 49 U.S.C. §§ 44901-03. The TSA Administrator accordingly issued a Screening Checkpoint SOP to implement these statutory and regulatory mandates regarding TSA screening procedures. The Screening Checkpoint SOP constitutes an "order" within the scope of 49 U.S.C. § 46110. *See* 49 U.S.C. § 46110(a); *Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) (affirming district court's ruling that a TSA "Checkpoint Screening" procedure was an order under § 46110 and collecting authority); *Gilmore v. Gonzales*, 435 F.3d 1125, 1135 (9th Cir. 2006).

In *Blitz*, the Fourth Circuit found that because "the Checkpoint Screening SOP's implementation . . . conclusively settled the agency's position with respect to the use of AIT scanners and passenger pat-downs, those procedures represent the TSA's final disposition of the matter." 700 F.3d at 740. Thus, the court determined that it was "satisfied that the district court did not err in ruling that the Checkpoint Screening SOP constitutes an order of the TSA Administrator under § 46110." *Id*. Similarly, in *Corbett v. United States*, the Eleventh Circuit found that the district court did not err in dismissing the plaintiff's complaint for lack of jurisdiction under Section 46110 because the plaintiff challenged the TSA's Screening

11

Checkpoint SOP. 458 F. App'x 866, 870 (11th Cir. 2012). In *Corbett,* the Eleventh Circuit held

that the SOP imposes obligations on passengers, and the fact that "air passengers must comply

with the security screening procedures set forth in the SOP or they will not be allowed to fly," is

another indication of the SOP's finality for purposes of establishing that it constitutes an order

under Section 46110. *Id.* at 870-71; *see also Roberts v. Napolitano*, 463 F. App'x 4 (D.C. Cir.

2012); *Ventura v. Napolitano*, 828 F. Supp. 2d 1039, 1042 (D. Minn. 2011).

Further, a court of appeals maintains exclusive jurisdiction even where the claims

asserted by the plaintiff "are inescapably intertwined with an evaluation" of a TSA order. *Griggs

v. LaHood*, 770 F. Supp. 2d 548, 554 (E.D.N.Y. 2011) (Spatt, J.); *see also Merritt v. Shuttle, Inc.*,

187 F.3d 263, 270, 272 (2d Cir. 1999) (directing district court to dismiss plaintiff's Fifth

Amendment challenge to an investigation that led to plaintiff's revocation of his pilot certificate

by way of an emergency order for lack of subject matter jurisdiction pursuant to 49 U.S.C.

§ 46110). Plaintiff presents a Rehabilitation Act claim in conjunction with his constitutional

claims against the Federal Defendants. Am. Cmplt. Count 21. The Rehabilitation Act of 1973

provides that no otherwise qualified individual with a disability "shall, solely by reason of his or

her disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity" receiving federal funds. 29 U.S.C. § 794, Section

504(a). This claim cannot stand separately from the constitutional claims that Plaintiff presents,

and Plaintiff cannot circumvent the jurisdictional provision of 49 U.S.C. § 46110 by presenting it

here.

Courts consistently hold that challenges implicating TSA's screening requirements, even

under the Rehabilitation Act, are appropriately heard in the court of appeals in the first instance.

*See, e.g., Ruskai v. Pistole*, 75 F.3d 61 (1st Cir. 2014) (reviewing passenger's Rehabilitation Act

claim in conjunction with constitutional challenges); *Corbett v. United States,* 458 F. App'x 866, 870 (11th Cir. 2012) (passenger challenging TSA screening procedures could not escape Section 46110 by asserting a broad constitutional challenge); *Nelson v. DHS*, No. 06–0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (no district court jurisdiction to hear constitutional challenge to TSA order requiring fingerprinting); *Thomson v. Stone*, No. 05–CV–70825-DT, 2006 WL 770449, at *6 (E.D. Mich. Mar. 27, 2006) (Fourth Amendment claim inescapably intertwined with TSA airport screening procedures). Even if, *arguendo*, these allegations do not constitute direct attacks on the relevant TSA Orders themselves, they are clearly inescapably intertwined with a review of those Orders. Because exclusive jurisdiction over challenges to the Screening Checkpoint SOP lies with the court of appeals, this Court lacks subject matter jurisdiction over Plaintiff's constitutional and Rehabilitation Act claims. *See* 49 U.S.C. § 46110.

### 4. Plaintiff's FTCA claims must be dismissed because he failed to name the proper party.

In Counts 1 – 4, Plaintiff asserts that the TSA's actions that violated the Arizona, Illinois, and United States Constitutions, constitute negligence because TSA failed to provide him with fair warning of the security screening process and constitute negligent infliction of emotional distress. Am. Cmplt. ¶¶ 71, 73, 75, 77. As compensation, he seeks $100,000,000 for Counts 1 and 2, and $100,000,000 for Counts 3 and 4, as "originally claimed" to the agency in TSA Claim Nos. 2019101363533 and 2019091962941, respectively. Am. Cmplt. Prayer for Relief, Sections F and G. As noted above, however, the Federal Government cannot be sued without its consent. *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009). The FTCA is a limited waiver of the government's sovereign immunity from suit in certain cases involving negligence by federal employees in the course of their employment. *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484-85 (2006) (citing 28 U.S.C. § 1346(b)(1)). The FTCA authorizes "civil actions on

claims against the United States, for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1) (emphasis added). The "only proper defendant in an FTCA action is the United States." *Jackson v. Kotter*, 541 F.3d 688, 693 (7th Cir. 2008); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982). *See* 28 U.S.C. § 2679(b). The United States must be named as a party, and Plaintiff has failed to do so in this action. Accordingly, his FTCA claims should be dismissed.

**5. Plaintiff lacks standing for the injunctive relief he seeks.**

In order to obtain equitable relief, Plaintiff must plausibly allege a constitutional wrong against the Federal Defendants. *See, e.g., Milliken v. Bradley*, 418 U.S. 717, 745 (1974) (equitable relief is inappropriate if there was "no constitutional wrong calling for an [equitable] remedy"). Because Plaintiff fails to plausibly allege a Fourth Amendment or Fifth Amendment due process claim against the Federal Defendants, he cannot obtain injunctive or declaratory relief.

Plaintiff asserts that his pat-down constituted an unreasonable search and seizure in violation of the Fourth Amendment. Am. Cmplt. ¶¶ 70-77. Searches and seizures are "ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). However, "where the risk to public safety is substantial and real," the Supreme Court has sanctioned several general search regimes that are free from the usual warrant-and-probable cause requirements, including searches "at airports and entrances to court and other official buildings." *Chandler v. Miller*, 520 U.S. 305, 323 (1997).  Importantly, searches at airport security checkpoints do not depend on consent of the individual to be searched, but are permissible instead on special needs doctrine.  *United States v. Aukai*, 497 F.3d

955, 959 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174, 178, 180 n.11 (3d Cir. 2006) (Alito, J.) (analyzing TSA search under administrative search doctrine and finding more recent decisions foregoing consent-based justification for such searches).

Here, Plaintiff alleges that he was subjected to a pat-down and secondary screening when he was seeking entry into the sterile area of an airport. Am. Cmplt. ¶¶ 21, 31, 41, 14-15. A search of passengers at an airport is, as a matter of law, consistent with a "reasonable administrative search" under the Fourth Amendment. *Corbett v. Transp. Sec. Admin.* 767 F.3d 1171, 1182 (11th Cir. 2014) ("[T]he pat-down procedure . . . as a secondary screening technique is a reasonable administrative search. The pat-downs also promote the governmental interest in airport security because security officers physically touch most areas of passengers' bodies."); *see also Aukai*, 497 F.3d 958 (9th Cir. 2007). Indeed, "[a]irport screening is a permissible administrative search; security officers search all passengers . . . and passengers elect to travel by air knowing that they must undergo a search." *Corbett*, 767 F.3d at 1182. While some passengers find the pat-down procedure subjectively objectionable, it is nevertheless a permissible part of airport screening. *See, e.g., Ruskai v. Pistole*, 775 F.3d 61, 64-65 (1st Cir. 2014) (noting petitioner was "not unusual" in portraying pat-down as invasive and disturbing, but rejecting her Fourth Amendment challenge nevertheless).

Plaintiff's allegations describe nothing more than a routine pre-boarding search. Courts recognize that the screening procedures described here are "well-tailored to protect personal privacy," as they "escalat[ed] in invasiveness only after a lower level of screening disclosed a reason to conduct a more probing search." *Hartwell*, 436 F.3d at 180. Moreover, the intrusiveness is further lessened precisely because "air passengers are on notice that they will be searched." *Id.* Thus, the facts that Plaintiff alleges—that he was subject to a pat-down to resolve

the alarm observed at his right groin —describe a search that is necessary to determine the existence or absence of explosives, a congressionally mandated duty of TSA and that courts view the traveling public to be aware of before arriving at the airport. Given these precepts, the complaint offers no allegations that support a plausible claim that the screening somehow violated the Fourth Amendment apart from plaintiff's own subjective objection to its intrusiveness. *See, e.g., Miles v. Napolitano*, 2012 WL 12878319, at *2-3 (C.D. Cal. Mar. 15, 2012) (no Fourth Amendment violation where plaintiff alleged that "her buttocks were squeezed and touched in the course" of the pat-down and her hands were swabbed after the pat-down); *see also VanBrocklen v. United States*, 2010 WL 1372321, at *2-4 (N.D.N.Y. Apr. 7, 2010) (no Fourth Amendment violation where plaintiff alleged that TSA screener conducted a pat-down that caused plaintiff to scream in pain). Thus, Plaintiff's allegations that the Federal Defendants violated the Fourth Amendment are impermissibly conclusory and simply do not rise to the level of a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Indeed, Plaintiff's own allegations demonstrate that he cannot credibly maintain parallel sets of claims regarding the two screening experiences within days of each other to the extent they turn on inadequate notice, or an objectively reasonable expectation that what he experienced during the second screening would not have occurred. Plaintiff also appears to invoke Due Process violations under the Fifth Amendment, claiming that the Federal Defendants have precluded him from his "right to travel between the several states by air." Am. Cmplt., p.26, Prayer for Relief at G. The Fifth Amendment provides that a person shall not "be deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. It is undisputed that "the right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *See Kent v. Dulles*, 357 U.S. 116, 125

16

(1958); *see also Saenz v. Roe*, 526 U.S. 489, 498 (1999) (noting that the right to travel is "firmly embedded" within the jurisprudence of the Supreme Court). Plaintiffs maintain a clear liberty interest in domestic travel, *see id.; Shapiro v. Thompson*, 394 U.S. 618, 630 (1969), as well as international travel. "Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads." *Kent*, 357 U.S. at 126; *see also Kashem v. Barr*, 941 F.3d 358, 378 (9th Cir. 2009) ("Plaintiffs undoubtedly have a strong liberty interest in domestic and international travel."); *Mohamed v. Holder*, No. 1:11-CV-50 AJT/MSN, 2015 U.S. Dist. LEXIS 92997, 2015 WL 4394958, at *6 (E.D. Va. July 16, 2015); ('It must be recognized that a meaningful right of travel in today's world cannot be understood as cleanly divided between interstate and international travel . . .').

Plaintiff fails to allege facts that plausibly suggest that his has been denied the right to travel, however. To the contrary, nothing in his Amended Complaint even hints that he was denied boarding or otherwise inhibited from making his flights. The Sixth Circuit rejected a substantive Due Process challenge presented by travelers who claimed to have been placed on the Selectee List, a watchlist that requires enhanced screening procedures for those placed on it. The Sixth Circuit noted that a fundamental right protected by the Fifth Amendment is only implicated by government action that "significantly interferes" with that right, and that the extra hurdles that come from such additional screening measures "do not amount to a constitutional violation" as the plaintiffs "have not actually been prevented from flying altogether or from traveling by means other than an airplane." *Beydoun v. Sessions*, 871 F.3d 459, 467-68 (6th Cir. 2017), and that again, Plaintiff's "bare assertions" amount "to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." 556 U.S. at 681 (quoting

*Twombly*, 550 U.S. at 555). In *Iqbal*, the Supreme Court concluded that such allegations were, thus, "conclusory and not entitled to be assumed true." 556 U.S. at 678. Accordingly, Plaintiff's Fifth Amendment due process claims should be dismissed.

Alternatively, if the Court determines that Plaintiff does state a plausible constitutional claim on the merits, his request for injunctive or declaratory relief still fails because he does not allege a real and immediate threat of future injury. To have standing to seek injunctive or declaratory relief, a plaintiff must demonstrate a real and immediate injury or threat of injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (to satisfy threshold requirement of alleging actual case or controversy, plaintiff must demonstrate personal stake in outcome, and the injury or threat of injury is required to be both real and immediate). Indeed, "the Supreme Court has made clear that in order to invoke Article III jurisdiction a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440 (7th Cir. 2000) (citation omitted). Critically, past exposure to illegal conduct does not, in and of itself, show a present case or controversy regarding injunctive relief if it is unaccompanied by any continuing, present adverse effects. *Lyons*, 461 U.S. at 102.

Here, Plaintiff lacks standing to seek injunctive or declaratory relief for the alleged constitutional violations based on his prior injury because he has not alleged a real and immediate threat of future injury; his complaint is devoid of any allegation that he intends to travel again or that he would be subjected to secondary screenings in the future. All told, Plaintiff offers, at best, an allegation of a "possible future injury"—not a "threatened injury" that is "certainly impending"—and, thus, he "do[es] not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Clapper v. Amnesty, Int'l USA*, 568 U.S. 398

(2013) ("threatened injury must be *certainly impending* to constitute injury in fact," and "allegations of *possible* future injury are not sufficient") (internal quotation marks and citation omitted). Plaintiff does not allege if or when he intends to travel again. Nor does he suggest that he is a frequent traveler. And, even if there is some possibility of future travel by Plaintiff, this is not enough to support a finding of the "actual or imminent injury" that the law requires. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that [the Supreme Court's] cases require.") Further, any assertion that he would be subjected to secondary screenings in the event that he chooses to travel again would amount to pure speculation. Put simply, Plaintiff's allegations are simply too speculative to establish standing. *See e.g., Sierakowski,* 223 F.3d at 444 (finding that plaintiff lacked the requisite personal stake in the outcome of the litigation to seek injunctive relief because the prospects of future injury were purely speculative). Thus, Plaintiff's request for injunctive and declaratory relief should be dismissed.

## CONCLUSION

For the above reasons, Plaintiff's claims against the Federal Defendants should be dismissed in their entirety.

Respectfully submitted,

JOHN C. MILHISER
*UNITED STATES ATTORNEY*

By:     s/ Kimberly A. Klein
        Kimberly A. Klein
        Assistant United States Attorney
        United States Attorney's Office
        211 Fulton Street
        Peoria, IL  61202
        Telephone:  309-671-7050
        Fax:  309-671-7259
        Email:  kimberly.klein@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

The following person was served with a true and accurate copy of the foregoing *Federal Defendants' Motion to Dismiss Plaintiff's First Amended Complain*t electronically or by mailing them a copy via postage prepaid United States Mail on November 10, 2020. .

Michael Gibson Muir
19 Inglewood Lane
Bloomington, IL  61704
PRO SE


        November 10, 2020           s/ Kimberly A. Klein

Date:_____      _____

                                             Kimberly A. Klein
                                           Assistant United States Attorney