E-FILED
Wednesday, 18 November, 2020  02:01:20 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL GIBSON MUIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:20-cv-01280** |
| | ) | |
| UNITED STATES TRANSPORTATION | ) | |
| SECURITY ADMINISTRATION; DAVID P. | ) | |
| PEKOSKE, Administrator, United States | ) | |
| Transportation Security Administration, in his | ) | |
| individual capacity; L3HARRIS | ) | |
| TECHNOLOGIES, INC., a Delaware for-profit | ) | |
| corporation; ALLEGIANT AIR, LLC, a Nevada | ) | |
| company; CHAD F. WOLF, Secretary, United | ) | |
| States Department of Homeland Security, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT ALLEGIANT AIR, LLC'S**

**RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS AND RULE 12(b)(6)**

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM & BRIEF IN SUPPORT**

Plaintiff Michael Gibson Muir ("Muir"), pursuant to Federal Rules of Civil Procedure 12(c) and 12(b)(6), respectfully moves the Court to deny Defendant Allegiant Air, LLC ("Allegiant")'s motion for judgment on the pleadings and motion to dismiss for failure to state a claim. In support of this motion, Muir relies on the following brief and incorporated memorandum of points and authorities.

Muir's First Amended Complaint ("FAC") against Allegiant must survive for several reasons. *First*, Muir's FAC claims against Allegiant are timely under the Discovery Rule. *Second*, Allegiant's conduct in its failure to give fair notice to a fiduciary in a special relationship satisfies the requirements of fraudulent concealment under Illinois law. *Third,* Muir's causes of action based on negligence succeed as a matter of law because Allegiant had a duty to warn Muir of the foreseeable safety risks of the threat assessment process that were not commonly known, open or obvious, including the introduction of an improper motive into the special relationship and Allegiant had a duty to protect Muir from third parties while he was in the airport terminal and moving toward the conveyance during the boarding process. *Fourth*, Allegiant's duty to warn Muir of foreseeable risks he could not avoid extends from the time he entered the airport terminal as a ticketed passenger with the intent to board the airplane until the moment he placed his personal property on the x-ray machine belt inside the TSA checkpoint because Muir is free to unilaterally avoid or end the security screening threat assessment process at any time during the boarding process up until that moment.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Mr. (Future) Justice Louis Brandeis wrote in 1890: "Ways may some day be developed by which the government, without removing papers from secret drawers, can reproduce them in

court, and by which it will be enabled to expose to a jury the most intimate occurrences of the home… Can it be that the Constitution affords no protection against such invasions of individual security?"

Fast forward one-hundred and twenty-eight years to August 2018 and a reasonable person could conclude that Justice Brandeis' "some day" had already arrived in the form of Allegiant's contractual requirement for commercial air passengers unable to submit to a pat-down to be screened by the State using Automatic Target Recognition ("ATR") software, an advanced technology artificial intelligence ("A.I.") with probable military origins, before they are allowed to enter the sterile area and complete the boarding process.

Despite Allegiant's assertions to the contrary, the use of proprietary, monopoly-provider A.I. during the threat assessment process was neither commonly known nor open and obvious and Allegiant's use of an advanced technology A.I. in exposing Muir's most "intimate occurrences" (his hidden, beneath the skin physical disability) while he was in State custody is confirmation of Justice Brandeis' prescient words and Muir prays the Court finds the well-developed body of common law in the areas of public transportation, common carriers and interstate commerce affords him protection from Allegiant's dangerous and unreasonable "invasions".

Judge Posner stated in *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir. 1982): "We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."

3

Judge Posner's "snake pit" collided with Justice Brandeis' "some day" in August of 2018 in the form of the TSA checkpoint threat assessment process, which blends the power of the State's monopoly on force with the foreseeable danger of a corporate person's monopoly on private health information during the threat assessment process, which flips a basic tenet of American jurisprudence ("innocent until proven guilty") completely on its head and judges Muir absolutely "guilty until proven innocent" simply because the A.I. produced a threat alarm.

Allegiant helped to throw Muir into the advanced technology checkpoint "snake pit" when it required him to interact with the proprietary A.I. as a non-negotiable term of the contact of carriage without giving him fair notice of the threat assessment process or disclosing known safety risks of the threat assessment process that Muir could not unilaterally avoid (mainly the dehumanization of the entire process and the complete disregard of passengers' serious medical needs through the replacement of human judgment and empathy with a soulless, corporate A.I. incapable of understanding what it means to be human or of feeling the guilt, shame and discomfort that dehumanizing a living, breathing person usually generates).

Allegiant's outrageous act of deliberate indifference to Muir's serious medical needs and protected status as a person with a physical disability set in motion a chain of unstoppable events that led directly to Muir's cruel, unusual and unnecessary punishment that shocks the conscience and cannot be tolerated in civilized society. Muir was unlawfully coerced into consenting to something that no reasonable person in Muir's situation would have ever allowed (Allegiant could present no medical expert who would testify that the application of pressure to the exact site of an incarcerated intestine inguinal hernia by a security guard/TSA line officer with no medical training is anything but cruel and unusual) as it caused immediate physical pain, severe psychological distress and endangered Muir's life.

4

There is no defense or immunity that Allegiant or any defendant can claim because human rights violations are not permitted under any circumstance, including the prevention of terrorism or war, and for this and other reasons as stated below, Allegiant's motion to dismiss must be denied.

This is a hotly contested case about;

(1) Allegiant's breach of its common carrier duty to warn Muir of foreseeable, state-created dangers that he, due to terms of the contract of carriage, could not unilaterally avoid. Allegiant knew or should have known that Muir's private health information regarding his congenital disorder could be used by the A.I. to discriminate against him during the threat assessment process because A.I. is incapable of recognizing a serious medical emergency or understanding that it can't understand what it means to be a human being with a serious medical emergency. This is an obvious safety risk and matters of safety are not subject to public policy analysis and must be fully disclosed, especially in the context of a special relationship.

An objective analysis of the foreseeable risk includes the basic understanding that guilt and shame enforce social norms in society and that a lack of shame requires formal punishments to enforce the basic norms of appropriate social behavior.

Allegiant is a corporate person incapable of feeling guilt or shame and the proprietary ATR software used in the carefully crafted threat assessment process is an artificial intelligence incapable of feeling guilt or shame and it was owned by another corporate person (Defendant L3Harris Technologies, Inc. ("L3")) that is both incapable of feeling guilt or shame and believes it has total immunity from suit because of its Safety Act Certification and Designation for its Advanced Imaging Technology ("AIT") portal used by TSA during the threat assessment

process. No humanity plus no liability plus no reason to fix known problems with the proprietary ATR software equals a moral hazard polluting a common calling.

The sum total of this removal of human empathy and the corresponding capacity to experience guilt or shame combined with an expected total shield from liability and the resulting profit-driven lack of motivation to fix known problems with the monopoly-provider supplied proprietary ATR software presents an obvious safety risk with regards to the essential liberty interests of human locomotion and the exercise of free will during the threat assessment process and while all of these relevant factors may be technically public knowledge, no reasonable traveler could be expected to understand the resulting product of the complex interplay of factors and the risks it presented to the well-established protected class of travelers with disabilities, but a major air carrier party like Allegiant, with a fiduciary duty and corresponding due diligence and disclosure requirements must investigate, understand and disclose the resulting foreseeable risks based on the environmental sum of the relevant, known and discoverable factors surrounding the unavoidable threat assessment process.

(2) Allegiant's breach of its duty to give fair notice regarding mandatory but purposefully concealed advanced technology elements of the airplane boarding process. Passenger screening is limited by 49 U.S.C. § 44901(l)(1)(A)(i) to the search of the passenger screening data image showing the surface of the skin and objects on the body and Allegiant knew or should have known that advanced imaging technology could violate that clear limitation and reveal human tissue underneath this skin and that the proprietary A.I. could return a false threat alarm based on private health information about Muir's human tissue beneath his skin. This is a matter of safety and the common carrier duty requires Allegiant to fully disclose foreseeable conditions that could result in unnecessary and unreasonable harm for passengers.

6

(3) Allegiant tilting the common calling benefit balance too far in its own favor via the introduction of a long disfavored and clearly improper motive (corporate monopoly profit motive) into a critical element of the TSA checkpoint threat assessment process (the search of the passenger screening data image). Allegiant knew or should have known that allowing a for-profit monopoly interest (the proprietary ATR software sold in cycles by a single manufacturer) to be introduced into a special relationship, especially regarding a mandatory requirement in a contract of carriage, was against the historical and modern will of Congress and against the best interests of society because when the pressure of competition is removed, the power of the multinational corporation switches from benefitting society to hurting it.

(4) Allegiant ignoring Constitutional due process and what it means to be a living, breathing human being with locomotion and feelings. Allegiant knew that Muir is not an object and it is against every measure of a decent society to treat him like one (cattle on trains in the 1880's were treated more humanely than Muir was at an airport in 2018). The behavior of the railroad robber barons in the 1800's led Congress to enact legislation intended to protect Muir from the very common carrier monopoly abuses of power presented in the instant case and the dehumanization of people in a contract of carriage has been found to be unlawful for hundreds of years, even with regards to the transportation of human slaves. Muir is a natural, free human being and the deliberate disregard for his serious medical needs due to the introduction of artificial intelligence in an attempt to replace human experience, judgment and empathy with a software program cannot be tolerated given the country's long history of securing individual liberty and freedom of movement.

(5) Allegiant using advanced technology and A.I. to violate Muir's fundamental right to privacy and his right to marital privilege. Muir's health decisions are protected communications

covered by marital privilege and Allegiant knew or should have known that private health information regarding Muir's human tissue underneath his skin taken during the creation of Muir's passenger screening data image was not subject to encoding by L3's AIT portal or search by L3's proprietary A.I. and Allegiant's reckless use of this unequal knowledge regarding Muir's physical disability (at the moment of the search of Muir's passenger screening data image, Allegiant's third party vendor had more information about Muir's physical disability than he did) led directly to Muir's injuries.

(6) Allegiant's abuse of power in an important common calling through its partnership with a soulless corporate monopoly power. Allegiant knew or should have known that the search of Muir was unreasonable under *U.S. v. Marquez*, 410 F. 3d 612 (9th Cir. 2005) because it was more intensive than it should have been due to the ATR manufacturer's for-profit, monopoly-provider status and its deliberate disregard for the outrageous known error rate of the ATR software due to its fiduciary duty to its shareholders to maximize return on investment. The moment L3 was granted immunity from suit (October 26, 2016), its corporate size and power was turned against Muir because L3 was required by the necessities of capitalism and free market economics to avoid diverting funds to fix problems with a proprietary product that was already federal government contract approved and most likely shielded from all liability.

(7) Allegiant's compliance with the uncivilized removal of human judgment and empathy from the TSA checkpoint threat assessment process through the reckless granting of full interrogation authority to a soulless, profit-bound A.I. incapable of understanding that it is incapable of understanding what it means to be human. Contrary to Allegiant's assertions, this case is not about a common search. Allegiant knew or should have known that all A.I. threat alarms are final and non-reviewable by any human being. This represented a new step in

custodial interrogation and it must be scrutinized, not it terms of the TSA SOP, but as it relates to passenger safety and the duty to disclose under the common carrier duty of care.

(8) Allegiant's compliance in the intentional and systematic treatment of human beings traveling via air as though they were inanimate packages shipped via U.S. Mail. The recognition of human "disability" depends on human empathy. Artificial intelligence cannot have human empathy. Therefore, A.I. cannot recognize human disability and as a result the long-established protections for travelers with disabilities are removed from the checkpoint threat assessment process as a matter of logical computing certainty, which negates the possibility for Allegiant to comply with the legal requirements of relevant federal transportation law. The decision to allow proprietary A.I. into the special relationship was made by Defendant David P. Pekoske and TSA and is therefore part of the Checkpoint SOP. But the requirement to warn Muir about a known safety risk he could not avoid is not a decision within the authority of TSA because matters of safety are not subject to policy debate or the discretionary function exception of 28 U.S.C. § 2680(a). Therefore, Allegiant's duty to disclose arises not from the TSA Checkpoint SOP, but from the common law of common carriers and this Court has jurisdiction to decide common law cases.

(9) Allegiant's failure to adequately weigh and disclose the foreseeable risks that the use of proprietary ATR software from a monopoly for-profit provider with a military technology background presented to the well-established protected class of travelers with disabilities under Section 504, the ADA and all other relevant federal law and FAA and transportation sector code with regards to the very complex and difficult computer programming problem known as automatic target recognition. According to Bruce J. Schachter, author of *Automatic Target Recognition*, *Third Edition*, *2018,* "ATR is used as an umbrella term for a broad range of military

technology beyond just the recognition of targets. In a more general sense, ATR means *sensor data exploitation*." "An automatic target recognizer (ATR) is a real-time or near-real-time image/signal-understanding system. An ATR is presented with a stream of data. It outputs a list of the targets that it has detected and recognized in the data provided to it." This broad artificial intelligence computing field includes "computer vision" algorithms attempting to mimic human biological vision such as the proprietary ATR software used in the instant case. Schachter states: "Since the 1960s, the field of ATR has advanced in parallel with similar work in the commercial sector and academia, involving industrial automation, medical imaging, surveillance and security, video analytics, and space-based imaging." "Most current ATRs operate with humans-in-the-loop. Humans, at present, are much better than ATRs at tasks requiring consultation, comprehension, and judgement. Humans still make the final decision and determine the action to be taken. This means that ATR output, which is statistical and multi-faceted by nature, has to be presented to the human decision makers in an easily understood form. This is a difficult man/machine interface problem. Marching toward the future, more autonomous robotic systems will necessarily rely more on ATRs to substitute for human operators, possibly serving as the "brains" of entire robotic platforms." "ATR groups tackle any type of military problem involving the smart processing of imagery or signals. The government (or government-funded prime contractor) is virtually the only customer." Allegiant knew or should have known that AIT threat assessment searches are limited to the search of an image (the passenger screening data image created by L3's millimeter wave portal) showing the surface of the skin and objects on the skin (See 49 U.S.C. § 44901). Muir's private health information regarding his internal organs and any human tissue underneath his skin that is created using millimeter waves emitted by L3's portal is not subject to encoding during the creation of his data image. And if the encoding of

Muir's private health information regarding his human tissue underneath his skin is unavoidable as a part of the millimeter wave scanning and data image creation process, then that encoded information is not subject to search by the proprietary artificial intelligence computer vision ATR software. Allegiant's failure to warn Muir of the inherent risks of having his data image searched by an A.I. with an outrageous false alarm rate (the exact percentage is sensitive security information and thus not disclosed but according to some reports has exceeded eighty percent) constitutes a breach of Allegiant's common carrier duty to disclose known safety risks, which in the instant case led directly to Muir's interrogation, coercion and dehumanization at the hands of third parties Muir could not avoid and only encountered because of non-negotiable terms of Allegiant's contract of carriage.

Muir could have easily and completely avoided these deeply disturbing incidents of dehumanization, coercion and psychological torture in the TSA checkpoint "snake pit" by simply having elected not to fly (as detailed in part three of the *Marquez* test) and would have done so (as he does now) if Allegiant had not fraudulently concealed information regarding foreseeable safety risks that Muir could not avoid as part of the contract of carriage. Allegiant's improper notice of the checkpoint threat assessment process and foreseeable dangers presented by third parties Muir couldn't avoid as part of the contract of carriage prevented him from having the ability to elect to avoid a danger because he was improperly prevented (silence is fraudulent concealment in a special relationship) from knowing that danger existed.

Instead of having to experience psychological torture and dehumanizing coercion at the cold, savage "hands" of an uncaring artificial intelligence, Muir could have simply been told what the process actually entailed and the foreseeable risks it posed to people in his protected class of individuals with disabilities. Had he known then what he knows now, Plaintiff never

would have entered into a contract of carriage with Allegiant or attempted to board an Allegiant Air flight, and the "Shadow" that now haunts his waking psyche since August of 2019 would never have been created.

This case is about outrageous, dehumanizing, conscience-shocking behavior and a reckless abuse of power and trust that cannot be allowed in civilized society, now or in the future. This is an inflection point at the crossroads of advanced imaging technology and the fundamental nature of human beings and Muir prays the Court takes this opportunity to defend liberty, justice and the American way of life and denies Defendant Allegiant's motion for judgment on the pleadings and motion to dismiss for failure to state a claim so that Muir's humanity and rights will be vindicated and the benefits of an important common calling can be properly rebalanced to reflect society's well-established interest in promoting the general welfare and protecting vulnerable populations from corporate monopoly abuse of power in contracts of carriage at facilities of interstate commerce.

## STANDARD OF REVIEW

A judgment on the pleadings may not be entered under Rule 12(c) until the time for litigation has passed. Additionally, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient factual allegations to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. In determining whether a complaint states a plausible claim for relief, a court must draw on its own judicial experience and common sense. *Id.* at 679.

**ARGUMENT**

Allegiant is not entitled to judgment on the pleadings pursuant to Rule 12(c) or dismissal pursuant to Rule 12(b)(6) because Muir's FAC is timely under the Discovery Rule and Allegiant's special relationship duty to Muir requires Allegiant to give fair notice and full disclosure regarding all elements of the boarding process.

**I.      Plaintiff's Claims are Not Time-Barred**

**A.      The Discovery Rule (*See Knox Coll. v. Celotex Corp., 430 N.E.2d 976, 980 (Ill. 1981)* (distinguishing knowledge of an offense and knowledge of an injury accruing from said offense) Applies in the Instant Case and the Statute of Limitations Has Not Yet Run**

The Discovery Rule delays the commencement of the relevant statute of limitations until the Plaintiff knows or reasonably should know that he was injured and that his injury was wrongfully caused.

Plaintiff's discovery that he was injured did not occur until the sudden and severe onset of symptoms of post-traumatic stress, including painful involuntary movements, panic attacks, paranoia and severe emotional distress brought on by the unwanted and unwelcome entry of the menacing presence Muir can only describe as the Shadow into his psyche in August 2019. Muir does not know the exact date the Shadow appeared, but believes it was around the one year anniversary of the August 2018 incidents, sometime between August 1 and August 15, 2019.

Plaintiff's belief in the authority of the federal government led him to believe that if everything was done by the book (the TSA checkpoint SOP that Muir and this Honorable Court are not allowed to view or reference), that everything must have been lawful. Plaintiff believed

that because the threat assessment process was done by the federal government in broad daylight in a busy facility of interstate commerce, that everything must have been proper. This was a reasonable and commonplace belief that turned out, after much investigation, to be false, and Muir made his first FTCA claim on September 5, 2019, approximately one month after the onset of his disturbing symptoms and the subsequent triggering of his obligation to investigate whether a legal duty to him had been breached. Muir named Allegiant in the FAC on September 4, 2020, which is well within the two year statute of limitations for negligence claims because Muir has until, at the very earliest, August 1, 2021 to institute his claims against Allegiant based on the discovery of his injury.

Plaintiff's obligation to inquire whether a legal duty to him had been breached began, at the very earliest, on June 6, 2019 (as Muir stated in paragraph 13 of his Superior Court of Maricopa County Complaint CV2019-013495 against Defendant L3 filed on December 2, 2019) when he had another encounter with the TSA threat assessment process. Although he was again experiencing a serious medical emergency on June 6, 2019 in the form of another congenital disorder related irreducible hernia bulge at his right groin that unpredictably presented symptoms of possible intestinal incarceration very similar to the emergencies he experienced in August 2018, at the exact moment of the "hands up" advanced imaging technology scan, Muir's intestine did not move into his right scrotum but instead remained unpredictably "reduced" inside his body cavity and as a result a false threat alarm was not triggered at his right groin, even though his symptoms were almost identical to the symptoms he had experienced in August 2018 which resulted in the two false threat alarms that are the subject of this lawsuit. This fact regarding the massive and monumental difference in the encounters (neither of Muir's June 2019 AIT data image searches resulted in additional mandatory interrogation because while he was painfully

symptomatic, his protrusion was unpredictably and uncontrollably "reduced" at the moment of the scan for both) eventually led Muir to understand that it was a certain level of symptom manifestation regarding the location of his human tissue and organs underneath his skin that triggered the false threat alarm. Muir had to experience the threat assessment process when he was symptomatic of intestinal incarceration but his hernia bulge was momentarily and uncontrollably "reduced" in order to know that what had happened to him in August of 2018 during the threat assessment process may have been a breach of a legal duty owed to him.

And Muir never would have booked a ticket for roundtrip travel with Allegiant from IWA to PIA in June 2019 if he had any reason to believe, at the moment of booking, that the threat assessment process was unreasonable or violated his rights or that a duty to him would be breached during the boarding process. This reinforces Muir's assertion that he had no obligation to investigate whether a legal duty to him had been breached until, at the earliest, June 6, 2019 and no obligation to investigate whether his injuries were wrongfully caused until his injuries appeared in August 2019. It was only after the appearance of the Shadow in August 2019 that Muir had reason to investigate whether his psychological injuries were wrongfully caused and once Muir discovered through his investigation that his rights had been violated during the boarding process in August 2018, he realized he was unable to continue to travel via air due to the inescapable reality of the interplay between Muir's congenital physical disability and the advanced technology artificial intelligence embedded within the threat assessment process. If Muir had simply been told about this technological reality that Allegiant knew or should have known existed, Muir's completely preventable and unnecessary injuries would never have happened.

**B.     Relation Back Under FRCP Rule 15(c) is Premature as the Statute of Limitations Has Not Yet Run**

Plaintiff filed his First Amended Complaint naming Allegiant as a defendant on September 4, 2020.

Plaintiff had until, at the very earliest, June 6, 2021 based on knowledge of an offense and until, at the very earliest, August 1, 2021 based on the discovery of his injuries to file his claims against Allegiant and any challenge under the statute of limitations is premature and inappropriate based on the facts of the case because Muir did not discover his injuries until sometime in early August 2019 and Muir had no reason to believe a legal duty to him had been breached until, at the very earliest, June 6, 2019.

Allegiant's analysis under FRCP Rule 15(c) is therefore premature and irrelevant and should be disregarded.

**C.     Fraudulent Concealment is a Relevant Factor**

To adequately plead fraudulent concealment, a plaintiff must claim that the defendant did not "disclose all material facts concerning the existence of plaintiff's cause of action against the defendant and there was a special relationship that existed between plaintiff and defendant whereby the plaintiff placed trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff." Such a finding must be made by clear and convincing evidence for the plaintiff to ultimately prevail. (*See Wisniewski v. Diocese of Belleville, 943 N.E.2d 43, 73 (Ill. App. Ct. 2011)*.

This standard creates a duty to report information that would give rise to a cause of action where the defendant has a special relationship to the plaintiff. Courts liken special relationships to fiduciary relationships and analyze them using the same framework. Only where the victim and the defendant have a fiduciary relationship to one another will mere silence suffice as an affirmative, fraudulent act of concealment (*See Kenroy, Inc., 402 N.E.2d at 185* ("The person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff ... , and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action ... amounts to a fraudulent concealment.").

Allegiant and Muir had a special relationship and the power balance was tilted heavily in favor of Allegiant's influence and superiority over Muir in its role of common carrier. Therefore, Allegiant had a duty to disclose the information regarding the dangers presented by the introduction of an improper and irreconcilable motive into the special relationship by third parties and its silence on this important matter constitutes fraudulent concealment under Illinois law.

Allegiant's general, boilerplate disclosure in its contract of carriage regarding the electronic scanning of passengers fails to meet the relevant fraudulent concealment disclosure threshold requirement of an affirmative duty to tell Muir about known, state-created dangers he can't avoid because it does not address the known safety risks regarding; (1) the complex and unsolved problems of "computer vision" artificial intelligence inherent to the ATR software programming, (2) the use of proprietary A.I. to replace human judgment during the data image search process, (3) the monopoly-provider status of the A.I. owner, or (4) the willful introduction of an improper and contradictory profit motive into the special relationship.

## II.  Plaintiff Muir's FAC Clearly States a Claim Against Allegiant as a Matter of Law

Muir's claims against Allegiant must survive a FRCP Rule 12(b)(6) dismissal because: (1) Allegiant owed Muir a duty to warn of dangerous conditions of the threat assessment process that were not open or obvious and that Muir could not unilaterally avoid, (2) Allegiant owed Muir a duty to warn of what would be encountered while in TSA custody because Allegiant's common carrier duty during the boarding process included the entire TSA threat assessment process, and (3) Allegiant clearly engaged in the reckless conduct alleged by collecting and remitting the security fee and benefitting from the TSA checkpoint threat assessment process in the course of running its common carrier business.

### A.  Allegiant's Common Carrier Duty to Muir in Illinois and Arizona

To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. Whether a duty exists in a particular case is a question of law for the Court to decide in both Illinois and Arizona. Whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues.

Muir's negligence claims must survive for several reasons. *First,* Allegiant owed Muir a duty in both Illinois and Arizona and Allegiant had a duty to notify and warn Muir of conditions and elements of the threat assessment process not commonly known to air travelers. *Second,* Allegiant breached its duty to Muir. *Third,* Muir's injuries were proximately caused by Allegiant's breach. *Fourth,* Allegiant's Conditions and Contract of Carriage disclosures

regarding the threat assessment process failed to meet the disclosure requirements of a special relationship and this omission constitutes fraudulent concealment.

### 1.    Illinois – Highest Degree of Care Duty for Common Carriers

At the time of the occurrence in question, the defendant, Allegiant, was a common carrier. A common carrier… has a duty to its passengers to use the highest degree of care consistent with the mode of conveyance used and the practical operation of its business as a common carrier by air. Its failure to fulfill this duty is negligence. (See Illinois Pattern Jury Instructions 100.01 Duty Of Common Carrier To Passenger).

"We have recognized four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: "common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation."" *Simpkins v. CSX Transp., Inc.*, 965 NE 2d 1092, 1098 - Ill: Supreme Court 2012 citing *Marshall,* 222 Ill.2d at 438, 305 Ill.Dec. 897, 856 N.E.2d 1048. Allegiant and Muir had a valid contract of carriage and a special relationship as common carrier and passenger and Allegiant had a duty to Muir to use the highest degree of care.

In *Katamay v. Chicago Transit Auth.*, 53 Ill.2d 27, 32 (1972) 289 NE 2d 623 - Ill: Supreme Court 1972, the Court held that "plaintiff was not required to be in physical contact with defendant's train in order to occupy the status of passenger. She was standing on the platform provided for boarding and alighting from defendant's trains and was engaged in the "act of boarding" if, with intent to board the standing train and pay the required fare, she moved toward it for that purpose."

Allegiant owed Muir a duty of the highest degree of care *before* he was under TSA control at the checkpoint. Allegiant had a duty to disclose known matters of safety to Muir between the entry of the airport terminal and the x-ray machine belt inside the TSA checkpoint because Allegiant's duty covers the entire boarding process, from the entry of the airport terminal to the plane.

### 2.    Arizona – Reasonable Degree of Care Duty for Common Carriers

"The appropriate standard of care in negligence actions by passengers against common carriers is the objective, reasonable person standard in traditional negligence law" (*Nunez v. Professional Transit Management*, 271 P. 3d 1104, 1109 - Ariz: Supreme Court 2012).

Allegiant owed Muir the duty of care according to the reasonable person standard in Arizona and this requires Allegiant to fully disclose all relevant matters of safety regarding elements of the boarding process, especially to fiduciaries in an affirmative duty special relationship.

### 3.    Allegiant's Duty to Notify and Warn Muir of Conditions and Elements of the Threat Assessment Process Not Commonly Known to Air Travelers

Allegiant had a duty to warn Muir of all existing conditions that were not open and obvious. The TSA checkpoint threat assessment process is clearly not open and obvious. This Honorable Court cannot even view the TSA Checkpoint SOP as the entire SOP is Sensitive Security Information. Allegiant had a duty to conduct due diligence and to disclose the aggregate sum of factors presenting foreseeable risk during the boarding process that may be technically public information but are not known or commonly understood by travelers and Allegiant had a duty to research and understand all complex details of the threat assessment process and the sum

of what those details produced for identified classes of travelers, including travelers with disabilities, and the carrier had the duty to exercise the highest degree of care to discover all the defects of the threat assessment process, despite the fact that they may have "appeared" to be proper and legal.

### a.    Allegiant's Unequal Knowledge

Unequal knowledge is a major factor in the instant case because Muir's advanced imaging technology passenger screening data image ("PSDI") was created as a part of the boarding process and at the moment that Muir's PSDI was created, Allegiant made direct use of private health information regarding Muir that Muir himself could not obtain through conventional medical imaging technology.

Threat assessment searches of Muir's PSDI are limited by Congress to the surface of the skin and objects on the skin. The facts of this case demonstrate that the PSDI does in fact contain Muir's private health information regarding human tissue underneath his skin. Due to medical ethics and the complex nature of Muir's congenital disorder, Muir cannot obtain an imaging scan of his body while he is experiencing a serious medical emergency related to his congenital condition. On both August 9 and August 12, 2018, Allegiant utilized unequal knowledge regarding Muir's health condition that Muir himself has never been able to acquire because both PSDI's contain very valuable data regarding Muir's internal organs taken *during* a serious health emergency.

This shocking knowledge imbalance was made possible through the use of advanced imaging technology and proprietary artificial intelligence ATR software not commonly encountered in the free world and Muir's mandatory additional custodial interrogation on both

August 9 and August 12, 2018 was based solely on the unequal access to and utilization of Muir's private health information regarding his congenital disability.

> **b.      Allegiant's Fraudulent Concealment of its Unequal Knowledge Removes Muir's Protective Measures**

Muir did not seek *assistance* during the threat assessment process but only sought *fair notice of* the process so he could make the decision to avoid the process by electing not to fly. Allegiant had the ability to completely prevent Muir's injuries through a simple warning about the environment he must enter in order to complete the contract of carriage. Allegiant had a duty to warn Muir of a danger based on the special relationship level of care and the due diligence analysis of the aggregate factors present in the unavoidable environment. Allegiant had a duty to warn of the potential for violations of the *Katz* reasonable expectation of privacy and 49 U.S.C. § 44901 and the concealed aggregate of important factors that required a disclosure under the special relationship between Allegiant and Muir.

Allegiant's failure to properly disclose known probable safety risks constitutes fraudulent concealment, which directly removed the ability of Muir to take protective measures to avoid the risk because Muir could not avoid what he was unlawfully denied from knowing.

> **c.      Allegiant's Section 504/ADA Duty and the Well-Established Protections for Individuals with Disabilities During Travel**

The facts of this case illustrate why the imposition of a duty to warn passengers of all current elements of the TSA threat assessment process is sound. Allegiant had no right or need to know the individual characteristics of Muir's congenital disorder because the particular circumstances of the boarding process in August 2018 posed a safety risk not just to Muir, but to

Muir's entire protected class of individuals with disabilities because human empathy is a necessary prerequisite for the recognition of human disability and serious medical needs and the removal of human judgment and empathy from the threat assessment process removed Allegiant's ability to adhere to the laws that grant Muir protection from unlawful discrimination.

When a carrier is aware that a passenger is physically disabled, so that the hazards of travel are increased as to him, it is the duty of the carrier to provide that additional care which the circumstances reasonably require. The failure of the defendant to fulfill this duty is negligence. (See Illinois Patter Jury Instructions 100.08 Duty To Disabled, Infirm, Or Intoxicated Person, Or To A Child).

Allegiant knew that people with disabilities travel via air and have a statutory right to travel via air. Allegiant also knew that people with disabilities are not required to self-identify. Therefore it is reasonable to conclude that Allegiant knew or should have known that individuals with hidden disabilities travel via air and that there were several factors of the boarding process in August 2018 that increased the hazards of travel for that protected class, especially the use of proprietary A.I. in the threat assessment process.

It was foreseeable that the combination of TSA's authority and L3's proprietary A.I. presented an aggregate environmental danger for Muir's protected class and Allegiant has no discretion to warn of a safety risk that could result in unnecessary and unreasonable harm. Muir did not seek *aid*, but a simple warning about what he could not avoid and Allegiant had a duty to warn Muir of a State-created danger and a danger presented by third parties Muir could not unilaterally avoid. Muir's hidden condition was not *aggravated* by a condition of the flight, but *exposed* by proprietary A.I. before he could even board the airplane and it is not Muir's

individual characteristics but the inclusion of an improper motive in the threat assessment process that is the problem at issue. Holding Allegiant liable would not adopt a rule of absolute liability, but would enforce an already existing and well-established rule of fiduciary disclosure and due diligence.

### B.    Allegiant's Breach of its Common Carrier Duty to Muir

Allegiant breached its duty to warn Muir what he would encounter in TSA control *before* he entered TSA control because entering TSA control was a term of the contract of carriage and the TSA threat assessment special relationship between TSA and Muir and L3 and Muir existed inside the common carrier special relationship Allegiant had with Muir.

Allegiant's highest degree of care duty standard required the carrier to do due diligence on all factors of the boarding process, especially mandatory elements carried out by third parties Muir did not contract with but could not avoid as a requirement of the contract of carriage.

Allegiant breached its duty to warn Muir that TSA and L3 could violate his rights during an unreasonable search because the introduction of a proprietary corporate profit motive into the special relationship is an improper element and Muir had a right to be warned of it. Allegiant knew or should have known that the specific factors present in August 2018 posed a risk to all members of the protected class because it is undisputed that Allegiant is bound by all relevant federal and transportation law and FAA Section 504 duties. Allegiant knew or should have known that A.I. cannot understand human feelings or the feelings of humiliation that come with being unlawfully singled-out due to a disability.

### C.    Muir's Injuries Proximately Caused by Allegiant's Breach

A common carrier is not responsible for injuries suffered by a passenger unless a breach of the duty described herein is the proximate cause of the injury *Smith v. Chicago Limousine Service, Inc.*, 109 Ill.App.3d 755, 441 N.E.2d 81, 65 Ill.Dec. 289 (1st Dist.1982).

Allegiant's failure to give fair notice of the mandatory threat assessment process is the proximate cause of Muir's injuries because Allegiant's fraudulent concealment of dangerous elements of the threat assessment process removed Muir's only ability to take protective measures through his choice to avoid travel by air and Muir's injuries would not and could not have happened but for Allegiant's failure to warn of state-created dangers Muir could not unilaterally avoid during the boarding process.

### 1.    Allegiant's Duty to Protect Muir from Third Parties

It was the duty of the defendant, Allegiant, to exercise the highest degree of care consistent with the type of vehicle used and the practical operation of its business as a common carrier by air to protect its passengers from the danger of injury from defendants TSA and L3 of which it knew or should have anticipated from facts and circumstances known to it while the passengers were on its plane or while boarding or alighting therefrom. The failure of the defendant to fulfill this duty is negligence. (See Illinois Pattern Jury Instructions 100.02 Duty Of Carrier To Protect Passengers From Injury By Third Persons). In order for any duty of protection to arise, the carrier must have notice of the actual danger, or notice from facts and circumstances known to it that the danger probably exists (*Morris v. Chicago Transit Authority*, 28 Ill.App.3d 183, 328 N.E.2d 208 (1st Dist.1975)) and the carrier's knowledge is a prerequisite to the imposition of the duty of the highest degree of care (*Anderson v. Yellow Cab Co.*, 28 Ill.App.3d 656, 329 N.E.2d 278 (1st Dist.1975)).

Allegiant knew of should have known that the dangers presented by foreseeable and guaranteed contact with TSA and L3, third parties Muir made no contract with, presented a foreseeable risk because of the introduction of an improper and dangerously irreconcilable motive into the special relationship and Allegiant had the highest degree of care duty to ensure that any circumstances that could alter the special relationship between Allegiant and Muir were fully disclosed.

**D.     Allegiant's Conditions and Contract of Carriage Disclosures Regarding the Threat Assessment Process Failed to Meet the Disclosure Requirement of a Special Relationship and this Omission Constitutes Fraudulent Concealment by Silence**

Allegiant had a duty to tell Muir what he needed to know about the boarding process. A reasonable person would agree with Muir in his belief that he needed to know about all dangers that existed that he could not avoid.

Allegiant either failed to do proper due diligence or it looked the other way with regards to the safety risks posed by the threat assessment process in August 2018 and this silence on very important issues by Allegiant constitutes fraudulent concealment.

**E.     Muir's NIED Claims Must Survive as Allegiant and TSA's Nexus of Overlapping Special Relationship Duty Protects Muir at the TSA Checkpoint**

The TSA checkpoint constitutes the height of the special relationship duty because it represents a nexus of two overlapping affirmative duties to passengers. First is the common carrier duty from Allegiant to Muir based on Allegiant's conditions and contract of carriage that cover the entire boarding process. Second is the special relationship affirmative duty from the United States to Muir based on TSA's control of Muir during the threat assessment process.

The threat assessment process is contained entirely within the airplane boarding process, therefore Allegiant's duty to Muir *includes* the threat assessment process insofar as it implicates third parties from whose conduct Allegiant had a duty to protect Muir.

Duty and control are two totally separate things, especially with regards to the highly controlled boarding process. Allegiant never had control of Muir before the plane left the gate. Muir was free to decide not to fly and leave the airport from the moment he entered the terminal until he placed his personal property on the TSA checkpoint x-ray machine belt. He was also free to leave the airport once he was granted access to the sterile area. The only time Muir was not free to leave was between the moment he placed his personal property on the checkpoint x-ray machine belt and the moment he was cleared to leave the checkpoint by TSA personnel.

Allegiant had a duty to Muir as he moved toward the conveyance as part of the airplane boarding process and this includes a duty to protect him from the conduct of third parties during the threat assessment process that he could not avoid as a part of the contract of carriage. Allegiant breached its duty to Muir when it failed to protect him from TSA and L3 and Allegiant's breach was the proximate cause of Muir's injuries because they could not and would not have happened if Allegiant had protected Muir as required by the highest degree of care common carrier duty.

### F.     Muir's IIED Claims Must Survive as Allegiant Engaged In and Benefited from the Reckless and Outrageous Conduct Alleged

Allegiant took payment for the TSA checkpoint security screening, remitted Muir's payment to DHS and required that Muir present himself at the TSA checkpoint as part of the

contract of carriage. This clearly constitutes participation in and engagement with the alleged conduct.

Allegiant's failure to warn Muir presents a constitutionally cognizable danger implicating the fourth and fifth amendments to the U.S. Constitution and Allegiant's extreme, outrageous and reckless conduct in looking the other way with regards to safety risks presented to a passenger in its care by the threat assessment process goes beyond the bounds of human decency because it allowed Muir's private health information regarding his congenital disability to be used to unlawfully discriminate against him while he was in State custody. Unlawfully taking Muir's private health information via advanced imaging technology and then using it against him is utterly intolerable in a civilized and technologically advanced society.

According to author Bruce J. Schachter, "The ATR or robotic system can be viewed as a substitute for a human. What constitutes intelligence in artificial humans has long been debated, starting with stories of golems, continuing to the Turing test, and including current dire predictions of super-intelligent robots superseding humans."

Allegiant's part in the dehumanization of Muir by a proprietary A.I. "golem" in an environment with the irreconcilable motives of a fiduciary duty to Muir to disclose all safety risks and A.I. owner L3's fiduciary duty to shareholders to maximize profits and limit losses is truly outrageous and clearly reckless as Allegiant knew or should have known that this conduct had a high probability of causing severe emotional distress to a protected class of travelers with disabilities.

## III. Allegiant is Liable for Violations of Muir's Constitutional Rights and for Failing to Warn Muir that his Constitutional Rights Could be Violated by Third Parties

While it is undisputed that Allegiant is a private entity, the TSA checkpoint threat assessment process embedded within the airplane boarding process is a joint effort between Allegiant, the United States government and L3, a United States government defense contractor.

Based on this arrangement, Allegiant is utilizing the power and authority of the federal government as part of its regular business and protections of the U.S. Constitution are therefore automatically triggered. Allegiant is the bridge between Muir and the U.S. Constitution because Muir would not have had contact with TSA (or L3) were it not for his contract of carriage with Allegiant.

Similarly, claims brought under the Illinois and Arizona State Constitutions must survive because Allegiant and TSA rely on local law enforcement officers at the airport to enforce the federal regulations regarding the checkpoint because TSA does not have arrest powers. This constitutes State action in both Illinois and Arizona and the protections offered by both state constitutions are automatically triggered because Muir faced arrest by local law enforcement if he failed to follow TSA orders while in TSA control and Allegiant benefitted from the State control of Muir during the boarding process.

Muir did not simply experience an offensive screening, but one that put his life in danger. This life-threatening, dehumanizing, improperly motivated custodial interrogation process was initiated by a government defense contractor A.I. as part of an unreviewable and final process with no humans in the decision loop. The TSA checkpoint is not a Constitution-free zone and Allegiant's special relationship highest degree of care duty requires Allegiant to do due diligence with regards to all aspects of the contract of carriage and disclose foreseeable safety risks to Muir. Constitutional rights concerning due process, reasonable search and the reasonable

expectation of privacy are important to consider in the risk analysis because these rights protect Muir's bodily integrity and safety while he is under State control and faces punishment from State actors. It is clear that the conduct of State actors that Muir faced during the boarding process constitutes State action and therefore Muir's constitutional claims must survive.

## CONCLUSION

WHEREFORE, for all the reasons discussed herein, Allegiant is not entitled to judgment on the pleadings pursuant to Rule 12(c) or dismissal from this lawsuit pursuant to Rule 12(b)(6) because Plaintiff Muir's claims are timely under the Discovery Rule and Plaintiff Muir has a clear legal basis to impose common carrier special relationship liability on Defendant Allegiant.

DATED: this 18th day of November, 2020

Respectfully submitted,

_____s/Michael Gibson Muir_____
MICHAEL GIBSON MUIR

MICHAEL GIBSON MUIR
19 Inglewood Lane
Bloomington, IL 61704
(712) 309-6121