# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| MICHAEL GIBSON MUIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-01280 |
| ) | |
| UNITED STATES TRANSPORTATION ) | |
| SECURITY ADMINISTRATION; DAVID P. ) | |
| PEKOSKE, Administrator, United States ) | |
| Transportation Security Administration, in his ) | |
| individual capacity; L3HARRIS ) | |
| TECHNOLOGIES, INC., a Delaware for-profit ) | |
| corporation; ALLEGIANT AIR, LLC, a Nevada ) | |
| company; CHAD F. WOLF, Secretary, United ) | |
| States Department of Homeland Security, in his ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT & BRIEF IN SUPPORT

Plaintiff Michael Gibson Muir ("Muir"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectfully moves the Court to deny Defendant Federal Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). In support of this motion, Muir relies on the following brief and incorporated memorandum of points and authorities.

1

Muir's First Amended Complaint ("FAC") against Federal Defendants must survive for several reasons. *First*, Muir's *pro se* FTCA negligence claims against the United States must be construed liberally and logically (as they consistently have been by both TSA during its entire investigation of Muir's claims and the United States Attorney in another filing in this case) to include certain unidentified TSA Agents acting within the scope of their employment during the checkpoint screenings, which will trigger certification by the Attorney General of the United States that the unidentified TSA AGENT JOHN DOES and/or unidentified TSA AGENT JANE DOES were acting within the scope of their employment at the time of the incidents out of which the claims arose and the United States will be substituted as the party defendant according to 28 U.S.C § 2679(d). *Second*, Muir has standing for declaratory and injunctive relief because Muir has been inhibited from booking and making important flights and because Federal Defendants violated Muir's Fourth Amendment rights by introducing an improper motive into the special relationship during the threat assessment process and fraudulently concealing important information requiring disclosure, violated Muir's Fifth Amendment rights by failing to give Muir fair notice of the threat assessment process due to fraudulent concealment and coercing him to act against his will in order to secure his lawful release from TSA control, and violated Muir's constitutional right to privacy by encoding his private health information during the creation of his passenger screening data image ("PSDI") and searching his private health information regarding human tissue underneath his skin during the proprietary ATR software search of his PSDI. *Third,* this Court has subject matter jurisdiction because Muir's negligence claims are not a challenge to TSA's Standard Operating Procedures ("SOP") under 49 U.S.C. § 46110 but are instead common law negligence claims based on a special relationship affirmative duty to warn Muir of foreseeable safety risks presented by state-created dangers during the threat assessment

process that were not commonly known, open or obvious (including the introduction of an improper motive into the special relationship) and that Muir could not unilaterally avoid during the airplane boarding process that fall outside of consideration by TSA (and therefore by definition cannot be a part of the SOP) because 28 U.S.C. § 2680(a) discretionary function exception does not extend to matters of safety.

## STANDARD OF REVIEW

### I. Standard under Rule 12(b)(1)

"In ruling on a motion under Rule 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." Also, "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F. 2d 188, 191 (7th Cir. 1993) and "if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own" *Arbaugh v. y & H Corp.*, 546 US 500, 514 (2006).

### II. Standard under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient factual allegations to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

3

at 678. In determining whether a complaint states a plausible claim for relief, a court must draw on its own judicial experience and common sense. *Id*. at 679.

## ARGUMENT

I.  **Muir's FTCA Claims Against the United States Must Be Construed Liberally**

Muir's *pro se* allegations are clearly not "baseless, irrational, fanciful, delusional or wholly incredible", his FAC is not "factually frivolous" (See *Weinschenk v. CIA,* 818 F.App'x 557, 559 (7th Cir. 2020)) and Federal Defendants' assertion that Muir failed to name the United States as a party rests on a procedural technicality based on Federal Defendants' deliberate choice to *not* liberally construe Muir's "inartful" pleadings, which prevents the necessary certification by the Attorney General (that all unidentified TSA Agents involved in the screenings in question were acting within the scope of their employment at the time of the incidents out of which the claims arose), which substitutes the United States as party defendant. Muir believes that he cannot, on his own, name the United States as a defendant (Muir knows of no way to effect service of process), so the claim that Muir named the wrong party is not as simple as it sounds.

The United States Attorney's choice to narrowly construe Muir's pleadings when it comes to his FTCA claims against the United States is a selective deviation from both the prior precedent established in this case by the TSA during the investigation of Muir's administrative claims as part of the Federal Tort Claims Act process and the United States Attorney's own decision to include unidentified TSA Agents acting within the scope of their employment in the logical interpretation and summary of Muir's pleadings in its "Motion to Dismiss Defendant David P. Pekoske In His Individual Capacity" (See pg. 12 - "This case concerns a wholly

4

different factual context – i.e., an airplane-passenger screening… that was performed by TSA screeners (i.e., Transportation Security Officers or TSO's) acting under the ATSA").

### A. TSA Investigation of Muir's FTCA Claims

Muir's FTCA claims against the United States regarding the August 9 and August 12, 2018 incidents were filed with TSA on September 16 and September 5, 2019 respectively. Despite never naming the individual TSA Agents involved (or naming unidentified JOHN or JANE DOES), Muir's claims were logically construed to include all TSA Agents present during his security screenings and TSA accepted both administrative claims "based on the alleged negligent or wrongful acts or omissions of Transportation Security Administration (TSA) personnel" and forwarded them to the TSA Chief Counsel for further handling. Muir's correspondence with TSA repeatedly referenced "names of any TSA personnel involved in or aware of the incident, if known" (Muir did not and does not know the names of the TSA Agents involved) and TSA's final May 28, 2020 denial of Muir's claims referenced 28 U.S.C. § 2680(h) regarding the FTCA applicability to claims arising from assault or battery. All of these facts point toward the government consistently and liberally construing Muir's claims to necessarily include certain unidentified TSA Agents acting within the scope of their employment during the checkpoint screenings because it is totally illogical to deny a claim based on an assault and battery exception if there were no TSA Agents involved in the incident because an agency cannot batter someone, only a human being can.

Also, it is clear that an agency cannot be sued under the FTCA and that all other lawsuits against TSA personnel acting in their official capacities are precluded, so it must be construed, as it consistently was by TSA, that Muir's FTCA suit is against Defendant the United States and

5

that his failure to specifically name TSA Agent John and Jane Does cannot warrant dismissal, especially after Muir has demonstrated his continued compliance with FTCA requirements and his clear intent to sue the United States (which the United States Attorney in this case clearly states on pg. 1, sentence 1 of its Motion to Dismiss Plaintiff's First Amended Complaint ("Plaintiff Michael Muir has sued the United States")).

According to the TSA claim denial letter, Muir has six months from the date of the mailing of the letter (May 28, 2020) to file suit in Federal District Court. Because the instant motion is made before the six month time period has run, Muir believes that it is proper for either the Court to name the United States as a party in the action based on the FTCA or for Muir to seek leave from the Court to amend his FAC in order to correct his inartful pleadings to specifically name TSA Agent John Doe 1-X as Defendants where the fact pattern requires it, which will trigger certification by the Attorney General.

### B.     Certification by the Attorney General Under 28 U.S.C § 2679

28 U.S.C. § 2679(c) states: "The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury."

The unidentified TSA AGENT JOHN DOES and/or unidentified TSA AGENT JANE DOES in this case were acting within the scope of their employment at the time of the incidents. 28 U.S.C § 2679(d)(1) states: "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of

6

this title and all references thereto, and the United States shall be substituted as the party defendant."

The United States Attorney stated that "Plaintiff's allegations describe nothing more than a routine pre-boarding search." (pg. 15, Federal Defendant's Motion to Dismiss Plaintiff's First Amended Complaint). It is therefore undisputed that any unnamed TSA Agents were acting within the scope of their employment at the time of both the August 9 and August 12, 2018 incidents and the United States will be substituted as the party defendant as outlined in the statute.

**II.     Muir Has Standing for Declaratory and Injunctive Relief**

   **A.     Muir Has Been Inhibited from Booking and Making Important Flights**

Muir currently needs to fly from Illinois to Arizona in order to rent a truck and move his remaining personal property (about 90% of his total assets) from a storage facility in Arizona to his residence in Illinois. Muir has been unable to book a plane ticket because of the unlawful discrimination he will face during the airplane boarding process (Muir is still uncontrollably symptomatic at his right groin due to his physical disorder and he cannot predict when his symptoms will appear or disappear). This constant, near certain threat of unlawful discrimination during the threat assessment process has forced Muir to delay his plans (out of fear of having his physical disorder at his right groin trigger a false threat alarm that will unstoppably lead to his further custody, interrogation and unavoidable mental anguish), resulting in the continued accumulation of unnecessary monthly storage fees and unnecessary disruptions to his life that arise from not having access to his personal property.

7

Because of his inability to control the manifestation of his symptoms, Muir fears he will be subjected to secondary screening due solely to his disability because, based on his experiences with TSA checkpoint screening, there is a very good chance he will be forced to endure a secondary screening if his hernia bulge is not "reduced" inside his abdominal cavity at the moment he puts his hands up (Muir, when not laying on his back, must constantly push his human tissue out of his right scrotum and back into his body and this is impossible during the time he must put his hands up) for the creation of his PSDI and Muir cannot risk being psychologically tortured or coerced into acting against his own will ever again. Based on these facts, Muir has demonstrated definite upcoming travel plans and an important flight he is inhibited from making and a real and immediate threat of future injury due to unlawful discrimination and no fault of his own.

### B. Federal Defendants Violated the U.S. Constitution

Federal Defendants' assertion (pg. 15, Motion to Dismiss Plaintiff's First Amended Complaint) that Muir believes that the pat-down is what made his passenger screening search unreasonable is false and misleading. The checkpoint screenings on August 9 and August 12, 2018 violate; (1) Muir's Fourth Amendment rights through the introduction of an improper motive into the special relationship in the form of a monopoly-provider corporate profit motive and by denying Muir the right to avoid the search (by not flying) through Federal Defendants' fraudulent concealment of important information regarding elements of the threat assessment process that were not commonly known, (2) Muir's Fifth Amendment rights by failing to give Muir fair notice of the threat assessment process due to fraudulent concealment and by coercing him to act against his will in order to secure his release from TSA control, and (3) Muir's constitutional right to privacy found in *Griswold v. Connecticut* by unlawfully taking his private

8

health information, unlawfully encoding it during the creation of his PSDI and then unlawfully using it against him during the artificial intelligence search segment of the threat assessment process.

### 1. Muir's Fourth Amendment Rights

The Court in *US v. Marquez*, 410 F. 3d 612, 616 (9th Cir. 2005) stated: "In *Davis* and its progeny, we have established a general reasonableness test for airport screenings. "An airport screening search is reasonable if: (1) it is no more extensive or intensive than necessary, in light of current technology, to detect weapons or explosives; (2) it is confined in good faith to that purpose; and (3) passengers may avoid the search by electing not to fly."" *Torbet,* 298 F.3d at 1089 (citation omitted); *see also Davis,* 482 F.2d at 913; *Pulido-Baquerizo,* 800 F.2d at 901. Muir's screenings both fail the reasonableness test because of the bad faith inclusion of an improper motive in the special relationship between TSA and Muir and the fraudulent concealment of important information with regards to the threat assessment process.

#### a. Improper Motive and Breach of Duty of Loyalty

Federal Defendants violated Muir's right to be free from unreasonable search as defined by the second element of the *Marquez* Test through the bad faith act of introducing an improper motive into the special relationship between TSA and Muir that exists during the threat assessment process. Federal Defendants deliberate act to allow a competing and contradictory motive to enter the relationship was a breach of the special relationship duty of loyalty because, just as one person cannot serve two masters, there cannot be two loyalties in a special relationship. The affirmative duty runs from the United States to Muir as Muir was in State control and Muir was intended to benefit from the original purchaser's contract for the ATR

9

software because it was used to protect Muir's freedom of travel and to protect Muir from dangerous contraband being brought onto airplanes.

When Defendant L3's corporate profit motive and fiduciary duty to its shareholders was brought into the special relationship, an irreconcilable situation was created where a duty also ran from the United States to L3 because it purchased proprietary ATR software cycles from L3 and DHS granted L3 immunity from suit regarding its role as monopoly provider of the ATR software used during the security screening process.

This breach of trust, good faith and the duty of loyalty violated the second part of the reasonableness test. Therefore, the search was unreasonable under the Fourth Amendment.

### b. Fraudulent Concealment of Important Information

To adequately plead fraudulent concealment, a plaintiff must claim that the defendant did not "disclose all material facts concerning the existence of plaintiff's cause of action against the defendant and there was a special relationship that existed between plaintiff and defendant whereby the plaintiff placed trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff." Such a finding must be made by clear and convincing evidence for the plaintiff to ultimately prevail. (*See Wisniewski v. Diocese of Belleville, 943 N.E.2d 43, 73 (Ill. App. Ct. 2011)*. This standard creates a duty to report information that would give rise to a cause of action where the defendant has a special relationship to the plaintiff. Courts liken special relationships to fiduciary relationships and analyze them using the same framework. Only where the victim and the defendant have a fiduciary relationship to one another will mere silence suffice as an affirmative, fraudulent act of concealment (*See Kenroy, Inc., 402 N.E.2d at 185* ("The person occupying the relation of

fiduciary or of confidence is under a duty to reveal the facts to the plaintiff ... , and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action ... amounts to a fraudulent concealment.").

The United States (TSA) and Muir had a special relationship and the power balance was tilted heavily in favor of TSA's influence and superiority over Muir in its role of State authority in physical control of Muir. Therefore, TSA Agents had a duty to disclose all information regarding the dangers presented by the introduction of an improper and irreconcilable motive into the special relationship and its silence on this important matter constitutes fraudulent concealment under Illinois law.

Because Muir could not elect to avoid what he was wrongfully prevented from knowing, the screenings in question are unreasonable under the third part of the reasonableness test because Muir was denied the ability to avoid the search by electing not to fly because if he had been given fair notice of the process, he never would have booked a ticket.

### 2. Muir's Fifth Amendment Rights

Federal Defendants violated Muir's right to due process by failing to give him fair notice of a process that contained mandatory custodial interrogation and the possibility of criminal prosecution and by coercing him to act against his will in order to secure his lawful release from TSA control.

TSA can make Muir put his hands up during the AIT scan, even though it hurts him to do so. This is control of Muir's locomotion and Muir must trust TSA to completely fulfill its duties to him in such a situation where he cannot unilaterally end the interrogation.

### a.     Fraudulent Concealment and Fair Notice

TSA controls Muir in a custodial interrogation situation in which Muir faces severe criminal and civil penalties for disobeying TSA personnel during the screening process. This restraint on Muir's liberty and locomotion requires that fair notice of the process be given and TSA's fraudulent concealment of important elements of the threat assessment process that are not commonly known but cannot be avoided constitutes a breach of its affirmative duty to warn Muir of foreseeable risks that could result in unnecessary harm.

L3's application for Safety Act Certification and Designation demonstrates that the risk was foreseeable as a corporation does not seek immunity from suit unless there is a reason to do so.

### b.     Muir's Parallel Sets of Claims

Muir's allegations demonstrate that he can credibly maintain parallel sets of claims regarding the two screening incidents that occurred within days of each other because it was only after the second screening incident on August 12, 2018 that Muir had reason to believe that what happened on August 9 was not a one-off mistake and because of his belief and desperate hope that what happened to him at IWA in Arizona could not happen again in Illinois because Muir had the chance to clearly explain the situation regarding his serious medical needs to TSA Agents in a private area at PIA.

Muir was unaware at the time of the August 12, 2018 screening at PIA that the ATR software responsible for the search of his passenger screening data image was an artificial intelligence wholly incapable of recognizing his serious medical needs or his rights under Rehabilitation Act of 1973 Section 504 and other disability codes and statutes like the ADA.

### c. Coercion and Psychological Torture

Federal Defendants violated Muir's due process rights by coercing him to act against his will in order to secure his lawful release from TSA control.

International Covenant on Civil and Political Rights ("ICCPR") Article VII states: "No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subjected without his free consent to medical or scientific experimentation." United Nations Convention against Torture states: "The term "torture" means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. It does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." Congress held (138 Cong. Rec. S4781-01 (daily ed., April 2, 1992)) that: "The United States considers itself bound by Article 7 to the extent that "cruel, inhuman or degrading treatment or punishment" means the cruel and unusual treatment or punishment prohibited by the Fifth, Eighth and/or Fourteenth Amendments to the Constitution of the United States."

Muir has never been subject to sanctions (Muir has never been arrested and was detained against his will for the first time in his adult life on August 9, 2018). Muir has prolonged mental pain and suffering. Federal Defendants' reckless disregard for a known outcome (the inability of artificial intelligence to recognize or empathize with human disability) is equivalent to

intentional conduct. Therefore, the infliction of pain upon Muir due to the deliberate indifference to his serious medical needs meets the intent requirement. Muir is the only person who knows how to push his irreducible intestine bulge from his right scrotum up through his inguinal canal and back into his abdominal cavity without causing severe pain and risk of intestinal incarceration or strangulation, which can result in death. Therefore, Muir was placed at risk of severe physical pain and death when TSA Agents disregarded Muir's humanity and his serious medical needs. Muir was under the physical control of the State for the purpose of interrogation and the State was aware of what was happening and did nothing to stop it and all of this happened solely because of the revelation of Muir's hidden congenital disability at his right groin.

### i.     Deliberate Indifference to Serious Medical Needs

The Court established in *Carlson v. Green,* 446 U.S. 14 (1980) that the deliberate indifference to serious medical needs violated U.S. Constitution Amendment VIII.

The basic, fundamental flaw in using artificial intelligence ATR software to search PSDIs and issue unreviewable threat alarms that lead to mandatory further interrogation during the threat assessment process is that A.I. has no empathy and by definition cannot understand serious medical needs or human disability. Similar to the fruit of the poisonous tree doctrine, this irredeemable flaw in the very nature of artificial intelligence makes it by definition indifferent to Muir's serious medical needs and therefore in violation of the Eighth Amendment when it unlawfully searches data regarding the human tissue and congenital physical disability underneath Muir's skin and generates a false threat alarm due solely to the uncontrollable symptom manifestation of Muir's disorder.

### ii. Degrading Treatment and Dehumanization

Muir was publicly degraded at IWA when, in front of many people at a busy airport checkpoint, he was coerced to submit to a physical pat-down at the exact site of his painful medical emergency solely because of his disability in order to be released from State interrogation and avoid further punishment.

No one other than Muir had ever touched his right groin during the type of serious health emergency Muir experienced on August 9, 2018. The fact that a TSA Agent, using the authority of the State, was the first person to violate Muir's personal security and sanity and touch him at his right groin during a medical emergency when not even medical professionals or his wife had touched him there "shocks the conscience" and cannot be tolerated in the United States of America.

### iii. Cruel and Unusual Punishment

Muir was psychologically tortured and punished in a cruel and unusual fashion when he was forced to choose a punishment (arrest, criminal prosecution and civil fines or allow a TSO with no medical training to apply pressure to the exact site of his serious and painful medical emergency) in order to secure his lawful release from TSA control. Muir was unlawfully and unethically coerced to agree to be physically touched at the exact site of his congenital disability (for the purposes of State interrogation) during a medical emergency for the sole, arbitrary reason of having his hidden congenital disability at his right groin unlawfully revealed as a false threat alarm by L3's proprietary ATR software during passenger screening. A reasonable person would agree with Muir in his belief that using advanced technology (with probable military

origins) to expose a person's most debilitating weakness and then using it against him during an interrogation cannot be tolerated in civilized society.

### 3. Muir's Constitutional Right to Privacy

The Court stated in *Griswold v. Connecticut,* 381 U.S. 479, 486 (1965): "We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions."

"Specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance. See *Poe* v. *Ullman,* 367 U. S. 497, 516-522 (dissenting opinion). Various guarantees create zones of privacy." (*Id.* at 484).

#### a. Muir's Private Health Information

Federal Defendants violated Muir's constitutional right to privacy through oppressive government prying and intimidation by taking his private health information regarding his human tissue beneath his skin using millimeter waves, encoding his private health information using proprietary code during the creation of his passenger screening data image ("PSDI") and searching his private health information regarding human tissue underneath his skin during the proprietary ATR software search of his PSDI. Muir's private health information includes decisions regarding the treatment of his congenital disorder and these decisions are marital communications protected by marital privilege.

b.     PSDI Data Path

Muir must discover the path that his private health information travelled during the threat assessment process. If Muir's PSDI travelled via fiber optic cable on its journey to a server or network hosting L3's proprietary ATR software for the screening search of his passenger screening data image, then common carrier law applies to Muir's private health information on that journey because fiber optic cable networks are a common calling and as a result all Defendants have a common carrier highest degree of care duty in Illinois to do due diligence to determine and ensure that Muir's PSDI has been properly and completely and permanently destroyed.

Muir must also discover if his private health information crossed any state lines (or left the United States of America) during the search of his passenger screening data image.

c.     The *Katz* Reasonable Expectation of Privacy Test

Mr. Justice Harlan stated in *Katz v. United States*, 389 U.S. 347, 361 (1967) that: "My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable.""

The "Katz" Reasonable Expectation of Privacy Test is applicable in this case. Muir exhibited an actual expectation of privacy in wanting to keep his congenital disability private through his choice to not disclose the existence or severity of his condition to anyone but his wife in the context of their marriage. Therefore, the first prong of the "Katz" test is satisfied. And society recognized that Muir's expectation of privacy with regards to his private health information was "reasonable" as Congress has recognized "Full face photographic images and

any comparable images" as "Protected Health Information" in laws including "HIPAA" and "HITECH". Therefore, the second prong of the "Katz" test is satisfied.

Both prongs of the "Katz" test are satisfied, therefore, Muir had a reasonable expectation of privacy with regards to keeping his congenital disability private.

### d.  Injunctive Relief

Muir has standing to demand injunctive relief in the form of the return of his private health information regarding human tissue under his skin taken during the screenings in question because he has a personal stake in the outcome and has demonstrated that his upcoming travel plans have been wrongfully precluded, he has been inhibited from making an important flight and he has a legitimate fear of being subjected to potentially harmful secondary screening based solely on the symptom manifestation of his congenital disability and the certain reality that the ATR software artificial intelligence responsible for the search of his PSDI is incapable, by its very nature, of recognizing his disability during the threat assessment process.

And because Muir's PSDIs contain very valuable private health information regarding his congenital disability that Muir cannot obtain in any other way, it is necessary that this data be returned to him so that he can incorporate the information into his healthcare plan.

### III.  This Court Has Subject Matter Jurisdiction Because Muir's Negligence Claims Are Not a Challenge to TSA's Standard Operating Procedures under 49 U.S.C. § 46110

In this case, Muir alleges negligence in the implementation, rather than the design, of government safety regulations, and the governmental decisions Muir claims were negligent concern the special relationship affirmative duty to fully disclose known, *objective,* state-created

safety risks rather than broad questions of social, economic, or political policy. Therefore, 28 U.S.C. § 2680(a), discretionary function exception to the FTCA, does not bar Muir's suit.

The question of *how* the government is alleged to have been negligent in this case is critical. "Decisions involving the application of objective scientific standards are not insulated by the discretionary function exception because they do not involve the weighing of economic, political and social policy." (quoting *Kennewick*, 880 F.2d at 1030) (alterations omitted)). Therefore, TSA cannot consider, as part of the SOP, whether or not to disclose known safety risks of the checkpoint threat assessment process. Defendant David P. Pekoske and TSA's decision to allow a monopoly, for-profit interest (L3's proprietary ATR software) into the special relationship between TSA and Muir (the creation of the Snake Pit) was a choice grounded in policy decisions and is therefore shielded under the discretionary function exception. But warning of the unavoidable environment created by that choice was a safety responsibility not susceptible to policy analysis (See *Whisnant v. US*, 400 F. 3d 1177 (9th Cir. 2005)) and the failure to warn is <u>not</u> shielded under the discretionary function exception.

The government ignored reports and complaints describing the outrageous percentage of false threat alarms produced by the proprietary ATR software, knew or should have known of the dangerous condition the environment presented to protected classes of travelers (DHS held an algorithm contest to fix the known problems of the proprietary ATR software using taxpayer funds), and intentionally or recklessly or both intentionally and recklessly failed to warn travelers of those state-created health hazards.

The unidentified TSA Agent John and Jane Does and Federal Defendants had a duty to warn Muir of the foreseeable safety risks presented by state-created dangers during the threat

assessment process that were not commonly known, open or obvious, including the introduction of an improper motive into the special relationship and Muir's negligence claims for improper notice regarding the threat assessment process stem not from a challenge to the TSA SOP, but from a common law special relationship affirmative duty to warn Muir of what he couldn't avoid during the airplane boarding process and therefore this Court has subject matter jurisdiction.

And because the common law special relationship affirmative duty to warn of an objective safety risk cannot be considered as part of the TSA SOP (the failure to warn is not shielded under the discretionary function exception), Muir's claims cannot be construed to be "inescapably intertwined" with a review of that SOP and this Court has subject matter jurisdiction.

## CONCLUSION

WHEREFORE, for all the reasons discussed herein, Federal Defendants are not entitled to dismissal from this lawsuit pursuant to Rule 12(b)(1) or Rule 12(b)(6) because this Court has jurisdiction to decide common law negligence cases and Plaintiff Muir has standing to impose special relationship liability on Federal Defendants and the United States.

DATED: this 24th day of November, 2020

                                                Respectfully submitted,

                                      _____s/Michael Gibson Muir_____
                                              MICHAEL GIBSON MUIR

MICHAEL GIBSON MUIR
19 Inglewood Lane
Bloomington, IL 61704
(712) 309-6121