E-FILED
Friday, 27 November, 2020  05:31:56 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| MICHAEL GIBSON MUIR,<br><br>               Plaintiff,<br><br>v.<br><br>UNITED STATES TRANSPORTATION SECURITY ADMINISTRATION; DAVID P. PEKOSKE, Administrator, United States Transportation Security Administration, in his individual capacity; L3HARRIS TECHNOLOGIES, INC., a Delaware for-profit corporation; ALLEGIANT AIR, LLC, a Nevada company; CHAD F. WOLF, Secretary, United States Department of Homeland Security, in his official capacity,<br><br>               Defendants. | Case No. 1:20-cv-01280<br><br>District Judge: Hon. Joe Billy McDade |

## DEFENDANT ALLEGIANT AIR, LLC'S REPLY IN SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS AND RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Michael Muir's ("Plaintiff") response ([ECF 36] or the "Response") in opposition to the Motion for Judgment on the Pleadings and Motion to Dismiss ([ECF 30] or "Allegiant's Motion to Dismiss") of Allegiant Air ("Allegiant") spans 30 pages and is saturated with new facts and legal claims that were never raised in his First Amended Complaint ([ECF 12] or the "FAC"). It is black letter law that Plaintiff cannot amend his FAC through an opposition brief. Thus, such facts and claims must be disregarded by the Court. They include, generally: (a) that a United States Transportation Security Administration ("TSA") screening experience on June 6, 2019 triggered Plaintiff's trauma from the 2018 TSA screenings and thereby gave rise to his psychological trauma he refers to as "the Shadow"; (b) that Plaintiff and Allegiant had a "special relationship"; (c) that Allegiant knew details of the TSA's "threat assessment process" and other proprietary information relating thereto; (d) that Allegiant, the TSA, and Defendant L3Harris Technologies, Inc. ("L3") had a common enterprise;  (e) that Allegiant had direct involvement with the TSA screening process including the "threat assessment process"; (f) that Allegiant fraudulently concealed its knowledge of the TSA screening process, including its knowledge of the "threat assessment process"; and (g) that Allegiant breached its duty of care under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and under the Americans with Disabilities Act (the "ADA").

For the reasons stated below, this Court should disregard the new facts and legal claims alleged for the first time in the Response. Moreover, even if this Court were to permit Plaintiff to amend his FAC through his opposition brief, Allegiant would nonetheless still be entitled to dismissal for the reasons set forth below, and in Allegiant's Motion to Dismiss.

I.      **Plaintiff Cannot Avoid Dismissal by Relying on Newly Asserted Facts and Claims that Do Not Appear Anywhere in His FAC**

Plaintiff, all but conceding that he has failed to state a claim against Allegiant, now attempts to use his Response to amend his FAC and raise a barrage of new factual and legal assertions against Allegiant. That is unequivocally prohibited as a matter of law. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985) (citations omitted); *see also Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir. 1991) ("The defendant and the court should not be left to speculate as to what theory the plaintiff may be pursuing").

Here, in the Response, Plaintiff opposes Allegiant's arguments by raising and relying on numerous categorical factual and legal assertions not stated anywhere in the FAC:

- Plaintiff's assertion in the Response that he was not aware of his injuries until after a June 6, 2019 TSA screening triggered his trauma resulting from the 2018 TSA screenings alleged in the FAC. S*ee, e.g.*, [ECF 36], at p. 14 ("Plaintiff's obligation to inquire whether a legal duty to him had been breached began, at the very earliest, on June 6, 2019 . . . when he had another encounter with the TSA threat assessment process.").

- Plaintiff's assertion in the Response that his trauma injuries manifested in "'the Shadow' that now haunts his waking psyche since August 2019 . . ." *Id.* at p. 12.

- Plaintiff's assertion in the Response that he had a fiduciary or "special" relationship with Allegiant. *Id.* at p. 17 ("Allegiant and [Plaintiff] had a special relationship and the power balance was tilted heavily in favor of Allegiant's influence and superiority over [Plaintiff] in its role of common carrier.").

- Plaintiff's assertion in the Response that Allegiant knew or should have known about proprietary information in the possession of L3 and the TSA relating to the TSA's "threat assessment process." *See, e.g., id.* at p. 8 (". . . Allegiant knew or should have known that private health information regarding [Plaintiff's] human tissue underneath his skin taken during the creation of [Plaintiff's] passenger screening data image was not subject to encoding by L3's AIT portal or search by L3's proprietary A.I. . . .").

- Plaintiff's assertion in the Response that Allegiant partnered with L3 and/or the TSA to use passenger screening proprietary software at the TSA screening checkpoint. *See, e.g., id.* at pp. 7 ("Allegiant using advanced technology and A.I. to violate [Plaintiff's] fundamental

right to privacy . . .”); and 8 (“Allegiant’s abuse of power in an important common calling through its partnership with a soulless corporate monopoly power.”).

- Plaintiff’s assertion in the Response that Allegiant fraudulently concealed details of the TSA “threat assessment process” from Plaintiff. *See, e.g.*, *id.* at pp. 18-19 (“Allegiant’s Conditions and Contract of Carriage disclosures regarding the threat assessment process failed to meet the disclosure requirements of a special relationship and this omission constitutes fraudulent concealment.”).

- Plaintiff’s assertion in the Response that Allegiant breached its duty of care under Section 504 and under the ADA. *See, e.g.*, *id.* at p. 9 (“Allegiant’s failure to adequately weigh and disclose the foreseeable risks that the use of proprietary ATR software . . . presented to the well-established protected class of travelers with disabilities under Section 504, the ADA and all other relevant federal and FAA transportation sector code . . .”).

The degree to which Plaintiff introduces this plethora of facts and claims for the first time in his Response to Allegiant’s Motion to Dismiss is a confirmation of the pleading deficiencies in Plaintiff’s FAC and clearly signals a desperate attempt to amend the FAC through an opposition brief to avoid dismissal. This Court should not indulge Plaintiff by allowing him to amend his FAC through his Response, and accordingly should disregard the new factual and legal assertions in the Response and consider only Plaintiff’s allegations in the FAC.

## II.    The New Facts and Claims Asserted in Plaintiff’s Response Cannot Save the FAC from Dismissal

Although the law is clear that Plaintiff cannot amend the FAC through his Response to Allegiant’s Motion to Dismiss, none of the new facts or claims asserted by Plaintiff in his Response—even if they were to be considered by the Court—can save the FAC from dismissal. While Allegiant’s Motion to Dismiss addresses the vast majority of these new assertions even in the event they are considered by the Court, Allegiant did not (and could not) address Plaintiff’s assertion that his negligence cause of action against Allegiant accrued in 2019 because Plaintiff raised it for the first time in his Response. As explained below, however, Plaintiff’s new assertion that his negligence cause of action accrued in 2019 is contrary to the law and Plaintiff’s own statements in the FAC and the Response.

3

### A.    There Is No Basis to Extend or Toll the Statute of Limitations

Despite the plain and explicit language in the FAC admitting that the TSA's physical pat-down caused immediate physical pain, severe psychological distress and endangered Plaintiff's life, *see* [ECF 12], at ¶¶ 32, 35, 52 and 55,[1] Plaintiff argues in his Response that his FAC is timely as against Allegiant because Plaintiff did not discover that he was injured until, at the earliest, June 6, 2019, or at the latest, August 2019 (exact date unknown), and because Allegiant fraudulently concealed "state-created dangers he can't avoid[.]" [ECF 36], at p. 17.[2] Plaintiff's arguments are meritless.

### 1.    Plaintiff Admits He Was *Immediately* Aware of His Injuries and the Discovery Rule Is Inapplicable

For the first time, Plaintiff asserts in his Response that he did *not* discover his injuries "until the sudden and severe onset of symptoms of post-traumatic stress, including painful involuntary movements, panic attacks, paranoia and severe emotional distress brought on by the unwanted and unwelcome entry of the menacing presence [Plaintiff] can only describe as the Shadow into his psyche in August 2019." [ECF 36], at p. 13. According to the Response, this "sudden and severe

---

[1]   Plaintiff reiterates the injuries the August 2018 TSA screening allegedly caused him in his Response. *See* [ECF 36], at p. 4 ("[Plaintiff] was unlawfully coerced into consenting to something that no reasonable person in [Plaintiff's] situation would have ever allowed . . . as it caused *immediate* physical pain, severe psychological distress and endangered [Plaintiff's] life.") (Emphasis added.)

[2] Plaintiff claims Allegiant's arguments concerning relation back are premature and should be disregarded, but Plaintiff does not dispute those arguments. Accordingly, Plaintiff should be deemed to have waived any argument regarding relation back. However, for clarity's sake, Allegiant notes that it analyzed relation back under the Federal Rules because the Complaint presents a federal question. Allegiant recognizes that Plaintiff also alleges diversity jurisdiction, thus potentially implicating Illinois's relation-back statute. *See* 735 ILCS 5/2-616(d). Allegiant submits that whether the analysis is governed by state or federal law, the analysis is functionally the same. *See Fleece v. Volvo Const. Equipment Korea, Ltd.*, No. 10 CV 4496, 2012 WL 171329, at *2-4 (N.D. Ill. Jan. 20, 2012) (noting analysis under Fed. R. Civ. P. 15 and Illinois statute is largely the same).

onset of symptoms" was triggered by Plaintiff's *uneventful* TSA screening on June 6, 2019 (for an Allegiant flight) which did not result in a threat alarm despite Plaintiff experiencing a similarly symptomatic "serious medical emergency." *Id.* at p. 14. This purported triggering event in 2019 directly contradicts Plaintiff's statements in both the FAC and the Response that the TSA screening and pat-down events in 2018 caused him *immediate* physical pain and psychological distress. *See* [ECF 12], at ¶¶ 32, 35, 52 and 55; [ECF 36], at p. 4. Notably, Plaintiff also states in his Response to the Federal Defendants' Motion to Dismiss that "it was only after the second screening incident on *August 12, 2018* that [Plaintiff] had reason to believe that what happened on August 9 was not a one-off mistake . . ." [ECF 38], at p. 12 (emphasis added). Thus, it is clear from these contradictions that the 2019 screening event raised in the Response is nothing more than a "red herring" asserted by Plaintiff as part of a transparent attempt to resurrect his claims against Allegiant that were not filed timely. But, even putting aside Plaintiff's characterization in the FAC of the 2018 TSA screenings causing him *immediate* physical pain and psychological distress, the newly raised assertion in his Response regarding the 2019 screening does not extend the statute of limitations in this case through the discovery rule.

The Illinois discovery rule states that the limitations period begins to run when the party seeking relief "knows or reasonably should know of his injury and knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.*, 430 N.E. 2d 976, 980 (Ill. 1981). "The limitations period begins running even if the plaintiff does not know the misconduct was actionable." *Parks v. Kownacki*, 737 N.E. 2d 287, 294 (Ill. 2000) (citing *Knox College*, 430 N.E. 2d at 980). Although resolving when a plaintiff reasonably should know of his injury is often a question of fact, here it should be resolved as a matter of law. *Id*. The Supreme Court of Illinois consistently holds that when a plaintiff is aware of the misconduct alleged in the complaint, the

plaintiff cannot claim that their later-onset emotional injuries trigger the statute of limitations under the discovery rule. *Id.*; *see also Clay v. Kuhl*, 727 N.E.2d 217, 221-22 (Ill. 2000).

For example, in *Clay*, the plaintiff alleged that a priest abused her in the early seventies, with the last incident of abuse occurring in 1973. *Clay*, 727 N.E.2d at 222. The plaintiff in *Clay* turned eighteen in 1973, which triggered the two-year statute of limitations. *Id.* The plaintiff brought suit more than twenty years later and argued that under the discovery rule, the statute of limitations began in 1994 when she connected her psychological injuries to the abuse she suffered prior to and until 1973. *Id.* The court determined that the statute of limitations began, as a matter of law, when the plaintiff turned eighteen because the plaintiff was aware of the misconduct charged in the complaint. *Id.* The Supreme Court of Illinois further explained that a plaintiff cannot postpone the statute of limitations by not understanding the nature of her injuries. *Id. See also Parks*, 737 N.E. 2d at 294-295 (plaintiff knew that the misconduct occurred and her lack of understanding that it was actionable did not stop the statute of limitations from running).

Like the plaintiff in *Clay* and *Parks*, Plaintiff here was *immediately* aware of his injury caused by the alleged TSA misconduct he describes in his FAC. Specifically, he states that he told the TSA agent at the Phoenix screening that "being touched at his right groin would result in extreme physical pain and could endanger his life and he ordered TSA not to touch him at his right groin." [ECF 12], at ¶ 32. He further states that as a result of the Phoenix screening he suffers severe ongoing psychological distress as a result of "being publicly humiliated in front of many people at the TSA security checkpoint[.]" *Id.* at ¶ 35.

During the Peoria screening, Plaintiff states that he told the TSA agent that "physical contact at his right groin would result in *immediate and extreme physical pain* for him." *Id.* at ¶ 52 (emphasis added). Because he found the physical pat-down in Phoenix so painful and

objectionable, during the Peoria screening he "offered to lower his pants and underwear to show TSA the completely beneath the skin hernia at his right groin." *Id.* at ¶ 55.

The fact that Plaintiff now claims that he had additional emotional distress manifest the following year in 2019 does not change the accrual date of his cause of action in August 2018 for purposes of the statute of limitations. As the court explained in *Parks* and *Clay*, a plaintiff cannot extend the statute of limitations by learning that the extent of injuries is greater than initially thought when he was aware that he sustained other injuries when the conduct actually occurred.

Finally, like the plaintiff in *Parks*, Plaintiff's argument that his delay bringing this cause of action is because he did not *understand* that the TSA's conduct was actionable, *see* [ECF 36], at pp. 13-15, is insufficient to toll the statute of limitations. As the Supreme Court of Illinois explained in *Knox*, the limitations period runs regardless of whether the plaintiff understands that some instance of objectional conduct may be actionable at law.[3]

For these reasons, the discovery rule does not extend the statute of limitations in Plaintiff's case. The latest Plaintiff could bring his (baseless) claims against Allegiant was August 12, 2020. He deliberately failed to do so despite having knowledge of Allegiant's existence and purported involvement in the screenings at issue and his claims against Allegiant should be dismissed.

**2.      Plaintiff's New Assertions of Fraudulent Concealment to Toll the Statute of Limitations Are Misplaced Even if Considered**

In an apparent effort to argue that the 2-year statute of limitations applicable to the FAC was tolled, Plaintiff raises in his Response for the first time the assertion that Allegiant fraudulently concealed its knowledge of the TSA screening process, and Allegiant's alleged concealment tolled

---

[3] Under Plaintiff's logic, if Plaintiff's subsequent TSA interaction had not occurred until 2028, ten (10) years after the 2018 incidents, he would have until 2030 to bring this action based on a subjectively objectionable passenger screening twelve years earlier.

that statute of limitations. Plaintiff's reliance on fraudulent concealment in support of a tolling argument—even if it is to be considered by the Court—is misplaced and should be rejected.

In Illinois, fraudulent concealment may excuse a Plaintiff from timely filing a complaint where the person liable to an action conceals *the cause of action* from the person entitled thereto. *See* 735 ILCS 5/13-215; *see also Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (Posner, J.). The doctrine of fraudulent concealment is also recognized under federal law. *Id.* at 597. Plaintiff seizes on this concept in an effort to argue that the 2-year statute of limitations applicable to his negligence action against Allegiant was tolled and did not run when the FAC was filed. Under either body of law, however, the concealment required to toll the statute of limitations necessarily occurs *after* the cause of action has accrued. *Id.* at 595 (Fraudulent concealment "denotes efforts by the defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is founded*, to prevent, by fraud or deception, the plaintiff from suing in time.") (Emphasis added).

Here, Plaintiff does not allege in either his FAC or his Response, any fact regarding Allegiant's conduct after the 2018 TSA screenings at issue, much less any fraud or deception that could justify tolling the statute of limitations as to Allegiant. Nor does he allege that he ever reported the objectionable screenings to Allegiant such that Allegiant would have been on notice of any potential cause of action against any party. Rather, Plaintiff argues in his Response that Allegiant fraudulently concealed the TSA screening process from him *before* he departed on his trip. The cases cited by Plaintiff in his Response are thus inapposite.

Plaintiff's argument is predicated on an assumption that Allegiant knew or should have known the details of the TSA "threat assessment process"—it does not—which Plaintiff himself acknowledges are considered highly sensitive information concerning national security, *see, e.g.*,

8

[ECF 36], at p. 13 (noting that the TSA checkpoint Standard Operating Procedures cannot be viewed or referenced by Plaintiff or this Court) and at p. 20 ("[t]his Honorable Court cannot even view the TSA Checkpoint SOP as the entire SOP is Sensitive Security Information"); and that Allegiant knew or should have knowledge of the *proprietary* software utilized by L3 in the programming of its screening equipment, *see* [ECF 36], at pp. 3-11, 17, 21, 23, 24 and 28, which, according to L3, "performed precisely to the standards and specifications set out by Congress and the [Department of Homeland Security]" during the screenings at issue. *See* [ECF 37], at p. 18.[4]

Plaintiff admits in his Response that Allegiant did warn him of the TSA security screenings in its Contract of Carriage, *see* [ECF 36], at p. 17, thereby defeating the claims against Allegiant in the FAC based on its failure to give notice or warn. His assertions in the Response that Allegiant should have provided more detailed warnings about the TSA's "threat assessment process" or the software developed by L3 fail because at no time does Plaintiff ever claim that Allegiant had such knowledge, let alone, had more detailed knowledge of the TSA screening procedures or the technology used in the process than that which is available to the traveling public. Allegiant simply cannot conceal, or have a duty to disclose, information that is not within its possession, custody or control. Plaintiff's argument regarding fraudulent concealment, having no basis in fact or law,[5] cannot save his untimely FAC and Allegiant's Rule 12(c) Motion for Judgment on the Pleadings

---

[4] There is no basis for Plaintiff's allegation, made only in his Response, that either the TSA or L3 is a vendor of Allegiant. *See* [ECF 36], at p. 8.

[5] In his Response, Plaintiff asserts that because of a special relationship between himself and Allegiant, "Allegiant had a duty to disclose information regarding the dangers presented by the introduction of an improper and irreconcilable motive into the special relationship by third parties and its silence on this important matter constitutes fraudulent concealment under Illinois law." [ECF 36], at pp. 16-17. But, no such fiduciary or special relationship exists between an airline and a passenger. *See Karkomi v. American Airlines, Inc.*, 717 F. Supp. 1340, 1342-43 (N.D. Ill. 1989) (finding that under Illinois law, the relationship between an airline and a passenger is contractual in nature). Thus, Plaintiff's assertions in this regard are baseless.

should be granted.

**B.     Plaintiff's Remaining Arguments Are Legally Unsound Even if His Newly Asserted Facts and Claims Set Forth in the Response Are Considered**

Even if this Court allows Plaintiff to amend the FAC through the Response, Plaintiff's remaining arguments can be summarily rejected for the reasons set forth in Allegiant's Motion to Dismiss.[6] "Although the law of common carriers may impose a 'higher duty' on them, it does not confer upon their passengers the right to create novel causes of action against them." *Karkomi v. American Airlines, Inc.*, 717 F. Supp. 1340, 1344 (N.D. Ill. 1989). Plaintiff's grievance in this matter lies with either L3 or the TSA—it does not, however, involve Allegiant and Allegiant's Rule 12(b)(6) Motion should be granted as well.

Dated: November 27, 2020                          Respectfully Submitted,

                                                  KMA ZUCKERT LLC

                                                  *s/ Marnie A. Holz*
                                                  Keith S. Yamaguchi, Bar No. 6227242
                                                  Marnie A. Holz, Bar No. 6309264
                                                  KMA ZUCKERT LLC
                                                  200 West Madison Street, 16th Floor
                                                  Chicago, Illinois 60606
                                                  Tel: (312) 345-3000
                                                  Fax: (312) 345-3119
                                                  mholz@kmazuckert.com

                                                  *Attorneys for Defendant,*
                                                  *ALLEGIANT AIR, LLC*

---

[6] As discussed above, in his arguments about the claims of Allegiant's negligence, Plaintiff asserts that Allegiant owed him a duty under the ADA or Section 504, or that Allegiant fraudulently concealed its unequal knowledge in breach of its duty to Plaintiff. Those arguments should be disregarded as an improper attempt to amend the FAC in his Response brief. Moreover, the allegations are without merit and are entirely conclusory.