E-FILED
Monday, 30 November, 2020 02:08:28 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| MICHAEL GIBSON MUIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 1:20-cv-01280** |
| | ) | |
| UNITED STATES TRANSPORTATION | ) | |
| SECURITY ADMINISTRATION; DAVID P. | ) | |
| PEKOSKE, Administrator, United States | ) | |
| Transportation Security Administration, in his | ) | |
| individual capacity; L3HARRIS | ) | |
| TECHNOLOGIES, INC., a Delaware for-profit | ) | |
| corporation; ALLEGIANT AIR, LLC, a Nevada | ) | |
| company; CHAD F. WOLF, Secretary, United | ) | |
| States Department of Homeland Security, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT DAVID P. PEKOSKE'S MOTION TO DISMISS DEFENDANT DAVID P. PEKOSKE IN HIS INDIVIDUAL CAPACITY & BRIEF IN SUPPORT

Plaintiff Michael Gibson Muir ("Muir"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves the Court to deny Defendant David P. Pekoske's motion to dismiss pursuant to Rule 12(b)(6). In support of this motion, Muir relies on the following brief and incorporated memorandum of points and authorities.

1

Muir's First Amended Complaint ("FAC") Bivens claims against Defendant David P. Pekoske ("ADM Pekoske") must survive for several reasons. *First*, ADM Pekoske's reckless personal conduct violated Muir's Fourth Amendment rights when he breached his duty of loyalty and allowed an improper motive into the special relationship during the threat assessment process and fraudulently concealed important information regarding elements of the threat assessment process that were not commonly known and violated Muir's Fifth Amendment rights when, through fraudulent concealment and breach of the affirmative duty to warn, he failed to give Muir fair notice that information taken from him during the custodial interrogation threat assessment process could be used against him during that process and/or later in a court of law and coerced him to act against his will in order to secure his lawful release from TSA control. *Second*, ADM Pekoske is not shielded by qualified immunity because he knowingly violated United States law and the United States Constitution with reckless indifference and because the right to be free from unreasonable search and the right to due process and the right to privacy were clearly established at the time of the violation and even if ADM Pekoske can deprive travelers of their clearly-established constitutional rights during the threat assessment process, he must properly notify them of the deprivation before it occurs because of the special relationship affirmative duty that exists during the checkpoint search. *Third,* the Court should extend Bivens to Plaintiff's claims because of the numerous special factors favoring creation of an implied damages remedy and because the Court clearly has subject matter jurisdiction.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Muir's FAC Bivens claims are largely about exposure. The exposure of Muir's private health information regarding his congenital disability using advanced technology and the resulting corresponding exposure of Defendant ADM Pekoske to implied damage Bivens claims

because of his breach of duty of loyalty and, as the only other human in the special relationship with Muir during the PSDI search segment of the threat assessment process, his reckless abuse of power and violation of the public trust in a common calling.

ADM Pekoske created an advanced technology "Snake Pit" when, as Administrator of the TSA, he breached his duty of loyalty to Muir and used State power to place Muir in a position of danger from for-profit corporation Defendant L3Harris Technologies, Inc. ("L3") and failed to warn him of the known dangers of L3's proprietary ATR software and the threat assessment process that Muir could not avoid during the airplane boarding process.

ADM Pekoske allowed the "Snake" (L3's proprietary ATR software A.I.) to exist in the pit, to have the unreviewable power to "bite" (harm) Muir when he was under TSA control in the pit and to be totally immune from suit for its actions in the pit. This Court, therefore, must create an implied damages remedy to counterbalance ADM Pekoske's betrayal of trust and vindicate Muir's rights for the Constitutional anomaly that resulted in outrageous damages beyond the bounds of human decency and which cannot be tolerated in a civilized society.

### STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient factual allegations to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. In determining whether a complaint states a plausible claim for relief, a court must draw on its own judicial experience and common sense. *Id.* at 679.

**ARGUMENT**

**I.      ADM Pekoske's Personal Involvement in Plaintiff's Claims**

The causal connection between ADM Pekoske's personal knowledge and behavior and the deprivation of Muir's liberty and constitutional rights during the TSA checkpoint security screenings on August 9 and August 12, 2018 is ADM Pekoske's reckless decision to breach his duty of loyalty and poison the foundation of the special relationship between the United States and Muir that exists during the checkpoint threat assessment process through the bad faith inclusion of an improper motive.

**A.      ADM Pekoske's Breach of Duty of Loyalty**

ADM Pekoske owed Muir a duty of loyalty based on their special relationship and ADM Pekoske's position of influence and trust over Muir at the TSA checkpoint. ADM Pekoske's decision to include a monopoly-provider profit motive irrevocably changed special relationship and tilted the benefit balance too far away from Muir's benefit. Defendant L3 is a corporate person incapable of feeling the guilt or shame that usually accompanies the dehumanization of another human being. And because L3 exclusively controlled the computer programming of the mission parameters of the proprietary ATR software artificial intelligence used to search Muir's PSDI during the threat assessment process, L3 was given undue priority over Muir in the special relationship even though the relationship existed primarily for Muir's benefit.

The unidentified TSO who physically screened Muir during the threat assessment process is actually L3's proprietary ATR software, an artificial intelligence "Super Soldier" that works at, simultaneously and without rest, every airport checkpoint that ADM Pekoske oversees.

ADM Pekoske had specific knowledge of how the A.I. Super Soldier would act (because it is a predictable algorithm, not a subordinate employee) and he knew or should have known that it was a Fifth Amendment due process violation to not inform Muir about all conditions of the mandatory custodial interrogation embedded within the airplane boarding process, which included the unlawful taking of private health information which could be used against Muir in a court of law (as any information regarding an AIT threat alarm would be part of the potential criminal case record and Muir is only subject to arrest due to his disability if he refuses, due to serious medical needs, to allow a pat down to clear a false threat alarm triggered by his disability).

**B.      ADM Pekoske's "Snake Pit"**

ADM Pekoske abandoned his duty to defend the U.S. Constitution (which protects Muir from ADM Pekoske, his military-trained mind and his high tech weapons of war like ATR software from military contractor L3) when he abused State power and created an advanced technology "Snake Pit" where Muir was over-intensively interrogated by L3's ATR software Super Soldier A.I. and Muir had no right to remain silent concerning the hidden congenital physical disorder at his right groin that had the ability to trigger a false threat alarm incorrectly indicating a foreign material object on the surface of his skin at his right groin because he was not informed that his private health information could be used against him.

**C.      ADM Pekoske's A.I. Super Soldier**

The "Snake" in the "Snake Pit" is U.S. military contractor L3's proprietary ATR software A.I. "Super Soldier". Based on the deployment history of the AIT in question, Muir has reason to believe that L3's source code has military origins and therefore should not be used domestically.

5

**D.      ADM Pekoske's ATR Software Violated United States and Illinois Law**

If L3's proprietary ATR software was a living TSO instead of an artificial intelligence doing the job of a living person, it would be guilty of hate crime in Illinois for what it did to Muir during the threat assessment process on August 12, 2018.

49 U.S.C. § 44901(l)(1)(A)(i) states: "The term… "advanced imaging technology"… means a device used in the screening of passengers that creates a visual image of an individual showing the <u>surface of the skin</u> and revealing other objects <u>on</u> the body."

L3's proprietary ATR software A.I. violated federal law when it searched the visual image of Muir that showed private health information regarding Muir's human tissue congenital disability beneath the surface of the skin. This breach of trust and invasion of privacy using advanced technology led directly to the discrimination against Muir and cannot be tolerated.

720 ILCS 5/12-7.1 states: "A person commits hate crime when, by reason of the actual or perceived… physical… disability of another individual or group of individuals, regardless of the existence of any other motivating factor or factors, he or she commits… disorderly conduct as… defined in Section… 26-1… of this Code." 720 ILCS 5/26-1 states: "A person commits disorderly conduct when he or she knowingly: Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."

L3's proprietary ATR software committed hate crime against Muir when, by reason of the actual physical disability of Muir, regardless of the existence of any other motivating factor or factors, the ATR software committed disorderly conduct by unreasonably and unlawfully searching Muir's private health information regarding a human tissue disability underneath his skin and generated a false threat alarm which disturbed Muir and provoked a breach of the peace.

**II.     ADM Pekoske is Not Entitled to Qualified Immunity**

ADM Pekoske is not entitled to qualified immunity because his reckless personal conduct violated Muir's clearly-established Constitutional rights.

**A.     Pearson Test Part 1: Violation of a Constitutional Right**

The checkpoint screenings on August 9 and August 12, 2018 violated; (1) Muir's Fourth Amendment rights through the introduction of an improper motive into the special relationship in the form of a monopoly-provider corporate profit motive and by denying Muir the right to avoid the search (by not flying) through ADM Pekoske's fraudulent concealment of important information regarding elements of the threat assessment process that were not commonly known, (2) Muir's Fifth Amendment rights by failing to give Muir fair notice of the threat assessment process due to fraudulent concealment and by coercing him to act against his will in order to secure his release from TSA control, and (3) Muir's constitutional right to privacy found in *Griswold v. Connecticut* by unlawfully taking his private health information, unlawfully encoding it during the creation of his PSDI and then unlawfully using it against him during the artificial intelligence search segment of the threat assessment process.

**1.     Muir's Fourth Amendment Rights**

The Court in *US v. Marquez*, 410 F. 3d 612, 616 (9th Cir. 2005) stated: "In *Davis* and its progeny, we have established a general reasonableness test for airport screenings. "An airport screening search is reasonable if: (1) it is no more extensive or intensive than necessary, in light of current technology, to detect weapons or explosives; (2) it is confined in good faith to that purpose; and (3) passengers may avoid the search by electing not to fly."" *Torbet,* 298 F.3d at 1089 (citation omitted); *see also Davis,* 482 F.2d at 913; *Pulido-Baquerizo,* 800 F.2d at 901.

Muir's August 9 and August 12, 2018 screenings both fail the *Marquez* reasonableness test because of the bad faith inclusion of an improper motive in the special relationship between the United States (TSA) and Muir and the fraudulent concealment of important information with regards to the threat assessment process.

### a.      Improper Motive and Breach of Duty of Loyalty

ADM Pekoske violated Muir's right to be free from unreasonable search as defined by the second element of the *Marquez* test through the bad faith act of introducing an improper corporate profit motive into the special relationship between TSA and Muir that exists during the threat assessment process. ADM Pekoske's deliberate act to allow a competing and contradictory motive to enter the relationship was a breach of the special relationship duty of loyalty because, just as one person cannot serve two masters, there cannot be two loyalties in a special relationship. The affirmative duty runs from the United States to Muir as Muir was in State control and Muir was intended to benefit from the original purchaser's contract for the ATR software because it was used to protect Muir's freedom of travel and to protect Muir from dangerous contraband being brought onto airplanes.

When Defendant L3's corporate profit motive and fiduciary duty to its shareholders was brought into the special relationship, an irreconcilable situation was created where a duty also ran from the United States to L3 because it purchased proprietary ATR software cycles from L3 and DHS granted L3 immunity from suit regarding its role as monopoly provider of the ATR software used during the TSA security screening process.

This breach of trust, good faith and the duty of loyalty violated the second part of the reasonableness test. Therefore, the search was unreasonable under the Fourth Amendment.

b.       **Fraudulent Concealment of Important Information**

To adequately plead fraudulent concealment, a plaintiff must claim that the defendant did not "disclose all material facts concerning the existence of plaintiff's cause of action against the defendant and there was a special relationship that existed between plaintiff and defendant whereby the plaintiff placed trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff." Such a finding must be made by clear and convincing evidence for the plaintiff to ultimately prevail. (*See Wisniewski v. Diocese of Belleville, 943 N.E.2d 43, 73 (Ill. App. Ct. 2011)*. This standard creates a duty to report information that would give rise to a cause of action where the defendant has a special relationship to the plaintiff. Courts liken special relationships to fiduciary relationships and analyze them using the same framework. Only where the victim and the defendant have a fiduciary relationship to one another will mere silence suffice as an affirmative, fraudulent act of concealment (*See Kenroy, Inc., 402 N.E.2d at 185* ("The person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff ... , and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action ... amounts to a fraudulent concealment.").

The United States (TSA) and Muir had a special relationship and the power balance was tilted heavily in favor of TSA's influence and superiority over Muir in its role of State authority in physical control of Muir. Therefore, ADM Pekoske had a duty to disclose all information regarding the dangers presented by the introduction of an improper and irreconcilable motive into the special relationship and his silence on this important matter constitutes fraudulent concealment under Illinois law.

9

Because Muir could not elect to avoid what he was wrongfully prevented from knowing, the screenings in question are unreasonable under the third part of the reasonableness test because Muir was denied the ability to avoid the search by electing not to fly because if he had been given fair notice of the process and the fact that he would be forced to "confess" about his hidden physical disorder through the use of advanced technology, he never would have booked a ticket.

### 2.    Muir's Fifth Amendment Rights

ADM Pekoske violated Muir's Fifth Amendment right to due process by failing to give him fair notice of a process that contained mandatory custodial interrogation and the possibility of criminal prosecution and by coercing him to act against his will in order to secure his lawful release from TSA control.

TSA can make Muir put his hands up during the AIT scan, even though it hurts him to do so and exposes him to discrimination during the scan because Muir is unable to use his hand to hold his internal organs in place to prevent his intestine from moving through is inguinal canal and into his right scrotum. This is control of Muir's locomotion and Muir must trust TSA and ADM Pekoske to completely fulfill their duties to him in such a situation where he cannot act in his own best interest or unilaterally end the interrogation.

ADM Pekoske owed Muir a duty of full disclosure regarding the capability of the millimeter wave portal and the proprietary ATR software to reveal private health information regarding Muir's protected status as an individual with a physical disability. Despite Muir's desire to remain silent on this most private matter, ADM Pekoske failed to properly inform Muir

that the information taken against his will and federal law during the scan could be used against Muir, regardless of his disability status.

### a. Fraudulent Concealment and Fair Notice

TSA controls Muir during the custodial interrogation situation in which Muir faces severe criminal and civil penalties for disobeying TSA personnel during the checkpoint security screening process. This restraint on Muir's liberty and locomotion requires that fair notice of the process be given and ADM Pekoske's fraudulent concealment of important elements of the threat assessment process that are not commonly known but cannot be avoided, including the fact that Muir's reasonable expectation of privacy could be violated and his private health information could be used against him, constitutes a breach of his affirmative duty to give full disclosure and warn Muir of foreseeable risks that could result in unnecessary harm. And L3's application for DHS Safety Act Certification and Designation demonstrates that the risk was foreseeable as a corporation does not seek immunity from suit unless there is a reason to do so.

### b. Coercion and Psychological Torture

ADM Pekoske violated Muir's due process rights by coercing him to act against his will in order to secure his lawful release from TSA control.

Muir is the only person who knows how to push his irreducible intestine bulge from his right scrotum up through his inguinal canal and back into his abdominal cavity without causing severe pain and risk of intestinal incarceration or strangulation, which can result in death. Therefore, Muir was placed at risk of severe physical pain and death when ADM Pekoske's artificial intelligence Super Soldier A.I. searched data representing Muir's private health information, disregarded Muir's humanity and his serious medical needs and produced a false

threat alarm requiring a physical pat down at Muir's right groin solely because of the symptom manifestation of his hidden physical disability.

Muir had never and would never let anybody touch him at the site of his serious medical emergency, but Muir faced serious criminal and civil penalties for disobeying TSA personnel, and this put Muir in an impossible, no-win situation where he was coerced to preemptively choose a punishment, either severe physical pain and risk of death, or severe criminal and civil penalties, in order to secure his release from TSA control.

c.     **Deliberate Indifference to Serious Medical Needs**

The Court established in *Carlson v. Green,* 446 U.S. 14 (1980) that the deliberate indifference to serious medical needs violated U.S. Constitution Amendment VIII.

The basic, fundamental flaw in using artificial intelligence ATR software to search PSDIs and generate unreviewable threat alarms that lead to mandatory further interrogation during the threat assessment process is that the "Super Soldier" A.I. has no empathy and by definition cannot understand serious medical needs or human disability. Similar to the fruit of the poisonous tree doctrine, this irredeemable flaw in the very nature of artificial intelligence makes it by definition indifferent to Muir's serious medical needs and therefore in violation of the Eighth Amendment when it unlawfully searches data regarding the human tissue and congenital physical disability underneath Muir's skin and generates a false threat alarm due solely to the uncontrollable symptom manifestation of Muir's disorder. And TSA SOP violation of well-established constitutional rights going back hundreds of years (the Eighth Amendment can be traced to Magna Carta) without fair and proper notice from ADM Pekoske before Muir begins the checkpoint screening process is a violation of due process.

12

### d.    Degrading Treatment and Dehumanization

Muir was publicly degraded at IWA on August 9, 2018 when, in front of many people at a busy airport checkpoint, he was coerced to submit to a physical pat-down at the exact site of his painful medical emergency solely because of his disability in order to be released from State interrogation and avoid further punishment.

No one other than Muir had ever touched his right groin during the type of serious health emergency Muir experienced on August 9, 2018. The fact that a TSA Agent, using the authority of the State, was the first person to violate Muir's personal security and sanity and touch him at his right groin during a medical emergency when not even medical professionals or his wife had touched him there "shocks the conscience" and cannot be tolerated in a civilized, technologically advanced society.

### e.    Cruel and Unusual Punishment

Muir was psychologically tortured and punished in a cruel and unusual fashion when he was forced to choose a punishment (arrest, criminal prosecution and civil fines or allow a TSO with no medical training to apply pressure to the exact site of his serious and painful medical emergency) in order to secure his lawful release from TSA control. Muir was unlawfully and unethically coerced to agree to be physically touched at the exact site of his congenital disability (for the purposes of State interrogation) during a medical emergency for the sole, arbitrary reason of having his hidden congenital disability at his right groin unlawfully revealed as a false threat alarm by L3's proprietary ATR software during passenger screening. A reasonable person would agree with Muir in his belief that using advanced technology (with probable military

origins) to expose a person's most debilitating weakness and then using it against him during an interrogation is cruel and unusual and cannot be tolerated in civilized society.

### B.    Pearson Test Part 2: The Right at Issue Was Clearly Established

ADM Pekoske wanted the illegal conduct regarding the creation and search of Muir's PSDI to happen because he personally allowed it to happen through his "green lighting" the use of L3's proprietary ATR software that violated the law (See 49 U.S.C. § 44901(l)(1)(A)(i)) and took Muir's private health information regarding human tissue underneath his skin using millimeter waves, encoded that information during the creation of Muir's PSDI and then unlawfully searched that information using L3's A.I. software. ADM Pekoske recklessly acquiesced in this violation of federal law and Muir's constitutional right to privacy when he violated his duty of loyalty and personally approved the deployment of a flawed algorithm supplied by a corporate monopoly-provider with the belief that it had total immunity from suit for its product.

The right to be free from unreasonable search, the right to due process and the right to privacy are all well-established Constitutional rights. The violative nature of the conduct in using advanced technology to violate Muir's constitutional right to privacy by taking his private health information regarding human tissue underneath his skin using millimeter waves emitted from the AIT portal, encoding his private health information during the creation of his passenger screening data image ("PSDI") and searching his private health information regarding human tissue underneath his skin during the proprietary ATR software search of his PSDI is clear as 49 U.S.C. § 44901(l)(1)(A)(i) limits the search to an image of the surface of the skin and objects on the skin and ADM Pekoske recklessly allowed that limit to be knowingly and willingly breached.

As the only human in the decision-making loop, ADM Pekoske was required by the special relationship duty to tell Muir that he had knowingly violated United States law and removed human judgment and empathy from the threat assessment process.

## III.    The Court Should Extend Bivens to Plaintiff's Claims

ADM Pekoske must also be held personally liable for the violation of Muir's clearly-established constitutional rights because of the special factors favoring creation of an implied damages remedy. These factors include a violation of the public trust in a common calling, disorderly conduct hate crime under Illinois law, the domestic use of military technology at facilities of interstate commerce and the blanket removal of legal protection for travelers with disabilities.

### A.    Special Factors Favoring an Implied Damages Remedy

Within the context of a special relationship, total disclosure of important information is not discretionary. ADM Pekoske should have thought twice about what his decision to allow a competing interest into the special relationship meant and what his duty to Muir and his protected class of travelers fully entailed.

### 1.    Violation of the Public Trust in a Common Calling

Airplane travel is clearly a common calling and ADM Pekoske knew or should have known about all relevant transportation and anti-trust law regarding the common calling of public transportation. This includes Congress' intent to keep monopoly power from tilting the balance of benefits too far away from the public good and to keep individuals with disabilities

free from discrimination during travel and while navigating potential architectural or procedural barriers at facilities of interstate commerce.

ADM Pekoske's reckless decision to remove human empathy and judgment from the threat assessment process violates the public trust because society has made its position clear that individuals with disabilities have a right to travel without facing the burden of unwarranted discrimination based solely on their disabilities.

a. **Special Relationship Duty Comes Before Public Duty Rule**

The only exception to the public duty rule is the special relationship. While securing the nation's transportation systems is clearly a very important public interest, the custodial interrogation setting of the threat assessment process requires the special relationship created by that situation to take priority. This means that ADM Pekoske had a fiduciary duty to Muir to reveal all important information regarding the advanced technology components of the airplane boarding process so that Muir could have the opportunity to exercise his right to avoid them by choosing not fly. Muir cannot avoid what he is fraudulently prevented from knowing.

2. **Disorderly Conduct Hate Crime Under Illinois Law**

As previously demonstrated, ADM Pekoske's conduct in allowing L3's proprietary ATR software to search Muir's private health information regarding human tissue underneath his skin led to a hate crime disorderly conduct violation under Illinois law.

Hate crime using advanced technology artificial intelligence incapable of understanding that it is incapable of understanding human medical emergencies, human disability, unlawful discrimination or hate crime cannot be tolerated in a civilized society and must be stopped before

the factors that allowed it to happen to Muir allow it to happen to others and to spread across society unchecked.

### a.      Money Damages for Illinois Hate Crime

720 ILCS 5/12-7.1(c) states: "Independent of any criminal prosecution or the result of a criminal prosecution, any person suffering injury to his or her person…disorderly conduct as defined in paragraph (a)(1) of Section 26-1 of this Code… as a result of a hate crime may bring a civil action for damages, injunction or other appropriate relief. The court may award actual damages, including damages for emotional distress, as well as punitive damages. The court may impose a civil penalty up to $25,000 for each violation of this subsection (c)."

An implied damages remedy is therefore appropriate because Muir was the victim of disorderly conduct hate crime perpetrated by an artificial intelligence incapable of recognizing Muir's protected status as an individual with a disability and money damages are available in Illinois for such victims.

### 3.      Domestic Use of Military Technology at Facilities of Interstate Commerce

Defendant L3 is a United States defense contractor. Automatic target recognition is a computer science artificial intelligence discipline with clear military roots. ATR software history demonstrates that the technology in question in this case had been deployed as far back as 2004 at international borders during war time. The development of the source code underlying L3's proprietary ATR software has a high probability of including military technology used in times of war, which would make L3's software part of a weapon of war.

ADM Pekoske's reckless decision to turn a potential weapon of war against civilian Muir at a domestic facility of interstate commerce without warning cannot be tolerated, especially because that advanced technology weapon could be used to violate Muir's right to bodily privacy and marital privilege.

**4.     Blanket Removal of Legal Protection for Travelers with Disabilities**

The recognition of human medical emergencies, human disability and human emotion requires human judgment and empathy. ADM Pekoske removed the legal protections of Rehabilitation Act of 1973 Section 504 when he personally approved the use of an artificial intelligence incapable of experiencing the guilt or shame that usually accompanies the dehumanization of another human being, which by default removed Muir's legal protections as a member of the class of individuals with disabilities.

**a.     A.I. Cannot Understand Disability, Discrimination or Hate Crime**

L3's proprietary ATR software is an artificial intelligence incapable of understanding that it is incapable of understanding human emotion, human disability, discrimination or hate crime. Because the "Super Soldier" responsible for the search of Muir's passenger screening data image is not a human being, all of Muir's protections were immediately and automatically discarded as though Congress never passed them into law. Section 504, the ADA and other similar legislation cannot be simply removed through ADM Pekoske's unilateral decision to allow an improper motive into the special relationship and to completely remove human judgment from the TSA checkpoint threat assessment process.

**5.     Practical Considerations Favoring Bivens Extension**

Holding ADM Pekoske personally liable for the violation of Muir's well-established constitutional rights would not be chilling to TSOs in any way as TSOs have extensive protection from personal liability under 28 U.S.C. § 2680(h) and have nothing to do with the approval of an improper corporate profit motive entering the special relationship at the highest levels of government. ADM Pekoske's personal liability would serve as a reminder to sworn officers defending the Constitution that their loyalty must lie with the Constitution and the citizens it protects, regardless of their belief in the importance of their mission.

### B. Alternative, Existing Processes Have Failed

Muir has attempted to resolve his claims regarding the August 9 and August 12, 2018 incidents through every avenue of which a reasonable person would be aware and has been unable to achieve redress for the ongoing unlawful discrimination he faces.

### 1. Administrative Branch and DHS Complaints

Muir's official complaints to the DHS TRIP program and the DHS Office of Civil Rights and Civil Liberties were denied and closed so quickly that it is clear that no real investigation was done and that the investigating entities never even bothered to take Muir's claims of unlawful discrimination seriously. DHS classified Muir's incident as a case of mistaken identity and TSA denied Muir's claims based on the assault and battery intentional tort exception of 28 U.S.C. § 2680(h).

### 2. Legislative Branch Complaints

Muir's complaint to his United States Representative Greg Stanton was also basically pointless because the office person Muir spoke to didn't even know what congressional

committees Rep. Stanton was on, let alone had any clue as to what Muir was describing. This case touches on many different aspects of the law and it necessarily falls to this Honorable Court to create an implied damages remedy because of the complex and technologically advanced nature of the facts and circumstances and the administrative branch's willingness to ignore the limits placed on it by the legislative branch representatives.

### C.    Plaintiff's Claims Present A Recognized Context

Muir's claims regarding oppressive government spying and intimidation and the overreach of the administrative branch are nothing new. In this case, the administrative branch totally disregarded the legislative branch's statutory limits on the reach of advanced imaging technology. Passenger screening data image searches are limited to images showing the surface of the skin and objects on the surface of the skin and when ADM Pekoske allowed L3 to violate those limits, he exposed himself to personal liability because his decision violated United States law and the United States Constitution.

### 1.    Damages or Nothing

ADM Pekoske must be held liable for the violations of Muir's constitutional rights because he is the only human being who can be held to account for what happened to Muir during the threat assessment process. The common carrier, Defendant Allegiant Air is a corporate person incapable of feeling guilt or shame, Defendant L3 is a corporate person that believes it has total immunity from suit for anything that happens with is proprietary ATR software, the TSOs are immune from intentional tort suits because of 28 U.S.C. § 2680(h), TSA itself cannot be sued under the FTCA and the TSO that violated Muir's privacy is an artificial

intelligence. In this case, a very carefully constructed immunity shield protecting every involved entity regardless of their lawless behavior leaves Muir with implied damages or nothing.

**D.    This Court Has Subject Matter Jurisdiction Because Plaintiff's Bivens Claims Are Not a Challenge to TSA's Standard Operating Procedures under 49 U.S.C. § 46110 Because Plaintiff's Claims Rest Outside of TSA SOP**

The Court stated in *Miranda v. Arizona*, 384 U.S. 436, 467 (1966): "There can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." The Court stated in *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984): "We hold therefore that a person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in *Miranda*."

Muir was compelled to "speak" about the existence of his hidden congenital disorder at his right groin when L3's proprietary ATR software searched his private health information, and he did not do so "freely". Because the presumption regarding a TSA checkpoint threat alarm is that of guilty until proven innocent, this taking of Muir's private health information constituted a forced "pre-confession" of a factor that might trigger a threat alarm and Muir had no ability to exercise his right to remain silent on the matter because he was never warned that the information obtained using advanced technology could be used against him in a court of law.

21

Because the Due Process Clause of the Fifth Amendment to the U.S. Constitution requires a warning before information taken during a custodial interrogation can be used against a person in a court of law, Muir's claims cannot be construed to be "inescapably intertwined" with a review of the TSA SOP because this is a question of a simple matter regarding a special relationship affirmative duty warning and this Court has subject matter jurisdiction.

## CONCLUSION

WHEREFORE, for all the reasons discussed herein, Defendant David P. Pekoske is not entitled to dismissal from this lawsuit pursuant to Rule 12(b)(6) because Plaintiff Muir has established that his Bivens claims against ADM Pekoske must survive and the Court must create a damages remedy in order to vindicate Muir's rights.

DATED: this 27th day of November, 2020

Respectfully submitted,

_____s/Michael Gibson Muir_____
MICHAEL GIBSON MUIR

MICHAEL GIBSON MUIR
19 Inglewood Lane
Bloomington, IL 61704
(712) 309-6121